1    Michael R. Reese (SBN 206773)                ggranade@reesellp.com
      mreese@reesellp.com                           **REESE LLP**
2    **REESE LLP**                                  8484 Wilshire Boulevard, Suite 515
      100 West 93rd Street, 16th Floor              Los Angeles, California 90211
3    New York, New York  10025                     Telephone: (310) 393-0070
      Telephone: (212) 643-0500                     Facsimile: (212) 253-4272
4    Facsimile: (212) 253-4272

5    Hassan A. Zavareei (SBN 181547)
      hzavareei@tzlegal.com                         Sabita J. Soneji (SBN 224262)
6    Kristen G. Simplicio (SBN 263291)             ssoneji@tzlegal.com
      ksimplicio@tzlegal.com                        V Chai Oliver Prentice (SBN 309807)
7    **TYCKO & ZAVAREEI LLP**                       vprentice@tzlegal.com
      1828 L Street, Northwest, Suite 1000          **TYCKO & ZAVAREEI LLP**
8    Washington, District of Columbia 20036        1970 Broadway, Suite 1070
      Telephone: (202) 973-0900                     Oakland, California 94612
9    Facsimile: (202) 973-0950                     Telephone: (510) 254-6808
      George V. Granade (SBN 316050)                Facsimile: (202) 973-0950
10
      *Counsel for Plaintiffs Ronald Chinitz, Sarah Bumpus,*
11   *and Rosemary Rodriguez and the Proposed Class*

12

13                    **UNITED STATES DISTRICT COURT**

14                   **NORTHERN DISTRICT OF CALIFORNIA**

15                       **SAN FRANCISCO DIVISION**

16   RONALD CHINITZ, SARAH BUMPUS, *and*        Case No. 3:19-cv-03309-JD
      ROSEMARY RODRIGUEZ, *individually, and*
17   *on behalf of a class of similarly situated persons*,   **MEMORANDUM OF POINTS AND**
                                                              **AUTHORITIES OF PLAINTIFFS**
18                      Plaintiffs,                           **RONALD CHINITZ, SARAH BUMPUS,**
                                                              **AND ROSEMARY RODRIGUEZ IN**
19          v.                                                **OPPOSITION TO DEFENDANTS**
                                                              **REALOGY HOLDINGS**
20   REALOGY HOLDINGS CORP.,                                  **CORP., REALOGY INTERMEDIATE**
      REALOGY INTERMEDIATE HOLDINGS                           **HOLDINGS LLC, REALOGY GROUP**
21   LLC, REALOGY GROUP LLC, REALOGY                         **LLC, REALOGY SERVICES GROUP**
      SERVICES GROUP LLC, REALOGY                            **LLC, AND REALOGY BROKERAGE**
22   BROKERAGE GROUP LLC (f/k/a NRT                         **GROUP LLC'S MOTION TO DISMISS**
      LLC), *and* MOJO DIALING SOLUTIONS,                    **PLAINTIFFS' SECOND AMENDED**
23   LLC,                                                     **CLASS ACTION COMPLAINT**

24                      Defendants.                           Date: Under Submission
                                                              Time: Under Submission
25                                                            Place: Courtroom 11, 19th Floor
                                                              Judge: Honorable James Donato
26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................ii

I.      INTRODUCTION..................................................................................................................1

II.     STATEMENT OF THE ISSUES TO BE DECIDED .........................................................2

III.    STATEMENT OF RELEVANT FACTS ............................................................................2

IV.     ARGUMENT .......................................................................................................................3

     A.      Claim Preclusion Does Not Bar Plaintiff Chinitz's Claims ...............................4

        1.      The Stipulated Dismissal With Prejudice Is Not a Final Judgment.................4

        2.      The Parties to *NRT West* Are Not the Same as the Parties to This Case ...................................................................................................................6

     B.      Plaintiffs Have Stated a Claim Against Each Realogy Defendant.....................8

        1.      The Second Amended Complaint Complies with Rule 8 ................................8

        2.      Plaintiffs allege that the calls were placed on behalf of the Realogy Defendants .......................................................................................................10

        3.      Plaintiffs Have Alleged that the Realogy Defendants Are Vicariously Liable for the Calls Placed to Them ...............................................................10

            a.      Plaintiffs Plead Actual Authority over Realogy Agents and Their Calls ..........................................................................................11

            b.      Plaintiffs Plead RBG's Apparent Authority over Realogy Agents and Their Calls ...........................................................................12

            c.      Plaintiffs Plead RBG's Ratification of Realogy Agents' Telemarketing Calls ...........................................................................13

            d.      Plaintiffs Alter-Ego Theories Are Sufficiently Alleged ......................14

V.      CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.,*
No. 16-cv-05486-JCS, 2017 WL 733123 (N.D. Cal. Feb. 24, 2017) ................................ 11

*Armstrong v. Investor's Bus. Daily, Inc.,*
No. 18-cv-02134-MWF-JPR, 2019 WL 2895621 (C.D. Cal. Mar. 12, 2019) .................. 11, 13

*ASARCO, LLC v. Union Pac. R. Co.,*
765 F.3d 999 (9th Cir. 2014) ............................................................................................ 4, 6, 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................................. 4

*Banks v. N. Tr. Corp.,*
929 F.3d 1046 (9th Cir. 2019) ............................................................................................... 11

*Bowoto v. Chevron Texaco Corp.,*
312 F. Supp. 2d 1229 (N.D. Cal. 2004) ................................................................................... 9

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,*
213 F.3d 474 (9th Cir. 2000) ............................................................................................ 11, 13

*Charvat v. Allstate Corp.,*
29 F. Supp. 3d 1147 (N.D. Ill. 2014) ............................................................................. 8, 9, 14

*Duguid v. Facebook, Inc.,*
926 F.3d 1146 (9th Cir. 2019) ................................................................................................. 4

*F.T.C. v. Garvey,*
383 F.3d 891 (9th Cir. 2004) ................................................................................................... 6

*FastVDO LLC v. LG Electronics Mobilecomm U.S.A., Inc.,*
No. 16-cv-02499-H-WVG, 2016 WL 9526400 (S.D. Cal. Dec. 13, 2016) ......................... 6, 7

*GemCap Lending I, LLC v. Mann,*
No. 19-cv-02499-PSG-RAO, 2019 WL 6481696 (C.D. Cal. Aug. 9, 2019) ........................... 5

*Gomez v. Campbell-Ewald Co.,*
768 F.3d 871 (9th Cir. 2014) ................................................................................................. 11

*Henderson v. United Student Aid Funds, Inc.,*
918 F.3d 1068 (9th Cir. 2019) ................................................................................. 10, 11, 13, 14

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.,*
847 F. Supp. 2d 1253 (S.D. Cal. 2012) .................................................................................. 11

*In re MyFord Touch Consumer Litig.,*
46 F. Supp. 3d 936 (N.D. Cal. 2014) ..................................................................................... 11

*International Union of Operating Engineers-Employers Construction Industry Pension, Welfare and
Training Trust Funds v. Karr,* 994 F.2d 1426 (9th Cir. 1993) ............................................... 6

*Jones v. Royal Admin. Servs., Inc.,*
    887 F.3d 443 (9th Cir. 2018) ......................................................................................... 11

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
    394 F.3d 1143 (9th Cir. 2004) ......................................................................................... 9

*Kristensen v. Credit Payment Servs. Inc.,*
    879 F.3d 1010 (9th Cir. 2018) .................................................................................. 11, 14

*Lushe v. Verengo Inc.,*
    No. 13-cv-7632-AB-RZ, 2015 WL 500158 (C.D. Cal. Feb. 2, 2015) .............................. 13

*Maxtor Corp. v. Read-Rite (Thailand) Co.,*
    No. C-03-3064 SC, 2003 WL 24902406 (N.D. Cal. Dec. 4, 2003) .................................. 13

*McAdory v. M.N.S. & Assocs., LLC,*
    952 F.3d 1089 (9th Cir. 2020) ......................................................................................... 4

*Media Rights Techs., Inc. v. Microsoft Corp.,*
    922 F.3d 1014 (9th Cir. 2019) ......................................................................................... 4

*Moore v. Kayport Package Express,*
    885 F.2d 531 (9th Cir. 1989) ........................................................................................... 9

*Neilson v. Union Bank of California,*
    N.A., 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................. 15

*NLRB v. Dist. Council of Iron Workers of the State of Cal.,*
    124 F.3d 1094 (9th Cir. 1997) ......................................................................................... 12

*Pinnacle Great Plains Operating Co., LLC v. Swenson,*
    No. 1:17-cv-00120-DCN, 2017 WL 4855846 (D. Idaho Oct. 26, 2017) ............................ 7

*Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1,*
    824 F.3d 1161 (9th Cir. 2016) ......................................................................................... 5

*Salyers v. Metro. Life Ins. Co.,*
    871 F.3d 934 (9th Cir. 2017) ........................................................................................... 12

*Shuckett v. DialAmerica Mktg. Inc.,*
    No. 17-cv-02073-LAB-KSC, 2019 WL 913174 (S.D. Cal. Feb. 22, 2019) ....................... 11

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ................................................................................................... 6, 7

*United States ex rel. Vatan v. QTC Med. Servs., Inc.,*
    721 F. App'x 662 (9th Cir. 2018) ..................................................................................... 9

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ......................................................................................................... 8

*Wojciechowski v. Kohlberg Ventures, LLC,*
    923 F.3d 685 (9th Cir. 2019) ........................................................................................... 4

1

**<u>STATUTES</u>**

2

California Code of Civil Procedure section 187 ........................................................................ 9

3

Telephone Consumer Protection Act of 1991,
   47 U.S.C. § 227 ................................................................................................................ passim

4

**<u>OTHER AUTHORITIES</u>**

5

18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4427
   (3d ed. Aug. 2019 update) .................................................................................................... 4, 6

6

7

47 C.F.R. § 64.1200 ................................................................................................................... 3

8

Federal Rule of Civil Procedure 12 ....................................................................................... 3, 4

9

*In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574 (April 17, 2013) .... 8, 9

10

Restatement (Second) of Judgments § 49 (1982) ...................................................................... 6

11

Restatement (Third) of Agency § 3.03 (2006) ......................................................................... 13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Plaintiffs bring this proposed nationwide class action against Realogy Brokerage Group LLC ("RBG"), Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy Group LLC, and Realogy Services Group LLC (collectively, "Realogy Defendants"), and Mojo Dialing Solutions, LLC ("Mojo"), for systematic violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). Plaintiffs and thousands of people nationwide are victims of the Realogy Defendants' and Mojo's reckless, abusive cold calling practices. They received numerous unwanted calls marketing the Realogy Defendants' "Coldwell Banker" real estate business, many of which were initiated by Mojo. The calls were placed without regard to anyone's status on the National Do Not Call Registry ("NDNCR") or their requests not to call again. And many of the calls were automated and utilized prerecorded messages, using dialing software and lead generation lists that Mojo provided.

In an attempt to prevent Plaintiffs from seeking relief for these violations, the Realogy Defendants filed a motion to dismiss Plaintiffs' Second Amended Complaint. *See* Def.'s Notice Mot. Dismiss Second Am. Compl. & Mem. P. & A. Supp. Thereof, ECF No. 77 ("Mem."). Despite 28 additional pages of new allegations not seen in the First Amended Complaint, ECF No. 31, including dozens of new facts demonstrating the Realogy Defendants' oversight and control of Coldwell Banker real estate agents (the "Realogy Agents") and the telemarketing calls here at issue, the Realogy Defendants raise many of the same arguments here as RBG did to the previous complaint. *Compare* Mem. *to* ECF No. 32. Just as in the first motion, their arguments in support of dismissal lack merit.

The Realogy Defendants first argue an affirmative defense, claim preclusion, bars the claims of one Plaintiff, Ronald Chinitz, because he stipulated to dismissal of *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal.) ("*NRT West*"), a prior lawsuit against a non-party, NRT West, Inc. ("NRT West"). For the reasons given below, the Realogy Defendants have not carried their burden to establish that the stipulated dismissal in *NRT West* was a final judgment on the merits or that the parties to *NRT West* are in privity with the parties here.

The Court should also reject the Realogy Defendants' challenges to the sufficiency of Plaintiffs' allegations and the notice they provide. As detailed below, Plaintiffs have well exceeded the threshold to establish plausibility, as their pleading is overflowing with detailed factual allegations

1  regarding the Realogy Defendants' conduct. And despite their assertions to the contrary, the Realogy
2  Defendants cannot be confused about Plaintiffs' claims against them.

3  For all these reasons and the others given below, the Court should deny the Realogy
4  Defendants' motion in full.

5  ## II.   STATEMENT OF THE ISSUES TO BE DECIDED

6  The issues to be decided on this motion are the following:

7  - Whether the Realogy Defendants have shown as a matter of law that the stipulated dismissal
8  in *NRT West* is a final judgment on the merits and that there is privity between the Realogy Defendants
9  and NRT West;

10  - Whether Plaintiffs plausibly allege that the Realogy Defendants are liable for the Realogy
11  Agents' calls in violation of the TCPA; and

12  - Whether the complaint provides notice of Plaintiffs' claims against the Realogy Defendants.

13  ## III.   STATEMENT OF RELEVANT FACTS

14  The Realogy Defendants operate one of the country's largest real estate conglomerates.
15  Second Am. Compl. ¶¶ 1, 44, ECF No. 55 ("SAC"). They utilize a complicated, opaque corporate
16  structure, including a vast network of alter-ego shell companies, wholly owned subsidiaries, purported
17  franchises, and other entities, many of which are undercapitalized. *Id.* ¶¶ 9–10, 100, 102, 104, 116.
18  These entities share the same base of operations, work under the direction of the same corporate
19  officers, procure and exchange services and resources from one another without adequate
20  consideration, and maintain shared records. *Id.* ¶ 100–03. Their personnel appear not to understand
21  the structure of their own company, *id.* ¶¶ 108, 112, and the company structure is even more confusing
22  to outsiders who try to glean an understanding of which entity does what, *id.* ¶¶ 108, 112–16.
23  Moreover, the Realogy Defendants have recently reorganized, issuing press releases that indicate an
24  ongoing rearrangement of both business functions and entities underneath the parent company,
25  Defendant Realogy Holdings Corp., exacerbating the complexity. *Id.* ¶¶ 110–11.

26  The Realogy Defendants together hold out RBG, one of the entities at the center of their
27  operations, as being responsible for operating 725 offices nationwide, a large portion of which operate
28  under the "Coldwell Banker" brand. SAC ¶ 46. Each of the Coldwell Banker offices is run in

accordance with the Realogy Defendants' policies and procedures to ensure continuity in customer service from office to office and to protect the reputation of the Coldwell Banker brand, which, in turn, ensures more profits for the Realogy Defendants. *Id.* ¶ 51. In collaboration with the other Realogy Defendants, RBG controls the agent onboarding process, which is uniform across the Coldwell Banker brand. *Id.* ¶¶ 47–53. Through RBG, the Realogy Defendants know about, authorize, encourage, and profit from the unwanted cold calling practices of the Realogy Agents. *See id.* ¶¶ 54–61, 74–78. With the Realogy Defendants' knowing approval, the Realogy Agents uniformly state on telemarketing calls that they are calling on behalf of "Coldwell Banker." *Id.* ¶¶ 59, 61, 77. And on behalf of the entire Realogy enterprise, the agents routinely make unlawful phone calls to people nationwide, including calls to persons on the NDNCR (without maintaining compliance with 47 C.F.R. § 64.1200(c)(2)), calls to persons who have requested not to be called (without complying with § 64.1200(d)), and calls using autodialing equipment and prerecorded voices. *See, e.g., id.* ¶¶ 79–97.

All Plaintiffs are California citizens residing in California. SAC ¶¶ 16–17, 19. All Plaintiffs registered phone numbers on the NDNCR, *id.* ¶¶ 117–18, 148, 161, yet received multiple unwanted marketing calls from or on behalf of "Coldwell Banker," *id.* ¶¶ 119–28, 149–53, 162–64. Plaintiffs Chinitz, Bumpus, and Rodriguez asked the "Coldwell Banker" agents to stop calling yet continued to receive calls from "Coldwell Banker" agents. *Id.* ¶¶ 124–25, 152–53, 163–64.[1] Mr. Chinitz received calls that included prerecorded messages on behalf of "Coldwell Banker." *Id.* ¶¶ 126–27.

Because of these pervasive and persistent violations, Plaintiffs bring claims against the Realogy Defendants and Mojo on behalf of 12 classes and subclasses. SAC ¶¶ 167–77. As relevant here, Plaintiffs bring claims against each of the Realogy Defendants for violation of TCPA regulations regarding the NDNCR, 47 U.S.C. § 227(c)(2); 47 C.F.R. § 64.1200(c)(2); SAC ¶¶ 178–92, and TCPA regulations regarding maintenance of an internal do not call list, § 227(c)(2); § 64.1200(d); SAC ¶¶ 206–18. Mr. Chinitz also brings claims against them for violation of § 227(b)(1)(B), SAC ¶¶ 219–28.

## IV.   ARGUMENT

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts evaluate

---

[1] Plaintiff Alain Michael voluntarily dismissed his claims on June 29, 2020. Pl. Michael's Notice of Dismissal, ECF No. 78.

whether the pleading alleges sufficient facts to state a plausible claim, "accept[ing] the complaint's well-pleaded allegations as true and constru[ing] all inferences in the light most favorable to the nonmoving party." *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir. 2020); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1152 (9th Cir. 2019).

## A.    Claim Preclusion Does Not Bar Plaintiff Chinitz's Claims

Claim preclusion is an affirmative defense, FED. R. CIV. P. 8(c), meaning that dismissal on a Rule 12(b)(6) motion is proper "only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). "If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *Id.*

Claim preclusion applies where the first action "(1) involved the same 'claim' or cause of action as [the second action], (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020–21 (9th Cir. 2019). Although the Realogy Defendants argue the Stipulation of Dismissal With Prejudice in *NRT West* precludes Mr. Chinitz's claims against them in this case, they fail to show as a matter of law that (i) *NRT West* reached a final judgment on the merits and (ii) there is privity of the parties. *See* Mem. 5–8.

### 1.    The Stipulated Dismissal With Prejudice Is Not a Final Judgment

The Court should reject the Realogy Defendants' argument that the stipulated dismissal with prejudice of *NRT West* is a final judgment for claim preclusion purposes because Mr. Chinitz has plausibly alleged the parties did not intend the dismissal of *NRT West* to bar the instant claims.

Critically, "[a] judgment entered 'based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it.'" *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019). "Judgments that rest on stipulations, admissions in pleadings, or consent to the very judgment itself should be given effect according to the intention of the parties . . . ." 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4427 (3d ed. Aug. 2019 update).

The SAC sets forth numerous facts that show that Mr. Chinitz did not intend to release his claims against the Realogy Defendants when he stipulated to dismiss *NRT West* and that counsel for

all parties understood his intentions and the function of the dismissal in the larger context. SAC ¶¶ 135–47. As discussed at the initial case management conference, counsel for both NRT West and the Realogy Defendants knew Mr. Chinitz intended to continue pursuing his claims against RBG after dismissing his claims against NRT West. *Id.* ¶¶ 136, 141–44, 147. The Court's Order of October 24, 2019, reflects this discussion by accounting for two possible paths forward for Mr. Chinitz's claims against RBG: one in front of Judge Cousins, after amending the pleading in *NRT West* to include claims against RBG, and the other in this Court, after dismissal of *NRT West. Id.*; *see also* Civil Mins., ECF No. 19. The parties' correspondence about the stipulation of dismissal in *NRT West* also reflects that understanding. SAC ¶ 144. Before and at the time the parties signed the stipulation of dismissal of *NRT West*, counsel for NRT West and the Realogy Defendants knew that Mr. Chinitz never intended to release his claims against RBG or any entity other than NRT West; Mr. Chinitz gave no indication at any point that his intent had changed; and counsel for NRT West and the Realogy Defendants took no steps to discuss broadening the scope of the stipulated dismissal in *NRT West* to include RBG or any other entity. *Id.* ¶ 147. For all these reasons, it is disingenuous for the Realogy Defendants to argue the stipulation in *NRT West* is grounds for claim preclusion here.

The Realogy Defendants cannot show Mr. Chinitz released his claims against them because the stipulated dismissal does not include a release of any claims, other than the claims against NRT West. Ex. 1, Stip. Dismissal With Prejudice, ECF No. 26-1. *Cf. Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1168 (9th Cir. 2016) (reversing in part because district court erred in holding voluntary dismissal was res judicata; stating that "the 'with prejudice' label is not always conclusive for the purpose of res judicata"); *GemCap Lending I, LLC v. Mann*, No. 19-cv-02499-PSG-RAO, 2019 WL 6481696, at *5–6 (C.D. Cal. Aug. 9, 2019) (plaintiff could not pursue claims in later case because he had explicitly released those claims in earlier case).

The Realogy Defendants argue Mr. Chinitz did not enter into any settlement agreement with NRT West "to alter the preclusive effect of the dismissal with prejudice." Mem. 6. However, entering into a settlement agreement would have contravened Mr. Chinitz's purpose. *See* SAC ¶¶ 143–44, 146–47. Mr. Chinitz never intended to settle his claims. He intended to dismiss his claims against NRT West, a small regional entity, and to continue to pursue claims against the nationwide entities he had

1   intended to sue from the outset, RBG and the other Realogy Defendants. SAC ¶¶ 137, 142, 146–47.

2   The Realogy Defendants' reliance on *International Union of Operating Engineers-Employers*

3   *Construction Industry Pension, Welfare and Training Trust Funds v. Karr*, 994 F.2d 1426 (9th Cir. 1993)

4   ("*Karr*"), is misplaced because *Karr* addressed a motion for summary judgment. *See Karr*, 994 F.2d at

5   1427. Here, the burden is on the Realogy Defendants to show claim preclusion presents an "obvious

6   bar" to Plaintiff's claims based on the SAC. *ASARCO, LLC*, 765 F.3d at 1004. They have not done

7   so. Further, in *Karr*, the parties entered into settlement agreements with no provisions regarding their

8   intended preclusive effect. *Karr*, 994 F.2d at 1432. Here, there is no settlement agreement. To give

9   effect to the stipulation of dismissal of *NRT West* "according to the intention of the parties," 18A

10   Wright, Miller, & Cooper, Federal Practice & Procedure § 4427, *supra* p. 4, the Court should take into

11   account all of the available alleged facts, discussed above. SAC ¶¶ 135–47.

12   **2.     The Parties to *NRT West* Are Not the Same as the Parties to This Case**

13   The Supreme Court has "often repeated the general rule that 'one is not bound by a judgment

14   *in personam* in a litigation in which he is not designated as a party or to which he has not been made a

15   party by service of process.'" *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008). Thus, "[a] judgment against

16   one person liable for a loss does not terminate a claim that the injured party may have against another

17   person who may be liable therefor." *F.T.C. v. Garvey*, 383 F.3d 891, 898 n.6 (9th Cir. 2004) (quoting

18   Restatement (Second) of Judgments § 49 (1982)). In *Taylor*, the Court identified six categories of

19   exceptions to the general rule, none of which apply here. *Taylor*, 553 U.S. at 893–95.[2]

20   The Realogy Defendants argue they are in privity with NRT West because Mr. Chinitz "alleges

21   that NRT West is a subsidiary of the Realogy Defendants." Mem. 8. But "[t]he parent-subsidiary

22   relationship does not of itself establish privity." 18A Wright, Miller, & Cooper, *Federal Practice &*

23   *Procedure* § 4460. *FastVDO LLC v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 16-cv-02499-H-WVG,

24   2016 WL 9526400 (S.D. Cal. Dec. 13, 2016), is on point. There, the court evaluated whether the

25   plaintiff had engaged in impermissible claim-splitting, the test for which is the same as the test for

26   claim preclusion. *FastVDO LLC*, 2016 WL 9526400, at *3. The defendant conceded that although it

27

28   ─────────────────────
     [2] The Supreme Court has indicated the use of the term "privity" in the claim preclusion context is
     imprecise and may cause confusion. *Taylor*, 553 U.S. at 894 n.8.

was a wholly-owned subsidiary of a defendant in the prior case at issue, it—like each of the Realogy Defendants here—was a separate entity from any entity involved in the prior suit. *Id.* Applying *Taylor* to the facts before it, the court stated:

> Defendant LG Electronics Mobilecomm has failed to show that it falls into one of those six enumerated categories [set out in *Taylor*] with respect to the other LG entities. Merely being a wholly-owned subsidiary of a party is not listed in *Taylor* as one of the exceptions. *See* 553 U.S. at 892–93. Further, substantial identity between the parties/commonality of interest is also not listed as an exception in *Taylor. See id.* Accordingly, Defendant has failed to show that it is in privity with the LG entities that are parties to the earlier filed action, and, thus, Defendant has failed to establish that the two suits at issue are duplicative.

*FastVDO LLC*, 2016 WL 9526400, at *4 (footnote omitted). Here as in *FastVDO LLC*, the Realogy Defendants cannot dispute that they were not parties to *NRT West* and NRT West is not a party here and that claim preclusion generally does not apply to non-parties. *Id.* Moreover, the mere fact that NRT West is a subsidiary of the Realogy Defendants, or that it has "substantial identity" or "commonality of interest" with the Realogy Defendants, does not establish any exception to the rule that claim preclusion does not apply to non-parties. *Id.*

Finally, the Realogy Defendants' argument that privity exists because Mr. Chinitz alleges that the Realogy Defendants can be held vicariously liable for the unlawful calls of these agents 8, contradicts their' separate argument that Plaintiffs "cannot allege" sufficient facts to show that the Realogy Defendants can be held vicariously liable for "any of the calls at issue," *id.* at 9; *see also id.* at 9–11 (arguing Plaintiffs have not sufficiently alleged actual authority, apparent authority, and ratification). The Realogy Defendants cannot carry their burden of showing it is "obvious" that the parties are in privity, *see ASARCO, LLC*, 765 F.3d at 1004, by simultaneously arguing divergent positions.[3] Indeed, the allegations in the SAC and the arguments on this motion reveal plainly articulated fact disputes that require discovery to resolve, including but not limited to whether the Realogy Defendants are agents of NRT West and whether they are vicariously liable for the conduct of NRT West.

---

[3] The Realogy Defendants' reliance on *Pinnacle Great Plains Operating Co., LLC v. Swenson*, No. 1:17-cv-00120-DCN, 2017 WL 4855846, at *11 (D. Idaho Oct. 26, 2017), in which it was "undisputed" that the parties had a principal-agent relationship and that one party was vicariously liable for certain frauds by the other, is misplaced. *See* Mem. 7.

B.     **Plaintiffs Have Stated a Claim Against Each Realogy Defendant.**

The TCPA makes liable the entity who "makes" the call, and that entity can be one that either directly places the call or has an agency relationship with the caller. With respect to the latter, both the FTC and FCC have recognized that imposing vicarious liability serves the TCPA's consumer protection goals especially where "[s]ellers may have thousands of 'independent' marketers" such that "suing one or a few of [the marketers directly] is unlikely to make a substantive difference for consumer privacy." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (April 17, 2013) (quoting FTC Comments) (internal quotation marks omitted). Here, Plaintiffs plead that the Realogy Agents placed unwanted calls on behalf of, under the direction of, and for the benefit of all the Realogy Defendants. SAC ¶¶ 54-61, 75-78, 130, 154, 165.

Nevertheless, the Realogy Defendants argue that Plaintiffs have not provided adequate notice of the claims against each Defendant, falsely claiming that Plaintiffs have not identified who called them and asserting that the alter-ego allegations are not adequately pled. Then they assert that Plaintiffs have not plausibly alleged that the Realogy Defendants have an agency relationship with the Realogy Agents. They are wrong on all accounts.

1.     **The Second Amended Complaint Complies with Rule 8**

The Realogy Defendants claim that the SAC "fails to give proper notice under Rule 8," Mem. at 12, but they base this argument on a contortion of what is required under Rule 8.

Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). In a TCPA case, plaintiffs are not required to allege the identity of the third party who made violative calls on behalf of a defendant nor "what arrangement, if any, that third party had with [any] defendant." *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014). *See also Hartranft v. TVI, Inc.*, No. SACV1501081CJCDFMX, 2017 WL 11249764, at *3 (C.D. Cal. Mar. 9, 2017) (same, citing *Charvat*). Rather, TCPA plaintiffs are simply required to plead a plausible basis to infer that a call was made on behalf of the defendant. *Id.*[4]

---

[4] None of the cases the Realogy Defendants cite in support of its Rule 8 arguments concern the standard for sufficient notice under Rule 8(a). *See United States v. Bestfoods*, 524 U.S. 51, 67–72 (1998) (concerning actual imposition of liability under CERCLA); *Katzir's Floor & Home Design, Inc. v. M-*

Plaintiffs have met this standard. They allege that each of the Realogy Defendants own and control the "Coldwell Banker" brand and intellectual property, as well as control the Realogy Agents who market that brand. SAC ¶¶ 22, 26, 30, 45–53, 59-61, 98–116. They plead how the Realogy Defendants onboard new Realogy Agents, take responsibility for their training, and authorize them to make calls to advertise and sell "Coldwell Banker" real estate services for the benefit of the Realogy Defendants. *Id.* ¶¶ 84, 88, 109, 182, 184–87, 209, 211–13. And they plead that each Plaintiff received numerous unwanted calls from Realogy Agents holding them out as selling real estate for "Coldwell Banker" in violation of the TCPA. *Id.* ¶¶ 119–30, 149–54, 162–65. There is no doubt that the Realogy Defendants are on notice that the Plaintiffs allege that that unwanted calls were placed on behalf of the Realogy Defendants, who should be vicariously liable for those calls under the TCPA.

Realogy Defendants instead claim that Rule 8 forbids the way in which Plaintiffs have "lump[ed] RBG together with all of its alleged subsidiaries and parents." Mem. at 14. But Rule 8 is not Rule 9(b); it contains no heightened specificity requirement. And under both rules, it is well settled that Plaintiffs are not required to plead with specificity information that is in the exclusive control of Defendants. *See United States ex rel. Vatan v. QTC Med. Servs., Inc.,* 721 F. App'x 662, 664 (9th Cir. 2018) (noting that Rule 8 does not require plaintiffs to plead facts in the exclusive control of defendant); *Charvat,* 29 F. Supp. 3d at 1151 (finding argument that plaintiff had not detailed relationship between agent and defendant in TCPA case to be "meritless," where it is the "defendants, not plaintiff, who can reasonably be expected to know these facts"); *In re Dish Network,* 28 F.C.C. Rcd. at 6593 (highlighting that evidence of agency relationships between defendants and third-parties placing calls on their behalf may be acquired through discovery); *see also Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) (explaining that Rule 9(b)'s specificity requirements "may be relaxed as to matters within the opposing party's knowledge"). Here, Plaintiffs have not only pled all the details to

---

*MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) (concerning propriety of imposing default judgment liability on additional judgment debtors under California Code of Civil Procedure section 187); *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1243–48 (N.D. Cal. 2004) (denying defendants' motion for summary judgment after considering "very fact-intensive" questions of liability under plaintiff's agency, alter ego, and ratification theories). While the rules expressed concerning the imposition of liability on parent or subsidiary corporations may be relevant at summary judgment or trial, they have no bearing on providing notice to RBG of Plaintiffs' claims under Rule 8.

which they are privy, they also detail their efforts to ascertain the precise role of the various Realogy entities and individuals—efforts foiled by the Realogy Defendants' onion-like structure of corporate shells and telemarketing practices. *See, e.g., id.* ¶¶ 111–16, 130–31. Such allegations are more than sufficient to put Defendants on notice of the claims against them.

>    2.    **Plaintiffs allege that the calls were placed on behalf of the Realogy Defendants**

Realogy Defendants assert that the SAC is deficient because Plaintiffs purportedly admit that they do not know who placed the calls to them. Mem. at 9 (quoting SAC at ¶ 114). But this allegation must be read in the context of the entire complaint, which provides a roadmap that plausibly connects the calls Plaintiffs received to the Realogy Defendants, by describing the Realogy Defendants' control of the Coldwell Banker brand and practices for authorizing sales calls under that brand name. SAC ¶¶ 45-53, 59-61, 109. Plaintiffs also detail their investigation and how they reached the conclusion that evidence needed to further plead the details of each Realogy Defendants' relationship to the Realogy Agents is in the sole control of the Realogy Defendants, SAC ¶¶ 98-116, 130-33, 154-55, 165-66. Finally, Plaintiffs plead that for each of the unwanted calls they received, the callers identified themselves as calling on behalf of "Coldwell Banker," and then each pleads that the calls received were "initiated with the authorization, knowledge, and/or ratification of the Realogy Defendants, and on behalf of the Realogy Defendants." SAC ¶¶ 132, 154, 165. These allegations are sufficient.

>    3.    **Plaintiffs Have Alleged that the Realogy Defendants Are Vicariously Liable for the Calls Placed to Them**

The Realogy Defendants then assert that Plaintiffs improperly rely on "conclusory allegations" to claim they are vicariously liable for the calls at issue. Not only are the Realogy Defendants incorrect as to what is required at the pleading stage, but Plaintiffs have provided ample allegations to support the finding of an agency relationship under various theories of liability.

Vicarious liability is properly imposed under various principles of the federal common law of agency, including *respondeat superior*, actual agency, apparent agency, and ratification. *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1074 (9th Cir. 2019). However, because inquiries into agency and control are highly fact-intensive, "courts generally determine the existence of an agency relationship at the summary judgment stage, not in determining a motion to dismiss." *Banks v. N. Tr.*

*Corp.*, 929 F.3d 1046, 1054 (9th Cir. 2019). *See also C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479–80 (9th Cir. 2000) (noting that the inquiry is well-suited for jury resolution).[5] Accordingly, at the Rule 12(b)(6) stage, Plaintiffs need only allege sufficient facts from which direct or indirect liability may plausibly be inferred. *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16-cv-05486-JCS, 2017 WL 733123, at *8 (N.D. Cal. Feb. 24, 2017).

Plaintiffs have met their burden here under several different theories of vicarious liability, as well as for acts taken by the Realogy Defendants' alter ego subsidiaries.[6]

### a. Plaintiffs Plead Actual Authority over Realogy Agents and Their Calls

The Realogy Defendants' arguments concerning actual authority gives short shrift both to the doctrine and to Plaintiffs' allegations. At this stage, Plaintiffs need not allege "specifics about how much control" a defendant possessed over its agents or how much information the defendant had as to the means by which the agents conducted telemarketing. *See In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012).[7] Instead, it is sufficient to allege that a defendant "exerted some degree of control" over the persons who made the calls in violation of the TCPA. *Shuckett v. DialAmerica Mktg. Inc.*, No. 17-cv-02073-LAB-KSC, 2019 WL 913174, at *4 (S.D. Cal. Feb. 22, 2019). Plaintiffs have met this standard.

Moreover, the Realogy Agents need not receive express direction from the Realogy

---

[5] The Ninth Circuit decisions on vicarious liability under the TCPA have all been decided at the summary judgment stage. *See Henderson*, 918 F.3d at 1073 (examining evidence of various agency theories on motion for summary judgment); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018) (same); *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010 (9th Cir. 2018) (same); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) (same).

[6] Plaintiffs also allege that the Realogy Defendants are liable under a theory of direct liability for any calls that they initiated. *See* SAC ¶¶ 183, 222. Due to the Realogy Defendants' complex and changing corporate structures, *id.* ¶¶ 98–116, and the common practice of spoofing caller ID information in real estate cold-calls, *see, e.g., id.* ¶¶ 73, 131, evidence as to direct initiation of the Coldwell Banker telemarketing calls here is solely in the possession, custody, and control of the Realogy Defendants. The precise theories of liability, however, need not be decided on this motion because regardless of the theory, discovery will center on the same common facts – namely, evidence of their relationships with and control over each other, their other subsidiaries and shells, and the Realogy Agents.

[7] As with questions of agency more generally, "actual authority or authority to control is a multi-prong fact-intensive inquiry more suitable for summary judgment." *Armstrong v. Investor's Bus. Daily, Inc.*, No. 18-cv-02134-MWF-JPR, 2019 WL 2895621, at *6 (C.D. Cal. Mar. 12, 2019); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 956 (N.D. Cal. 2014) ("[U]ltimately, the scope of the agency is a factual one for the jury to resolve, especially as information about [a defendant's] precise relationship with its [alleged agents] . . . is largely within [the defendant's] possession, custody or control.").

Defendants to make calls in violation of the TCPA in order to be acting as actual agents when making such calls, because implied actual authority is derived "from a general statement of what the agent is supposed to do." *NLRB v. Dist. Council of Iron Workers of the State of Cal.*, 124 F.3d 1094, 1098 (9th Cir. 1997). Thus, the Realogy Agents are acting as actual agents of the Realogy Defendants because the calls at issue are consistent with general directions from the Realogy Defendants to cold-call potential real estate clients on behalf of the Coldwell Banker brand they control. *See* SAC ¶¶ 46, 54–55, 59.

More specifically, Realogy Defendants direct the standard onboarding process for all Realogy Agents working out of any Coldwell Banker office, and provide the same policies, including RBG's "Do Not Contact Policy," for all Realogy Agents to follow nationwide. SAC ¶¶ 51–53. With the other Realogy Defendants, RBG further developed and provides training and explanatory materials to all Realogy Agents regarding RBG's Do Not Contact Policy, including a "Do Not Contact Guide." *Id.* ¶¶ 84, 88, 109. Moreover, Defendants, through RBG, require and maintain signed certifications that acknowledge each Realogy Agent's receipt and understanding of RBG's Do Not Contact Policy. *Id.* ¶¶ 88, 109. But the Realogy Defendants never enforced Policy, and instead impliedly authorized the Realogy Agents to continue their common cold-calling practices on behalf of Coldwell Banker— including those that violate the TCPA. *Id.* ¶ 87. Indeed, the Realogy Defendants promoted training programs that it knew encouraged the use of autodialers. *Id.* ¶ 78. These allegations are more than sufficient to support a reasonable inference that the Realogy Agents were acting as actual agents of RBG when they placed the calls here at issue.

### b. Plaintiffs Plead RBG's Apparent Authority over Realogy Agents and Their Calls

The Realogy Defendants' three sentences on apparent agency misstate the law and facts. "Apparent authority results when the principal does something or ***permits the agent to do something*** which reasonably leads another to believe that the agent had the authority he purported to have." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) (internal quotations omitted) (emphasis added). Moreover, a "principal's ***inaction*** creates apparent authority when it provides a basis for a third party reasonably to believe the principal intentionally acquiesces in the agent's representations or actions." *Id.* at 941 (quoting Restatement (Third) of Agency § 3.03

1  (2006) ("Restatement")) (internal quotation marks omitted) (emphasis added). Apparent authority may

2  also be shown based on "the customs and usages of the particular trade in question." *C.A.R. Transp.*

3  *Brokerage Co.*, 213 F.3d at 480. And there is no requirement that Plaintiffs detrimentally relied on the

4  principal's manifestation. *See* Restatement § 2.03, cmt. e ("To establish that an agent acted with

5  apparent authority, it is not necessary for the plaintiff to establish that the principal's manifestation

6  induced the plaintiff to make a detrimental change in position.").[8]

7      Plaintiffs' allegations create a reasonable inference of the Realogy Agents' apparent authority

8  from the Realogy Defendants.[9] For example, Plaintiffs allege that the Realogy Defendants authorize

9  or direct Realogy Agents to state that they are calling on Realogy's behalf. SAC ¶ 59. This act is enough

10  to plead apparent authority. What is more, the Realogy Defendants only allow real estate agents to

11  telemarket on behalf of Coldwell Banker after accepting their applications to become Realogy Agents.

12  *Id.* ¶ 48. In addition, the Realogy Defendants know that cold-calling for-sale-by-owner and expired

13  listings and using autodialers are common techniques of generating new real estate business, and they

14  expect their Realogy Agents will engage in such techniques. *Id.* ¶¶ 54–55, 78. Plaintiffs sufficiently

15  plead that the Realogy Defendants, whether affirmatively or tacitly, have permitted Realogy Agents to

16  hold themselves out as Coldwell Banker agents on such calls. As Plaintiffs allege, it is reasonable for

17  call recipients to believe that Realogy Agents have the Realogy Defendants' apparent authority to place

18  such calls. *Id.* ¶¶ 49–50, 61.

19         **c.  Plaintiffs Plead RBG's Ratification of Realogy Agents' Telemarketing**
20            **Calls**

    The Realogy Defendants misstate the standards for ratification in two ways. First, "ratification

21  may create an agency relationship when none existed" if the actor purports to be an agent. *Henderson*,

22  918 F.3d at 1074. The Realogy Agents all, at a minimum, purported to be agents of the Realogy

23

---

24  [8] Here, "for the Court to require a TCPA plaintiff to show some kind of 'detrimental reliance' for purposes of establishing agency by apparent authority is nonsensical," as it would "insert into the statute an element that is not there." *Armstrong*, 2019 WL 2895621, at *7 (quoting *Lushe v. Verengo Inc.*, No. 13-cv-7632-AB-RZ, 2015 WL 500158, at *6 (C.D. Cal. Feb. 2, 2015)).

25

26  [9] Like actual authority, determinations of apparent or "ostensible authority are extremely fact-intensive and therefore often inappropriate for summary adjudication." *Maxtor Corp. v. Read-Rite (Thailand) Co.*, No. C-03-3064 SC, 2003 WL 24902406, at *6 (N.D. Cal. Dec. 4, 2003).

27

28

Defendants by holding themselves out as Coldwell Banker agents when making telemarketing calls to buy or sell homes on behalf of Coldwell Banker, *i.e.*, the real estate brand that Defendants own and control. *See* SAC ¶¶ 26, 46, 59, 61, 124, 151, 157–58, 162–63.[10]

Second, there are two ways in which a principal may ratify a third-party's acts: either through "knowing acceptance of the benefit" of the purported agents' acts, or through "willful ignorance," *i.e.*, when a principal consents to a third-party's acts with the awareness that it does not know all material facts. *Id.* at 1073–74. Plaintiffs' allegations satisfy both standards. First, Plaintiffs need not plead that they provided any financial benefit to Realogy Agents as a result of a particular call. *See supra* note 8. Rather, Plaintiffs sufficiently plead that the Realogy Defendants benefited from Realogy Agents' aggressive cold-calling practices and their TCPA violations more generally. *See* SAC ¶¶ 4, 10, 47, 49–50, 54, 60, 88. And Plaintiffs need not plead the exact financial arrangements between RBG, its affiliated companies, and the Realogy Agents, which are within RBG's possession, custody, or control. *Cf. Charvat,* 29 F. Supp. 3d at 1151.

Separately, Plaintiffs have alleged that the Realogy Defendants "communicated consent to the [Realogy Agents] through acquiescence in their calling practices that allegedly violated the TCPA," including through its failure to repudiate such practices. *Henderson*, 918 F.3d at 1075; *see* SAC ¶¶ 54, 78, 87–88. Indeed, they affirmatively promoted the use of autodialers and other aggressive cold-calling techniques that were likely to run afoul of the TCPA, but then turned a blind eye to those techniques and declined to enforce any alleged policies to limit such violations. SAC ¶¶ 78, 86–88. These allegations support a reasonable inference that the Realogy Defendants ratified Realogy Agents' aggressive cold-calling practices in violation of the TCPA.

### d.   Plaintiffs Alter-Ego Theories Are Sufficiently Alleged.

Defendants finally argue that Plaintiffs alter-ego allegations are conclusory. Mem. at 11. Defendants are wrong.

A plaintiff seeking to advance a theory of alter-ego liability must plead: "(1) that there be such

---

[10] This case is thus unlike *Kristensen v. Credit Payment Services, Inc.*, 879 F.3d 1010 (9th Cir. 2018), where callers did not identify who they were or on whose behalf they were calling. *See Henderson*, 918 F.3d at 1074 (distinguishing *Kristensen*).

1   unity of interest and ownership that the separate personalities of the corporation and the individual

2   no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable

3   result will follow." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1115–16 (C.D. Cal.

4   2003) (internal quotations omitted). With respect to the first prong, Plaintiffs provide extensive details

5   of how the Realogy Defendants and their affiliated entities share officers and offices, confuse their

6   own entity names in their public materials, and appear to operate as one organization. SAC ¶¶ 98-116,

7   132-33. They further plead that several of the Realogy Defendants, along with many affiliated entities,

8   have no publicly known business purpose. SAC ¶ 102. With respect to the second prong, Plaintiffs

9   plead that inequities will result if Realogy Defendants are permitted to reap all the benefits of a unified

10  "Coldwell Banker" enterprise, while requiring victims of their torts to seek compensation from

11  individual agents or undercapitalized subsidiaries under their control. *Id.* ¶¶ 115–16.

12          The Realogy Defendants only take issue with the first prong, asserting the allegations are

13  "conclusory" because Plaintiffs allege that certain facts "suggest" the conclusion that Defendants are

14  alter-egos. Mem. at 12. But Plaintiffs specifically plead facts and then draw plausible inferences from

15  those facts. For example, in one instance, Plaintiffs describe with specificity how two officers, Seth I.

16  Truitt and M. Ryan Gorman, have simultaneously held many leadership roles at different Realogy

17  affiliated entities. SAC ¶ 103. Then after detailing their many jobs and titles at various companies,

18  present the logical conclusion that:

19          it is unlikely that the operations of all of these companies requires any time, suggesting
        they are shells or are merely alter-egos and extensions of the Realogy Parent and/or
20          RBG. To the extent time is spent, it is unknown whether the entities compensates
        these people for their time. If they did, the mere fact that each does not have its own
21          officers indicates a lack of corporate independence and disregard for corporate form,
        and if they did not, it suggests that each are undercapitalized in that they cannot pay
22          for officers.

23  SAC ¶ 103. The SAC is full of similar allegations describing how Defendants have structured their

24  business, and the way in which it leads to the logical conclusion that Defendants have abused the

25  corporate form. SAC ¶¶ 98-116.

26  **V.      CONCLUSION**

27          For the reasons given above, the Court should deny the Realogy Defendants' motion in its

28  entirety.

Date: July 9, 2020

Respectfully submitted,

**TYCKO & ZAVAREEI LLP**

By:  */s/ Sabita J. Soneji*
Sabita J. Soneji (SBN 224262)
*ssoneji@tzlegal.com*
V Chai Oliver Prentice (SBN 309807)
*vprentice@tzlegal.com*
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (SBN 181547)
*hzavareei@tzlegal.com*
Kristen G. Simplicio (SBN 263291)
*ksimplicio@tzlegal.com*
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

**REESE LLP**
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Carlos Ramirez (admitted *pro hac vice*)
*cramirez@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs Ronald Chinitz, Sarah Bumpus,
and Rosemary Rodriguez and the Proposed Class*