**FAEGRE DRINKER BIDDLE & REATH LLP**
David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
1950 University Avenue, Suite 450
East Palo Alto, CA 94303
Telephone: (650) 324-6700

Aaron D. Van Oort (*pro hac vice*)
*aaron.vanoort@faegredrinker.com*
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000

*Counsel for Defendants Realogy Holdings Corp.,*
*Realogy Intermediate Holdings LLC, Realogy*
*Services Group LLC, Realogy Group LLC,*
*and Realogy Brokerage Group LLC (f/k/a NRT LLC)*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH BUMPUS, DAVID GRITZ, MICHELINE PEKER, *and* CHERYL ROWAN, *individually, and on behalf of a class of similarly situated persons,*<br><br>Plaintiffs,<br><br>v.<br><br>REALOGY HOLDINGS CORP., REALOGY INTERMEDIATE HOLDINGS LLC, REALOGY SERVICES GROUP LLC, REALOGY GROUP LLC, *and* REALOGY BROKERAGE GROUP LLC (f/k/a NRT LLC),<br><br>Defendants. | Case No.: 3:19-cv-03309-JD<br><br>**Realogy Defendants' Opposition to Plaintiffs' Motion to Modify the Class Definition**<br><br>Judge:　　　　 Hon. James Donato<br>Hearing Date:　 April 27, 2023<br>Time:　　　　 1:30 PM<br>Courtroom:　 11 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................3

    A.    This Court certified classes based on Verkhovskaya's analyses and Plaintiffs' position that Defendants' critiques were "unfounded." ....................................................3

    B.    Plaintiffs are now asking the Court to certify new classes based on analyses different from Verkhovskaya's and that have not been disclosed. ...................................5

ARGUMENT ..................................................................................................................................6

I.    Plaintiffs Cannot Make Major Modifications To The Class Definitions This Late. ..................7

    A.    At this late stage, Rule 23 allows only minor modifications that would require no additional discovery and would not prejudice Defendants. ..................................7

    B.    Rules 16, 26, and 37 reinforce that Plaintiffs cannot at this late stage make major changes based on surprise new evidence. ...............................................9

II.    Plaintiffs' Motion Shows That The Classes Should Be Decertified Because Neither The Certified Classes Nor The Proposed Revised Classes Meet Rule 23. .................................11

    A.    Liability cannot be decided without considering individual issues, and therefore the classes fail Rule 23(b)(3)'s predominance requirement. ........................12

        1.    Whether a call was made by a Coldwell Banker independent realtor is an individual liability issue for every class. .........................................13

        2.    Whether a call was *received* and whether a prerecorded voice was *used* to deliver a message are individual liability issues for all classes. ........................16

        3.    Whether a called number was "residential" is an individual liability issue for every class. ..............................................................................18

        4.    Whether a called person had an established business relationship with the caller or gave consent to call is an individual liability issue for every class. ................................................................................................20

        5.    Whether the called person or someone acting on their behalf registered the number on the Do Not Call registry is an individual liability issue for the Do Not Call classes. ................................................................22

        6.    Whether a message was introduced by a live caller is an individual liability issue for the Prerecorded Messages classes. ...................................23

    B.    Bumpus's claim is not typical of the claims of other Do Not Call plaintiffs. .............24

    C.    The named plaintiffs are not adequate class representatives. .......................................24

CONCLUSION ...............................................................................................................................25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Am. Sales Co. v. SmithKline Beecham Corp.,*
   274 F.R.D. 127 (E.D. Pa. 2010) ......................................................................... 11

5

*In re ARRIS Cable Modem Consumer Litig.,*
   No. 17-CV-01834-LHK, 2019 WL 4242666 (N.D. Cal. Sept. 6, 2019) .........................9

6

7

*Bais Yaakov of Spring Valley v. ACT, Inc.,*
   12 F.4th 81 (1st Cir. 2021) ................................................................................ 13

8

9

*Bowerman v. Field Asset Servs., Inc.,*
   60 F.4th 459 (9th Cir. 2023) .............................................................................. 12

10

*Brown v. DirecTV, LLC,*
   No. CV 13-1170-DMG (EX), 2022 WL 2117803 (C.D. Cal. May 19, 2022) ................. 11

11

12

*Bustillos v. W. Covina Corp. Fitness, Inc.,*
   No. 2:21-CV-04433-SB-AFM, 2022 WL 423396 (C.D. Cal. Jan. 3, 2022) .................... 24

13

14

*Carrera v. Bayer Corp.,*
   727 F.3d 300 (3d Cir. 2013) .............................................................................. 13

15

*Castillo v. Bank of Am.,*
   980 F.3d 723 (9th Cir. 2020) ............................................................................. 12

16

17

*Chennette v. Porch.com, Inc.,*
   50 F.4th 1217 (9th Cir. 2022) ................................................................. 2, 18, 19

18

19

*Davis v. AT&T Corp.,*
   No. 15CV2342-DMS (DHB), 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ............... 7, 8

20

*Del Valle v. Glob. Exch. Vacation Club,*
   320 F.R.D. 50 (C.D. Cal. 2017) ........................................................................... 24

21

22

*Dorfman v. Albertsons, LLC,*
   No. 1:18-CV-00094-EJL, 2019 WL 5873448 (D. Idaho Feb. 12, 2019) ..................... 14

23

24

*Enying Li v. Holder,*
   738 F.3d 1160 (9th Cir. 2013) ............................................................................ 23

25

*Espejo v. Santander Consumer USA, Inc.,*
   No. 11-cv-8987, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ................................. 25

26

27

*FDIC v. Van Dellen,*
   No. CV 10-4915 DSF (SHX), 2012 WL 12886825 (C.D. Cal. Nov. 6, 2012) ............... 11

28

*Fitzhenry v. ADT Corp.*,
No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) ................................................. 14

*Genereux v. Raytheon Co.*,
754 F.3d 51 (1st Cir. 2014) ..................................................................................................... 11

*Greene v. Select Funding, LLC*,
No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495 (C.D. Cal. Feb. 5, 2021)........................16, 22, 24

*Heredia v. Eddie Bauer LLC*,
No. 16-CV-06236-BLF, 2020 WL 127489 (N.D. Cal. Jan. 10, 2020)........................................ 7, 8

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) ................................................................................................. 13

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ..................................................................................................... 9

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ............................................................................................... 8, 23

*Krakauer v. Dish Network LLC*,
No. 1:14-CV-00333 (M.D.N.C.) ................................................................................................ 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................................................................22, 23

*Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*,
No. 17CV666 AJB (BGS), 2019 WL 3554938 (S.D. Cal. Aug. 5, 2019) ................................ 10

*Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*,
7 F.4th 1232 (9th Cir. 2021).................................................................................................... 20

*Luke v. Fam. Care & Urgent Med. Clinics*,
323 F. App'x 496 (9th Cir. 2009) ............................................................................................ 10

*Lyon v. U.S. Immigration & Customs Enf't*,
308 F.R.D. 203 (N.D. Cal. 2015) ............................................................................................. 11

*Moser v. FCC*,
46 F.3d 970 (9th Cir. 1995) ..................................................................................................... 23

*N. L. v. Credit One Bank*,
960 F.3d 1164 (9th Cir. 2020) ................................................................................................. 22

*Nat'l R.R. Passenger Corp. v. Young's Com. Transfer, Inc.*,
2016 WL 1573262 (E.D. Cal. Apr. 19, 2016) .......................................................................... 11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022)......................................................................................................7

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-CV-01393-JST, 2019 WL 468809 (N.D. Cal. Feb. 6, 2019) ................................ 10

*Prime Media Group, LLC v. Acer Am. Corp.*,
   No. 2015 WL 207249 (N.D. Cal. Jan. 21, 2015) ................................................................ 10

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
   2022 WL 2713278 (N.D. Iowa June 9, 2022) .................................................................... 22

*Sandoe v. Bos. Sci. Corp.*,
   333 F.R.D. 4 (D. Mass. 2019) ................................................................ 15, 17, 23, 24

*Sapan v. Yelp, Inc.*,
   2021 WL 5302908 ................................................................................. 2, 13, 20, 25

*Sheridan v. Reinke*,
   611 F. App'x 381 (9th Cir. 2015) .......................................................................................9

*Spears v. First Am. eAppraiseIT*,
   No. 5-08-CV-00868-RMW, 2014 WL 4647679 (N.D. Cal. Sept. 16, 2014) ..................... 12

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...................................................................................................... 16

*True Health Chiropractic Inc. v. McKesson Corp.*,
   2021 WL 4818945 (N.D. Cal. Oct. 15, 2021) ............................................................. 13, 19

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .......................................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................... 13, 15, 19, 21

*Wit v. United Behav. Health*,
   58 F.4th 1080 (9th Cir. 2023) ............................................................................................ 13

*Ybarra v. Dish Network, L.L.C.*,
   807 F.3d 635 (5th Cir. 2015) ............................................................................................. 16

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ........................................................................................... 10

**STATUTES**

15 U.S.C. § 6155(b) ................................................................................................................ 22

28 U.S.C. § 2072(b) ................................................................................................................ 13

47 U.S.C. § 227(a)(4) .............................................................................................................. 20

47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B) ............................................................................... 20

47 U.S.C. § 227(b)(1)(B) ............................................................................................ 16, 18

47 U.S.C. § 227(c)(1) ...................................................................................................... 23

47 U.S.C. § 227(c)(5) ................................................................................................ 16, 22

**OTHER AUTHORITIES**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
    23 F.C.C. Rcd. 9779 (2008) ...................................................................................... 18

47 C.F.R. § 64.1200(a)(1), (2) ...................................................................................... 20

47 C.F.R. § 64.1200(c) .................................................................................................. 22

47 C.F.R. § 64.1200(c)(2) .............................................................................................. 18

47 C.F.R. § 64.1200(f)(15) ............................................................................................ 20

47 C.F.R. § 64.1200(f)(5) .............................................................................................. 20

Fed. R. Civ. P. 26(a)(2)(B), (C) .................................................................................... 10

Fed. R. Civ. P. 37(c)(1) ................................................................................................. 10

Fed. R. Civ. P. 16(b) ........................................................................................................9

Fed. R. Civ. P. 23 ................................................................................................... 1, 7, 11

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 11, 24

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 11, 24

Fed. R. Civ. P. 23(b)(3) ............................................................................................ *passim*

Fed. R. Civ. P. 23(c)(1)(C) ..............................................................................................7

Fed. R. Civ. P. 26 ..................................................................................................... 10, 11

Fed. R. Civ. P. 37 ........................................................................................................... 10

Fed. R. Evid. 702 ........................................................................................................ 5, 9

Fed. R. Evid. 1006 .......................................................................................................... 11

# INTRODUCTION[1]

Six weeks before trial, based on issues Defendants raised nearly two years ago, Plaintiffs have concluded they cannot prove the certified classes with class-wide evidence. Previously, Plaintiffs told the Court that Defendants' critiques of their expert Anya Verkhovskaya were "speculative" and "unfounded." But now, facing cross-examination at trial, they realize her analyses are grossly flawed. She wrongly identified hundreds of thousands of calls, and the trial exhibits show it. Plaintiffs know that if they go to trial on Verkhovskaya's analyses and the certified classes, they will lose.

Weeks before trial, Plaintiffs are therefore asking the Court to reopen class certification under Rule 23 and certify new classes, using surprise new analyses. The differences from the old classes are massive. Plaintiffs propose to excise 876,083 calls and 146,454 numbers from their Do Not Call class (or perhaps 895,103 calls and 203,749 numbers; their math does not add up), and 99,150 calls and 72,789 numbers from their Prerecorded Messages class. Plaintiffs' motion does not disclose which calls or which numbers they are keeping or excluding. The proposed class memberships are a mystery.

Classes can only be modified at this late stage if the changes are minor, would require no new discovery, and would not prejudice the defendant. Plaintiffs' request fails all three requirements. Modified classes also must meet all of Rule 23's requirements, but Plaintiffs' motion addresses none of them. Rule 23 certification rulings must be based on evidence, but Plaintiffs provide none. Without admitting it, they are asking the Court to rely solely on representations from lawyers. They tell the Court that "the analysis and conclusions set forth in Ms. Verkhovskaya's expert report are not changed." Mot. 5. After filing their motion, however, they added new exhibits for their new classes to their trial exhibit list—and Verkhovskaya is the sponsoring witness. Whatever Plaintiffs are trying to do, it is barred by Rules 16, 26, and 37. Their desperately late attempted changes have no good cause. And the changes' evident purpose is to shield Verkhovskaya from cross-examination and substitute new, hidden analyses. Defendants have spent enormous resources conducting discovery, preparing their own expert reports, and preparing to try the case based on what Plaintiffs disclosed during the

---

[1] Defendants do not contest the dismissal without prejudice of the injunctive-relief only classes based on internal-do-not-call-list claims. Defendants told Plaintiffs this during their meet and confer.

1    discovery period. Allowing Plaintiffs to change now would be the height of prejudice.

2         Plaintiffs' motion shows, not that the classes should be modified, but that they should be

3    decertified. Here, as in *Sapan v. Yelp, Inc.*, another TCPA case where Verkhovskaya was the expert and

4    this Court denied class certification, the analyses Plaintiffs relied on for certification have been

5    unmasked as having "questionable reliability and validity." No. 3:17-CV-03240-JD, 2021 WL 5302908,

6    at *3 (N.D. Cal. Nov. 15, 2021). Most fundamentally, while Plaintiffs acknowledge that they need

7    "class-wide proof of each cause of action" (Mot. 2), their own motion shows that liability for their

8    TCPA claims cannot be established classwide. Indeed, to establish liability, Plaintiffs **had to listen to**

9    ***individual recorded messages***. Without that individual review, Plaintiffs could not even identify

10    whether a call was made by a Coldwell Banker independent realtor. In an extraordinary footnote,

11    Plaintiffs reveal that their new name-matching methodology ***excludes class representative Sarah***

12    ***Bumpus*** from their new Do Not Call class. They had to rely on individual evidence to include her.

13         These individual issues are just the beginning. In addition, the question whether a called phone

14    number was "residential" is an individual liability issue. After this Court ruled on class certification,

15    the Ninth Circuit issued *Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022), holding that whether

16    a called number was "residential" or "business" turns on individual evidence about how the number

17    was used and held out. Four former named plaintiffs in this case were dismissed after discovery

18    showed that they used their personal numbers for business, and Plaintiffs' classes include obvious

19    business numbers, such as one for Rancho Food & Spirits. Individual discovery will show more.

20    Individual discovery is also required to determine whether a called person had an established business

21    relationship with the person or entity who called them, such as named plaintiff Sarah Bumpus, who

22    was selling her house with Coldwell Banker when she was called. Individual discovery is also required

23    to determine: (1) whether calls were received or instead dropped, blocked, or made to disconnected

24    numbers; (2) whether the called person invoked do-not-call protection by registering the number, or

25    whether the number was reassigned after someone else registered it; (3) whether a prerecorded

26    message was introduced by a live caller; and more. None of these liability issues can be resolved in

27    one stroke classwide, and settled law provides that when liability cannot be established classwide, Rule

28    23(b)(3)'s predominance requirement cannot be met. That is the case here. Plaintiffs have also shown

themselves to be inadequate class representatives and atypical of other claimants. The Court should therefore deny Plaintiffs' motion and decertify the classes.

## BACKGROUND

### A. This Court certified classes based on Verkhovskaya's analyses and Plaintiffs' position that Defendants' critiques were "unfounded."

This case centers on Plaintiffs' attempt to identify calls that Defendants did not make but that they can be held liable for and that can be proven to violate the do-not-call or prerecorded-message provisions of the TCPA on a common basis. Defendants are five different Realogy corporate entities. One of the entities, Realogy Brokerage Group LLC, owns real estate brokerages that operate under the Coldwell Banker brand. The other entities are at issue only via alleged corporate veil piercing. At the pleading stage, Plaintiffs defined classes covering all calls made "in connection with the Coldwell Banker brand." Dkt. 118 ¶ 213. But lacking any way to discover all calls made by 100,000 local realtors scattered nationwide, Plaintiffs shifted to calls made using three third-party dialing platforms: Mojo, PhoneBurner, and Wavv. *See* Dkt. 219 at 13. Plaintiffs subpoenaed the dialing platforms but did not take depositions establishing the authenticity or reliability of the spreadsheets they produced.

Using unauthenticated records, Plaintiffs' expert Anya Verkhovskaya attempted to determine which dialing-platform users were Coldwell Banker realtors, and which calls allegedly violated the TCPA. Applying a series of assumptions and analyses, she opined that she had "a reliable method by which" those callers and calls "can be determined with a high degree of certainty." Dkt. 206-1, Ex. 1, Verkhovskaya Report ¶¶ 124, 127. For the Do Not Call class, Verkhovskaya identified "1,196,835 telephone calls [made] to 245,302 telephone numbers." *Id.* ¶ 125. For the Prerecorded Messages class, she identified "264,104 telephone calls [made] to 201,001 telephone numbers." *Id.* ¶ 128.

Verkhovskaya issued her initial report on May 28, 2021. Dkt. 206-1, Ex. 1. The same day, Defendants served expert reports from Margaret Daley and Jan Kostyun. Dkts. 206-1, Exs. 17 & 26. The parties then served simultaneous rebuttal reports on June 18, 2021. Dkt. 239-4; Dkt. 206-1, Exs. 7 & 18. In her rebuttal report, Verkhovskaya doubled down on her methodologies. Defendants' rebuttal reports, in contrast, identified severe errors in Verkhovskaya's analyses.

For example, Defendants' expert Daley noted that Verkhovskaya's use of a Soundex program

to match the names of dialing-platform account holders with Coldwell Banker independent realtors was unreliable. "Soundex is a name matching program that assigns letter and number keys for similar sounds." Dkt. 206-1, Ex. 7 ¶ 90. It is notorious for assigning the same code to multiple names—such as "Cyndi, Canada, Candy, Canty, Chant and Condie"—and thus "the names 'Cyndi' and 'Candy' would be considered a match." *Id.* Daley noted that in past cases, Verkhovskaya's name-matching methodology was inaccurate over 25% the time. *Id.* ¶ 96. Plaintiffs were on direct notice of this problem, but they refused to disclose the names of account holders and Coldwell Banker realtors that Verkhovskaya claimed were matches, concealing any errors from Defendants and the Court.

Defendants also noted that Verkhovskaya problematically included calls listed by the dialing platforms as having lasted zero seconds. Those calls cannot have delivered a prerecorded message, and many likely did not connect at all. Dkt. 206-1, Ex. 7 ¶ 66. Defendants put Plaintiffs on notice of this problem. *Id.* ¶ 68. But Plaintiffs refused to disclose the zero-second calls Verkhovskaya claimed were violations, concealing the magnitude of her errors from Defendants and the Court.

Defendants also noted that Verkhovskaya's methodology for identifying and excluding business numbers from her classes was critically flawed. Verkhovskaya performed no screening at all for the Prerecorded Message class. *See* Dkt. 206-1, Ex. 1 ¶¶ 2, 72-73. For the Do Not Call class, she consulted only a single Lexis Nexis database, and instead of including only the numbers the database indicated were residential, she also included numbers for which the database had no information. Dkt. 206-1, Ex. 7 ¶¶ 52-54. To conceal her overreach, Verkhovskaya instructed Lexis Nexis to report the no-information numbers as "MLR," or "Most Likely Residential," a description she made up but her report portrayed as coming from Lexis Nexis. *Id.* ¶¶ 50-54. Defendants put Plaintiffs on direct notice that Verkhovskaya's method swept in obviously non-residential numbers, such as Lighthouse Appraisals, Rancho Food & Spirits, and Palo Alto Health Care System. *Id.* ¶ 62.

On July 14, 2021, after receiving Defendants' critiques, Verkhovskaya served a corrected report. *See* Dkt. 239-3. She did not change her methodologies. *See id.* ¶¶ 125, 128.

Plaintiff moved for class certification on August 20, 2021, based on Verkhovskaya's analyses. Dkt. 155. In opposition, Defendants raised all the flaws noted above. Dkt. 165 at 18-19. Plaintiffs told the Court in response that there was "no legitimate objection to Verkhovskaya's Report." Dkt. 188 at

1; *see also* Dkts. 176 & 323. Relying on Plaintiffs' statements, the Court granted class certification on March 23, 2022. Dkt. 223 at 5-7.

While class certification was pending, Defendants filed Rule 702 motions on February 25, 2022, challenging Verkhovskaya's analyses. Dkt. 206; *see also* Dkt. 202. Plaintiffs again told the Court there were no issues with Verkhovskaya's analyses, calling Defendants' critiques "speculative" and "unfounded." *See* Dkt. 239. The Court denied Defendants' motion on August 16, 2022. Dkt. 290.

## B. Plaintiffs are now asking the Court to certify new classes based on analyses different from Verkhovskaya's and that have not been disclosed.

Now, just weeks before trial, Plaintiffs have changed positions. Their motion says they "have considered [Defendants'] challenges" to Verkhovskaya and believe the classes should be modified in response. Mot. 2. They are trying to avoid losing at trial because they know they lack classwide proof.

Plaintiffs' new proposed class definitions are riddled with new exceptions. Their do-not-call definition, expressed in prose, is:

> All persons in the U.S. who received two or more calls made by a Coldwell Banker-affiliated Agent using a Mojo, PhoneBurner, and/or Storm dialer in any 12 month period on a residential landline or cell phone number that appeared on the National Do Not Call Registry for at least 31 days for the time period beginning June 11, 2015, to present, **except for numbers falling into the following exclusions**: (1) the name on the calling records is not an exact match with the name of a Coldwell Banker-affiliated agent; (2) the contents of a prerecorded message identifies the caller as being affiliated with a brokerage other than Coldwell Banker; (3) calling records show zero duration with the disposition "No Answer," "NO_ANSWER," or "NOANSWER"; (4) calling records with the disposition "NOT YET INTERESTED"; (5) PhoneBurner calling records show the Voicemail field was "0"; (6) PhoneBurner calling records for calls on or before June 26, 2019, show the Voicemail field was "1" and the "Connected" column was "1"; (7) calling records contain the word "Test" in any field; and (8) all numbers that received only one call in a 12-month period after the preceding exclusions are completed.

Their prerecorded-message definition, expressed in prose, is:

> All persons in the United States who received a call on their residential telephone line or cell phone number with an artificial or prerecorded message, as indicated by the following call disposition codes: (i) "Drop Message" (if using the Mojo dialer), (ii) "ATTENDED_TRANSFER" (if using the Storm dialer), and (iii) "VOICEMAIL" (if using a PhoneBurner dialer) in the call records listed in Appendix A and made by a Coldwell Banker-affiliated Agent for the time period beginning June 11, 2015, to present (the "Prerecorded Message Class"), **except for numbers falling into the following exclusions**: (1) the name on the calling records is not an exact match with the name of a Coldwell Banker-affiliated agent; (2) the contents of a prerecorded message identifies the caller as being affiliated with a brokerage other than Coldwell Banker; (3) PhoneBurner calling records show the

Voicemail field was "0"; (4) PhoneBurner calling records for calls on or before June 26, 2019, show the Voicemail field was "1" and the "Connected" column was "1"; and (5) calling records contain the word "Test" in any field.

The first two exceptions for each class directly repudiate Verkhovskaya's Soundex name-matching methodology. Plaintiffs previously told the Court there was "[no] support for the notion that the error rate in [Verkhovskaya's] tried-and-true methodology [was] unacceptably high." Dkt. 176 at 3. Now, Plaintiffs tell the Court that their new, manual name-matching methodology excludes 37,840 calls from the Do Not Call class and 34,259 calls from the Prerecorded Message class that Verkhovskaya opined were made by Coldwell Banker independent realtors. Mot. 3; *see also* Dkt. 206-1, Ex. 3, Verkhovskaya's Dep. Tr. 97:14-16 (testifying her methodology included no manual review). Verkhovskaya chose not to listen to call recordings produced by dialer platform Mojo to check her work. Van Oort Decl. Ex. A, Verkhovskaya Dep Tr. 219:13-16. But now, Plaintiffs have apparently had someone listen to them. Their chart indicates that, even after they manually matched names, the messages still identified another 98,335 calls in the Do Not Call class and 64,812 calls in the Prerecorded Message class that Verkhovskaya had wrongly included, because the caller identified him or herself as "affiliated with a brokerage other than Coldwell Banker." Mot. 3-4.

Plaintiffs' third new do-not-call exception directly repudiates Verkhovskaya's zero-second methodology. Plaintiffs previously told the Court that "[Verkhovskaya's] analysis show[ed] that zero duration calls …in fact rang or were connected." Dkt. 239 at 13. Now, they propose to exclude *720,289* such calls from the Do Not Call class. Mot. 3.

In total, the corrections to Verkhovskaya's "tried-and-true methodology" that Plaintiffs now propose to make add up to 895,103 calls in the Do Not Call class and 99,150 calls in the Prerecorded Messages class. Plaintiffs' chart wrongly gives the total as 876,083 for the Do Not Call class; assuming the accuracy of each category, their math is wrong. And it is unknown whether the categories themselves are at all accurate because Plaintiffs' Motion does not attach any evidence.

## ARGUMENT

Plaintiffs' request to modify the certified classes should be denied because it is untimely and would deeply and unfairly prejudice Defendants. Instead, because Plaintiffs' own motion and the trial record show that the classes cannot be tried on a classwide basis, the classes should be decertified.

## I.      Plaintiffs Cannot Make Major Modifications To The Class Definitions This Late.

Plaintiffs' untimely request fails to comply with four different rules—Rule 23, Rule 16, Rule 26, and Rule 37—none of whose requirements Plaintiffs discuss or attempt to meet.

### A.      At this late stage, Rule 23 allows only minor modifications that would require no additional discovery and would not prejudice Defendants.

Rule 23(c)(1)(C) provides that an order certifying a class "may be altered or amended before final judgment." Under this District's cases, a class definition may be modified after discovery has closed and trial is approaching only if the "proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants." *Heredia v. Eddie Bauer LLC*, No. 16-CV-06236-BLF, 2020 WL 127489, at *10 (N.D. Cal. Jan. 10, 2020) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010)). Indeed, most courts apply these requirements to modifications proposed even at the earlier stage when a plaintiff moves to certify a class other than the one defined in the complaint. *See, e.g., Davis v. AT&T Corp.*, No. 15CV2342-DMS (DHB), 2017 WL 1155350, at *3-4 (S.D. Cal. Mar. 28, 2017) (denying motion to certify modified TCPA class). Here, Plaintiffs never mention the requirements, and their proposed changes violate all three.

**First**, Plaintiff's proposed changes are not minor but immense. As noted above, they would change their entire methodology for identifying calls allegedly made by Coldwell Banker realtors. In addition, they would eliminate 895,103 calls from the Do Not Call class and 99,150 calls from the Prerecorded Message class, leaving only approximately 25% and 60% of the certified classes, respectively. The magnitude of the alterations is matched by the extent of the revisions to the class definitions, with each one receiving numerous new exclusions. Changes this large are not allowed even at class certification, much less on the eve of trial. *See, e.g., Davis*, 2017 WL 1155350, at *2-4 (denying motion for TCPA class certification because plaintiffs' modifications "entirely re-worked" the complaint's class definition into a "completely different class" by adding numerous new conditions).

**Second**, Plaintiffs' changes would require extensive new discovery, for which it is far too late. Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (quotation marks omitted). But Plaintiffs attach literally no proof to their motion. Plaintiffs

apparently had someone listen to some call recordings, draw conclusions from them about whether the caller was "affiliated with a brokerage other than Coldwell Banker," and extrapolate from those recordings to other calls. Mot. 3-4. Plaintiffs submit no evidence of that analysis. Who listened? To which recordings? How did the extrapolation work? There is no evidence. The same is true for Plaintiffs' new name-matching exercise and new zero-second exclusions. Again, there is no evidence. Plaintiffs' new classes would require new disclosures by them, and due process would require giving Defendants a chance to conduct discovery and respond. Belated changes forcing additional discovery like this are not allowed. *See Davis*, 2017 WL 1155350, at *4 (denying motion to certify a modified TCPA class definition when discovery would have to be reopened); *Heredia*, 2020 WL 127489, at *10.

**Third**, allowing Plaintiffs' eve-of-trial modifications would severely prejudice Defendants. Plaintiffs' surprise changes are coming so late that Defendants have prepared their entire case for trial. At immense cost, they have not only finished all fact and expert discovery, but also served motions in limine, prepared trial exhibit lists, and drafted joint pretrial statement, jury instructions, and a verdict form—all in reliance on the expert analyses Plaintiffs disclosed during discovery and the classes this Court certified at Plaintiffs' request. In *Heredia*, Judge Freeman rejected an attempted class modification four months before trial because the defendant had "conducted fact and expert discovery based on the certified (and broader) class" and would therefore be prejudiced by the changes. 2020 WL 127489, at *10. Defendants would suffer even greater prejudice here.

Defendants are not aware of, and Plaintiffs have not cited, any case in which a court has permitted a class plaintiff to modify certified classes this drastically, this close to trial. In the only case Plaintiffs cite, the parties *stipulated* to narrowing the class definitions. *See* Mot. 4-5 (citing *Krakauer v. Dish Network LLC*, No. 1:14-CV-00333 (M.D.N.C.)). While Plaintiffs misleadingly claim that the Fourth Circuit "endorsed" and "credited" the narrowing (Mot. 5), that issue was not raised, disputed, or ruled upon on appeal. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 652 (4th Cir. 2019).

In short, the Court should deny Plaintiffs' motion to certify new, different classes.

### B. Rules 16, 26, and 37 reinforce that Plaintiffs cannot at this late stage make major changes based on surprise new evidence.

Plaintiffs' Motion should also be denied because their new proposed classes rest on new expert analyses that were not disclosed during the discovery period. Plaintiffs' motion represents that "the analysis and conclusions set forth in Ms. Verkhovskaya's expert report are not changed." Mot. 5. After filing their motion, however, Plaintiffs added new class-list exhibits to their trial exhibit list—and Verkhovskaya is the sponsoring witness. Van Oort Decl. Ex. B. These furtive attempts to evade disclosure deadlines are barred by Rules 16, 26, and 37.

First, Plaintiffs' late disclosures would require amending this Court's scheduling order, and they cannot meet Rule 16's good-cause requirement for doing so. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal citations and quotation marks omitted). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* Moreover, although prejudice to Defendants "might supply *additional* reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (emphasis added); *see also Sheridan v. Reinke*, 611 F. App'x 381, 384 (9th Cir. 2015) (affirming denial of motion to reopen discovery based on plaintiff's lack of diligence).

Plaintiffs cannot show diligence. Expert discovery closed on July 16, 2021. Dkts. 117, 195. "Courts in this circuit have consistently found a lack of diligence when plaintiffs delayed even just a few months." *In re ARRIS Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2019 WL 4242666, at *4 (N.D. Cal. Sept. 6, 2019) (collecting cases). Here, Plaintiffs waited *years*. They had Defendants' expert reports in May 2021, opposition to class certification in September 2021, Rule 702 motions in February 2022, and even motions in limine and trial exhibit list in October 2022 because of how close this case came to trial before it was rescheduled. Dkt. 317. Yet Plaintiffs waited until April 6, 2023, seven days before trial exhibits were due, to reveal that they planned to submit new evidence, and until April 7 to reveal the content. Van Oort Decl. Ex. C. Even then, they did not seek leave from the Court. That alone is sufficient reason to deny their motion. *See Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*, No. 17-CV-06177 SBA, 2021 WL 4927012, at *3 (N.D. Cal. Sept. 28, 2021) (denying

1    untimely motion to amend complaint where "Plaintiff d[id] not cite Rule 16(b) … and d[id] not

2    attempt to demonstrate its diligence"). In addition, any request for leave at this late hour would have

3    to be denied. *See, e.g.*, *Prime Media Group, LLC v. Acer Am. Corp.*, 12-cv-05020-BLF, No. 2015 WL

4    307249, at *1 (N.D. Cal. Jan. 21, 2015) (denying motion to amend scheduling order).

5           Plaintiffs' attempt to have Verkhovskaya change her expert testimony is also barred by Rule

6    37. Rule 26 requires expert witnesses to disclose "a complete statement of all opinions the witness will

7    express and the basis and reasons for them" by the dates specified in the court's scheduling order. *See*

8    Fed. R. Civ. P. 26(a)(2)(B), (C). If a party fails to disclose information as required by Rule 26, "the

9    party is not allowed to use that information or witness to supply evidence on a motion, at a hearing,

10   or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also*

11   *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 498 (9th Cir. 2009).

12          Here, the surprise new opinions and analyses Plaintiffs' class motion depends on were not

13   disclosed during the discovery period, and they are different from the opinions and analyses that

14   Verkhovskaya disclosed. Plaintiffs have not attempted to meet their burden to show that their late

15   changes would be substantially justified or harmless, and they cannot meet that burden. *Yeti by Molly*

16   *Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). All four factors weigh against

17   Plaintiffs: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability

18   of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or

19   willfulness involved in not timely disclosing the evidence." *See Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal.*

20   *II, Inc.*, No. 17CV666 AJB (BGS), 2019 WL 3554938, at *5 (S.D. Cal. Aug. 5, 2019) (quoting *Lanard*

21   *Toys Ltd. v Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)).

22          When parties attempt last-minute changes to expert opinions, courts uniformly conclude that

23   the combination of prejudice, disruption, and bad faith bar the attempt. A plaintiff "cannot now accrue

24   an unfair advantage … by belatedly seeking to supplement or amend those reports." *Oracle Am., Inc.*

25   *v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2019 WL 468809, at *3-4 (N.D. Cal. Feb. 6, 2019)

26   (denying untimely motion to amend expert reports (internal quotation marks omitted)). Where, as

27   here, the original discovery deadline passed long ago and trial is imminent, courts have uniformly

28   excluded untimely expert disclosures. *See, e.g.*, *Yeti*, 259 F.3d at 1105-07 (affirming exclusion of expert

disclosed two years late and 28 days before trial); *Luke*, 323 F. App'x at 499-500 (affirming exclusion of expert report disclosed four months late and ten weeks before trial); *Genereux v. Raytheon Co.*, 754 F.3d 51, 59 (1st Cir. 2014) (affirming exclusion of expert report disclosed thirteen months late and at summary judgment); *Nat'l R.R. Passenger Corp. v. Young's Com. Transfer, Inc.*, 2016 WL 1573262, at *6 (E.D. Cal. Apr. 19, 2016) (excluding expert report disclosed one year late and seven months before trial); *FDIC v. Van Dellen*, No. CV 10-4915 DSF (SHX), 2012 WL 12886825, at *1 (C.D. Cal. Nov. 6, 2012) (excluding expert report disclosed two months late and six weeks before trial). Nor can Plaintiffs replace an expert disclosure with a "summary exhibit" that is a new expert disclosure in disguise. *See Brown v. DirecTV, LLC*, No. CV 13-1170-DMG (EX), 2022 WL 2117803, at *6 (C.D. Cal. May 19, 2022) (holding in a TCPA case that "Plaintiffs cannot use Rule 1006 to admit an analysis prepared by an expert without having that expert testify, subject to the Rule 26 disclosure requirements").

\*      \*      \*

For all these reasons, Plaintiffs' motion to certify new, different classes should be denied.

## II.    Plaintiffs' Motion Shows That The Classes Should Be Decertified Because Neither The Certified Classes Nor The Proposed Revised Classes Meet Rule 23.

Instead of modifying the classes, the Court should decertify them because Plaintiffs' own motion shows they are pervaded by individual liability issues, causing them to fail Rule 23(b)(3)'s predominance requirement. The class representatives are also atypical and inadequate.

When a party moves to modify a class, the motion triggers a full review of Rule 23's requirements, and the class must be shown to meet them. *See, e.g.*, *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 211 (N.D. Cal. 2015) (requiring the plaintiff to show the modified class meets Rule 23); *Am. Sales Co. v. SmithKline Beecham Corp.*, 274 F.R.D. 127, 139 (E.D. Pa. 2010) ("If the parties wish to modify the class, they must explain how the Substituted Class comports with Rule 23.").

As relevant here, Rule 23(a)(3) requires the court to find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(4) requires the court to find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). And Rule 23(b)(3) requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

It is settled law that, when liability elements require individual discovery and resolution, Rule 23(b)(3)'s predominance requirement is not met. *See, e.g.*, *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 470-71 (9th Cir. 2023) (ordering decertification on finding that the common evidence "speaks only to some elements of the class members' claims" and the other elements turn on individual evidence); *Castillo v. Bank of Am.*, 980 F.3d 723, 732 (9th Cir. 2020) (finding individual issues predominated when "Castillo has provided no common method of proof, or representative evidence of proving classwide liability on which each employee could have relied").

Plaintiffs do not attempt to show that any of these requirements can be met, and their own motion shows that they are not met by either the certified classes or the proposed new classes.

### A. Liability cannot be decided without considering individual issues, and therefore the classes fail Rule 23(b)(3)'s predominance requirement.

Most fundamentally, and dispositively, the classes are riddled with individual liability issues. Plaintiffs acknowledge that they need "class-wide proof of each cause of action." Mot. 2. It is now unmistakably clear that such proof does not exist. Many elements turn on individual proof.

As this Court held at class certification, a common issue means "a common contention 'capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Dkt. 223 at 9 (quoting *Alcantar*, 800 F.3d at 1052 (internal quotations and citations omitted)).

An individual issue, in contrast, is one on which a reasonable jury could reach different conclusions for different plaintiffs because of material differences in the relevant evidence. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member" (internal quotation marks and citation omitted)); *Spears v. First Am. eAppraiseIT*, No. 5-08-CV-00868-RMW, 2014 WL 4647679, at *21 (N.D. Cal. Sept. 16, 2014) ("[T]he court must look to the underlying substantive law to determine whether the proposed method of classwide proof prevents the party opposing class certification from asserting its substantive rights." (quoting *United States v. City of New*

1 *York*, No. 07-CV-2067 (NGG)(RLM), 2011 WL 3174084, *16 (E.D.N.Y. July 8, 2011)).

2       As this Court held, individual issues "have to be tried separately." Dkt. 223 at 10 (quoting

3 *Tyson Foods*, 577 U.S. at 453 (internal quotations omitted) (emphasis added). This imperative follows

4 from the Rules Enabling Act, which forbids using a rule of procedure to "abridge, enlarge, or modify

5 any substantive right." 28 U.S.C. § 2072(b). A defendant must be able "to litigate its statutory defenses

6 to individual claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011); *see also Wit v. United Behav.*

7 *Health*, 58 F.4th 1080, 1098 (9th Cir. 2023) (reversing class ruling that "excus[ed] all absent class

8 members' failure to exhaust" because it "abridged UBH's affirmative defense of failure to exhaust").

9 Separate litigation for individual issues is also required to protect defendants' due process rights to

10 conduct discovery and present a defense, as well as their Seventh Amendment right to a jury trial. *See*

11 *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) (bifurcation preserved the defendant's

12 "due process right to present individualized defenses"); *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12

13 F.4th 81, 89 (1st Cir. 2021) (class-wide resolution must address "the need to adjudicate individual

14 issues" in a way that is "protective of defendants' Seventh Amendment and due process rights.");

15 *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (a "defendant in a class action has a due process

16 right to raise individual challenges and defenses to claims").

17       Under this law, all of Plaintiffs' TCPA claims involve individual liability issues that must be

18 litigated and tried separately. Doing so would be unmanageable. Common issues thus do not

19 predominate, and a class action is not a superior way to resolve the claims. The classes should be

20 decertified, just as a TCPA class was decertified in *True Health Chiropractic Inc. v. McKesson Corp.*, 2021

21 WL 4818945 (N.D. Cal. Oct. 15, 2021), and for the same reasons this Court denied certification of a

22 TCPA class in *Sapan v. Yelp, Inc.*, 2021 WL 5302908.

23       **1.      Whether a call was made by a Coldwell Banker independent realtor is
        an individual liability issue for every class.**

24

25       First, Plaintiffs now concede that resolving their claims requires listening to individual message

26 recordings. Mot. 3. This requirement, all on its own, precludes certification of any class.

27       Listening to individual messages is required for both liability and vicarious liability. For

28 vicarious liability, Plaintiffs' theory is that Realogy Brokerage Group can be held liable for calls made

1   by independent-contractor local realtors who worked under the Coldwell Banker brand and associated

2   with brokerages owned by Realogy Brokerage Group. This theory's necessary first step is to identify

3   calls made by Coldwell Banker independent realtors—because Realogy Brokerage Group is not even

4   arguably responsible for calls made by other people. Verkhovskaya proposed to do that by using her

5   "sounds similar" Soundex methodology to match accountholder names on three dialing platforms—

6   Mojo, PhoneBurner, and Wavv—to names of Coldwell Banker relators. Plaintiffs told this Court her

7   approach was "tried-and-true." Dkt. 176 at 3. But they refused to disclose Verkhovskaya's list of

8   alleged matches to prevent it from being checked. Dkt. 206-1, Ex. 7 ¶ 84.

9          Now, Plaintiffs' motion shows that Verkhovskaya's methodology was spectacularly unreliable.

10  When Plaintiffs manually matched names, they removed 37,840 calls from the Do Not Call class and

11  34,259 calls from the Prerecorded Messages class. Mot. 3. *Even then*, however, the matching *still* was

12  not accurate. When Plaintiffs had someone listen to sample recorded messages, their contents required

13  *another* 98,335 calls to be removed from the Do Not Call class and 64,812 calls from the Prerecorded

14  Messages class because the caller was apparently "affiliated with a brokerage other than Coldwell

15  Banker." *Id.* at 3-4. Plaintiffs are now confessing what the sample call recordings will show at trial:

16  that they cannot prove with classwide evidence that all calls in their classes were made by Coldwell

17  Banker realtors. One recording, for example, states: "Hey, this is Billy McElroy with Keller Williams

18  Realty. I was actually calling about your house for sale. …" Van Oort Decl. Ex D (MOJO-Chinitz-

19  0012081).

20         Needing to individually listen to recorded messages precludes class certification. *See, e.g.*,

21  *Dorfman v. Albertsons, LLC*, No. 1:18-CV-00094-EJL, 2019 WL 5873448, at *4 (D. Idaho Feb. 12, 2019)

22  ("Because the Court would also need to make individualized inquiries into the circumstances and

23  content of the calls other class members received, the Court agrees with Defendant that no common

24  question predominates …."); *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *7 (S.D.

25  Fla. Nov. 3, 2014) ("[L]istening to 36,748 phone calls … demonstrates that Plaintiff has not met his

26  burden of showing that common questions predominate over individual issues.").

27         In addition, the recordings are just the tip of the individual-evidence iceberg. They are only a

28  sample covering only a small portion of the calls included in Plaintiffs' classes. *See* Dkt. 206-1, Ex. 17

¶¶ 36-45 (explaining that 2,100 audio files had been produced). They are illustrative but not complete. What they illustrate is that Plaintiffs' attempt to identify calls made by Coldwell Banker realtors using account names is entirely unreliable and flawed. Individual discovery into other calls for which sample call recordings were not produced—such as testimony and documents from the people who made and received the calls—will uncover more calls not made by Coldwell Banker realtors. *See id.* ¶ 45.

In an extraordinary footnote, Plaintiffs reveal that class representative Sarah Bumpus's own claim cannot be included in their revised class without individual evidence. Apparently, the new matching methodology Plaintiffs are proposing *does not identify Chris Mitchell*, the person who called Bumpus. *See* Mot. 3 n.3; Dkt. 118 ¶¶ 157-64. In their footnote, however, Plaintiffs state that they "did not remove calls from Chris Mitchell, whose name was listed as Christopher Mitchell in the Defendants' list of agents **because there was independent evidence that these two individuals were the same person**." Mot. 3 n.3 (emphasis added). This is impermissible. "[A] class representative must be part of the class." *Dukes*, 564 U.S. at 348 (citations omitted). Plaintiffs cannot use one method for class members, but a different, individual method for the class representative. Bumpus is not typical, and she is not an adequate representative. *See* Sections II.B and C.

The content of individual calls is also relevant for other reasons beyond identifying the caller. Plaintiffs' vicarious-liability theories of apparent authority and ratification both require the caller to have identified him- or herself as a Coldwell Banker realtor on the call. *See* Defendants' Brief Re Disputed Instruction Nos. 13D-Apparent Authority Offered by Defendants & No. 13G- Ratification Offered by Defendants. Assessing this requires individual proof. In addition, all of Plaintiffs' vicarious-liability theories require the call's topic to be Coldwell Banker business; Realogy Brokerage Group is not even arguably liable for calls made about other matters. But Plaintiffs' classes include such calls. *See, e.g.,* Van Oort Decl. Ex E (MOJO-Chinitz - 0007355) ("Hello, this is Johnny Green. I am running for Magistrate Judge, democrat, division one, position two. I need your vote, June 5th.").

The content of a call is also relevant to liability for the prerecorded-message claims, because calls that are not solicitations require only a lower form of consent, such as providing a number as a contact number. *See, e.g., Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 10 (D. Mass. 2019) (finding that plaintiffs had not shown common proof exists to show the calls were solicitations because they required a per-

call review); *Greene v. Select Funding, LLC*, No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing DNC claim after noting the plaintiff could not show the content of the communications were solicitations). The content can also reveal consent to call or an established business relationship with the person who was called. *See, e.g.,* David Gross Decl. for MILs, Ex. 10 at 3 ("It's the . . .anniversary week of closing on your property. So we just wanted to reach out.").

In sum, because Plaintiffs' own motion and the trial record show that individual call recordings must be reviewed, and other evidence of the content of individual calls must be collected and reviewed, to resolve both liability and vicarious liability, common issues do not predominate under Rule 23(b)(3).

### 2. Whether a call was *received* and whether a prerecorded voice was *used* to deliver a message are individual liability issues for all classes.

Another set of individual liability issues arises out of Plaintiffs' need to prove not just that calls were attempted, but that they were actually *received* and, for the Prerecorded Messages class, that a prerecorded voice actually *played*. Only a "person who has *received*" calls violating the do-not-call regulations may bring a claim. 47 U.S.C. § 227(c)(5); *see Greene*, 2021 WL 4926495, at *5 (dismissing do-not-call claim based on receipt element). Likewise, only a person who received a call on which a prerecorded voice was "us[ed]" to "deliver a message" may bring a claim. 47 U.S.C. § 227(b)(1)(B). "[M]aking a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA." *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015). Moreover, because an unreceived call and an unplayed message cannot have caused Article III injury, these issues preclude classwide judgment. "'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not'" *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208 (2021) (citation omitted).

Contrary to law, Plaintiffs chose to have Verkhovskaya include in their classes hundreds of thousands of calls that lasted zero seconds. Only individual evidence from the called parties, including their phone logs, blocking apps, and call records can tell which of these calls were received. As Defendants' expert Kostyun explained, sometimes calls are "No Answer" calls because the dialed number was disconnected. Dkt. 206-1, Ex. 18 ¶¶ 10-12. As Defendants' expert Daley stated, there "is no way to determine, absent individualized review of the call recipients telephone bills whether the placed call[s] rang, were blocked or encountered network failures." Dkt. 206-1, Ex. 7 ¶ 63.

1    Plaintiffs also chose not to have Verkhovskaya disclose which calls in her classes lasted zero

2  seconds and which ones lasted longer. Neither the Court nor the jury can identify them. Plaintiffs'

3  motion now represents that 720,289 zero-second calls with the dispositions "No Answer,"

4  "NO_ANSWER," or "NOANSWER" are included in the Do Not Call class. This cannot be tested.

5    Plaintiffs' belated changes also would not fix the zero-second problem because many other

6  zero-second calls remain in the classes, including calls labeled "Drop Message" in the Prerecorded

7  Message class, and both those calls and calls labeled "Answering Machine" in the Do Not Call class.

8  Dkt. 206-1, Ex. 1 ¶¶ 54, 82. Again, Plaintiffs have not disclosed which calls these are.

9    The record also shows that "Drop Message" is an unreliable indicator for any length of call

10  because it is "manually set by [the] user" (Van Oort Decl. Ex F), meaning the caller chooses whether

11  to flag a call with that note. Dkt. 206-1, Ex. 18 ¶¶ 50-62. It is not a system indicator either that a

12  message was left or even that a call rang. Van Oort Decl. Ex. G, ¶ 8; Ex. H, ¶¶ 8-9. It is instead a

13  hearsay statement made by an out-of-court witness (the caller) that must be excluded from evidence

14  even if the spreadsheets produced by the dialers are admitted. *But see* Defendants' Motion in Limine 3

15  (explaining why the spreadsheets must be excluded). Still further, Defendants would have to be

16  allowed to discover how individual callers used the "Drop Message" flag—and Plaintiffs did not let

17  Verkhovskaya disclose their identities, even after discovery closed.

18    Finally, evidence shows that prerecorded messages sometimes are not delivered even when

19  the dialer records indicate they might have been. *See Sandoe*, 333 F.R.D. at 10 (in another Verkhovskaya

20  case, holding that "plaintiff ha[d] failed to demonstrate that common proof can be used to establish

21  …whether the prerecorded message was actually transmitted"). For example, Plaintiff Cheryl Rowan

22  does not recall ever receiving any prerecorded messages; her only knowledge that it happened came

23  from this lawsuit. "Q. How do you know the caller left a message? A. It was – it's part of this suit,

24  so…" (Dkt. 293, Ex. 33 Rowan Dep. 65:25-66:1); "Q. Why do you believe the caller left a prerecorded

25  message? A. Can't answer that. Q. You have no independent recollection of the caller leaving you a

26  prerecorded message; is that correct? A. That's right. I don't." (*id.* at 69:10-17.)

27    In sum, determining whether a call was *received* or a message actually *played* are individual liability

28  issues that cannot be resolved classwide. They require decertification under Rule 23(b)(3).

### 3. Whether a called number was "residential" is an individual liability issue for every class.

Another individual liability issue also requires decertification: determining whether a called phone number was "residential." The TCPA's do-not-call provisions apply only to residential numbers, not business numbers. *See* 47 C.F.R. § 64.1200(c)(2) (protecting only "residential telephone subscriber[s]"); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 9779, 9785 (2008) ("To the extent that some business numbers have been inadvertently registered on the national registry, calls made to such numbers will not be considered violations of our rules."). For landlines, the TCPA's prerecorded-message provisions also apply only to residential numbers. 47 U.S.C. § 227(b)(1)(B) (protecting "residential telephone line[s]").

After this Court ruled on class certification, the Ninth Circuit issued a new decision making it clear that assessing whether a called number was "residential" turns on individual evidence. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022). In *Chennette*, a putative class sued over text messages. *Id.* at 1220. Addressing their claims, the Ninth Circuit held that phones used for both personal and business purposes are presumptively residential, but the presumption is rebuttable. *Id.* at 1225. To evaluate whether the presumption is rebutted and the number is not residential, courts must consider: "(1) how plaintiffs hold their phone numbers out to the public; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) how much plaintiffs use their phones for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line." *Id.* These factors make evidence of how individuals used and held out their phones directly relevant to establishing a TCPA violation.

For the certified Prerecorded Message class, Plaintiffs' expert Verkhovskaya performed no analysis to exclude business landlines. *See* Dkt. 206-1, Ex. 1 ¶¶ 2, 72-73. For the Do Not Call class, Verkhovskaya consulted only a single Lexis Nexis database, and she included numbers for which that database had no information, not just numbers it marked as residential. Dkt. 206-1, Ex. 7 ¶¶ 52-54. For neither class did Verkhovskaya attempt to collect or consider evidence from called parties addressing the *Chennette* factors. *See* Dkt. 206-1, Ex. 1 ¶¶ 72-73.

Although Plaintiffs propose to change other aspects of Verkhovskaya's methodology, they

leave this methodology unchanged. *See* Mot. 3. Samples show that it is grossly overbroad and indicate that individual discovery will reveal defenses to many calls under the *Chennette* factors. For example, four named Plaintiffs—Nathan Rowan, Pararmjit Lalli, David Gritz, and Daniel Caruso—were dismissed after discovery showed that their allegedly personal telephone numbers were used for business. *See* Dkt. 206-1, Ex. 26 ¶¶ 50-54. In addition, Defendants' expert discovered that even a preliminary review of a small sample of the numbers for which Lexis Nexis had no data showed many business numbers (Dkt. 206-1, Ex. 7 ¶¶50-56), including obvious ones such as the number for Rancho Food & Spirits. *Id.* ¶ 62. Defendants must be allowed "to litigate [their] statutory defenses to individual claims." *Dukes*, 564 U.S. at 367. Here, they have not had the opportunity because Plaintiffs did not disclose their lists of class telephone numbers until after discovery closed, they still have not identified who the alleged called parties were, and individual discovery of hundreds of thousands of class members is not allowed in a class action in any event.

The issuance of *Chennette* after this Court decided class certification makes this case analogous to *True Health Chiropractic Inc. v. McKesson Corp.*, where the FCC issued a new TCPA decision after a class was certified, and a court in this District decertified the class in response. 2021 WL 4818945 (N.D. Cal. Oct. 15, 2021). In *True Health*, the TCPA claims involved faxes. While the case was pending, the FCC decided that the TCPA did not apply to faxes received through online fax services, only on standalone machines. *Id.* at *1. Liability therefore turned on what each plaintiff had used. Plaintiffs tried to address this element "with a proferred expert who opines on general trends in online fax service usage, from which Plaintiffs then make assertions about the likelihood of particular individual consumer choices." *Id.* The court rejected this as "essentially an effort to aggregate, through an expert and Plaintiffs' counsel's own assumptions, individualized data." *Id.* at *2. Plaintiffs sought "to transform the *absence* of uniform proof . . . into a generalization they claim applies to each class member." *Id.* The court rejected this attempt and noted that "each person can testify" about the machine they used." *Id.* Liability therefore could not be resolved in common. *Id.* at *3. In the same way here, determining whether a called number was "residential" cannot be resolved in common. *Id.* at *2.

1    **4.      Whether a called person had an established business relationship with the caller or gave consent to call is an individual liability issue for every class.**

2

3    Another individual issue is whether a called person had an established business relationship

4    with the caller or gave consent to be called. *See Sapan*, 2021 WL 5302908 (Donato, J.) (denying class

5    certification because of these issues). Named plaintiff Bumpus herself has this issue because she was

6    selling her house with Coldwell Banker, and both Plaintiffs and Defendants ask about this individual

7    defense on their trial verdict forms.

8    The do-not-call regulations apply only to "telephone solicitations," which do not include a call

9    or message to any person: (1) "with that person's prior express invitation or permission" or (2) "with

10   whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4) (defining "telephone

11   solicitation"); 47 C.F.R. § 64.1200(f)(15) (same). An "established business relationship" can be formed

12   by either (1) "the call recipient's purchase or transaction with the entity within the eighteen (18)

13   months immediately preceding the date of the telephone call" or (2) the call recipient's "inquiry or

14   application regarding products or services offered by the entity within the three months immediately

15   preceding the date of the call." 47 C.F.R. § 64.1200(f)(5). Similarly, the prerecorded-message

16   provisions do not apply to calls made with the "prior express consent" of the called party. 47 U.S.C.

17   § 227(b)(1)(A)(iii), (b)(1)(B). When a call is a "telemarketing call," consent requires "an agreement, in

18   writing, bearing the signature of the person called." 47 C.F.R. § 64.1200(a)(1), (2); 64.1200(f)(9). But

19   for other calls, providing a contact number is sufficient. *Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 7

20   F.4th 1232, 1235 (9th Cir. 2021) (holding that prior consent can be "given either orally or in writing").

21   In *Sapan v. Yelp, Inc.*, this Court denied certification of a do-not-call TCPA class based on the

22   individual liability issues raised by the established business relationship and consent defenses. 2021

23   WL 5302908. Just as Plaintiffs do here, the *Sapan* plaintiffs used Verkhovskaya as an expert to identify

24   allegedly violating calls on a common basis. *Id.* at *2-3, 5-6. This Court, however, held that whether a

25   person had an established business relationship "would necessarily entail an individualized analysis of

26   his or her communications with" the caller. *Id.* at *5. Consequently, plaintiff had "not demonstrated a

27   level of predominance and commonality that would make this case … suitable for adjudication on a

28   class wide basis." *Id.* at *6.

In the same way here, the individual liability defenses of established business relationship and consent require decertification. At summary judgment, this Court held that "the record demonstrates a genuine dispute of material fact about the calls made to [named plaintiff] Bumpus, and **whether Bumpus had an established business relationship** with NRT West," the Coldwell Banker brokerage in her area. Dkt. 269 at 2 (emphasis added). When the class representative has a fact issue on the established business relationship defense, that indicates the defense will exist for other called persons, too. Bumpus's example is not unique. Independent realtors were advised on the established business relationship. Dkt. 293, Ex. G at RBG051044 & Ex. D at RBG056175; *see also* Dkt. 296-23 at RBG007778 (suggesting to build contact lists for "current and past customers"). Coldwell Banker listed homes with individuals in Plaintiffs' class (David Gross Decl. for MILs Ex. 11) and some of those homes were on the market at the time of the calls at issue. (*Id.* Ex. 12.) Call recordings also reveal Coldwell Banker had done business with called parties within 18 months of the call. *Id.* Ex. 10 at 3 ("It's the . . .anniversary week of closing on your property. So we just wanted to reach out.").

So too for consent. Training advises independent realtors to get "contact information by having [people] fill out your Open House register". *See* Dkt. 293, Ex. G at RBG051045 and Dkt. 293, Ex. D at RBG056175 (stating that permissible calls include "[a]ny consumer that provides express written consent"). Sample sign-in forms for open houses state, "you are consenting to receive phone calls from Coldwell Banker Realty regarding our services." *See id.* Ex. 9. The record also contains examples of such consented-to calls. *See id.* Ex. 10 at 1–2 (thanking called party for "coming by our open houses"). Realtors also can generate leads using Zillow.com or Realtor.com, both of which allow users to give consent to be called by realtors. *See* Van Oort Decl. Exs. I, J. Not surprisingly, then, call recordings produced in this case reflect consent to call. For example, one recording stated:

> Hi, this is Kelly calling from the Jim Allen group. Just wanted to check in with you. It's been a few weeks since we touched base and wanted to see how everything was going with your home search.

*Id.* Ex. K (MOJO-Chinitz – 0001114).

Defendants must be allowed "to litigate [their] statutory defenses to individual claims." *Dukes*, 564 U.S. at 367. Here, they have not had the opportunity because Plaintiffs did not disclose their lists of class telephone numbers until after discovery closed, they *still* have not identified who the alleged

called parties were, and individual discovery of hundreds of thousands of class members is not allowed in a class action in any event. *See* Defs' Opp. to Plaintiffs' MIL 1.

> **5.     Whether the called person or someone acting on their behalf registered the number on the Do Not Call registry is an individual liability issue for the Do Not Call classes.**

Another individual liability issue for the Do Not Call classes is whether the called party (or someone on his or her behalf) registered the number on the national registry.

Do-not-call protection applies only to a person who "has registered his or her telephone number on the national do-not-call registry." *See* 47 C.F.R. § 64.1200(c). And only a person who has received multiple calls "in violation of the regulations prescribed under this subsection" has a cause of action. 47 U.S.C. § 227(c)(5). If a number on the registry is disconnected and assigned to a new, unrelated person and that new person receives a call on it, there is no regulatory violation and hence no cause of action. This is plain both from the regulation and from Congress's direction to "remove from [the national] registry those telephone numbers that have been disconnected and reassigned." 15 U.S.C. § 6155(b). Courts agree. *See Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, at *2–3 (N.D. Iowa June 9, 2022) (dismissing DNC claim because plaintiff did "not allege that she registered her telephone number on the do-not-call registry," even though her number was on the registry); *Greene*, 2021 WL 4926495, at *4 (noting the claim is tied to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry"). *cf. N. L. v. Credit One Bank*, 960 F.3d 1164, 1168-70 (9th Cir. 2020) (holding that consent to receive a prerecorded message does not follow a number when it is reassigned).

The zone-of-interest analysis under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), confirms that the cause of action created by § 227(c)(5) is limited. The zone-of-interest analysis uses "traditional tools of statutory interpretation." *Id.* at 127. The first tool is examining the statutory and regulatory text, which, as demonstrated above, limits the cause of action to people who have registered their telephone number either directly or through someone acting on their behalf. The TCPA's purpose confirms this interpretation, because Congress directed the FCC to prescribe regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations ***to which they object***." 47 U.S.C. § 227(c)(1); *see also Lexmark Int'l*, 572 U.S. at 131

1    (considering a "helpful, detailed statement of the statute's purposes" (cleaned up)).

2        Plaintiffs' reliance on *Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019), is misplaced.

3    Unlike in *Krakauer*, Defendants here do not argue that do-not-call claims may be brought only by

4    "telephone subscribers"—the people who own the calling plan. *See id.* at 656. Rather, consistent with

5    *Krakauer*, Defendants maintain that "any *person* who received an improper call" can have a claim, so

6    long as that person invoked do-not-call protection by registering his or her phone number on the do-

7    not-call registry, either directly or through someone acting on his or her behalf.

8        The record shows that "numbers registered on the NDNCR may remain on there long after

9    being disconnected or reassigned." Dkt. 206-1, Ex. 7 ¶ 119(explaining that the FTC tends to remove

10   reassigned numbers only when requested by telecommunication providers). Hence, "[t]here is no

11   available method to identify whether or not the call recipient was the person who registered on the

12   DNC," except through individual discovery. *See* 206-1, Ex. 17 ¶¶ 46-57.

13       Because individual discovery is required to determine who registered a number, liability cannot

14   be determined on a common basis, and the classes must be decertified. *See Sandoe*, 333 F.R.D. at 10

15   (holding, in another Verkhovskaya TCPA case: "Plaintiff has also failed to demonstrate that common

16   proof can be used to establish…whether the individual who received the call was the individual who

17   registered his or her name on the Do-Not-Call Registry.").

18       **6.    Whether a message was introduced by a live caller is an individual
             liability issue for the Prerecorded Messages classes.**

19

20       In the Prerecorded Messages classes, another individual liability issue is whether the

21   prerecorded calls were introduced by a live person. The Ninth Circuit held in *Moser v. FCC*, 46 F.3d

22   970, 975 (9th Cir. 1995), that the TCPA permits the "use of taped messages introduced by live

23   speakers." This holding was essential to the court's decision that the TCPA did not unduly restrict

24   speech and thus did not violate the First Amendment. But even if the court's discussion were dicta,

25   "[w]ell-reasoned dicta" is still "the law of the circuit." *Enying Li v. Holder*, 738 F.3d 1160, 1165 n.2 (9th

26   Cir. 2013) (citing *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc)).

27       Under *Moser*, whether a taped message was left automatically or whether instead a live person

28   chose to leave the message after getting a person's answering machine is an individual issue. Mr. Rydell,

the co-founder of PhoneBurner, Inc., stated in a supplemental declaration that "any voicemails or prerecorded messages reflected in the call activity logs generated by Kai Data LLC and Symphony Source LLC's dialers must have been introduced by a live caller." Dkt. 224, Ex. 22 ¶ 7. Further, as Defendants' expert Kostyun noted, the Mojo systems allows callers to "speak directly with a called party who answers the call or leave a voicemail message with a live introduction, and then also play a pre-recorded message to the party during that same call." Dkt. 206-1, Ex. 17 ¶ 18. This issue must be individually addressed for each member of the Prerecorded Message classes.

*       *       *

For all these reasons, liability for Plaintiffs' claims cannot be resolved on a common basis, Rule 23(b)(3)'s predominance requirement is not met, and the classes should be decertified.

### B.    Bumpus's claim is not typical of the claims of other Do Not Call plaintiffs.

Another reason to decertify the Do Not Call class is that Bumpus, the sole representative for that class, does not meet Rule 23(a)(3)'s typicality requirement for two reasons. First, as shown above, Bumpus was *selling her house with Coldwell Banker*. When a named plaintiff is subject to an individual defense that will be a focus at trial and is not shared by all class members, that makes the plaintiff's claim atypical. *See Bustillos v. W. Covina Corp. Fitness, Inc.*, No. 2:21-CV-04433-SB-AFM, 2022 WL 423396, at *3 (C.D. Cal. Jan. 3, 2022) (so holding for a TCPA named plaintiff because of an established relationship with the defendant). Second, also as shown above, Plaintiffs' proposed new methodology for identifying calls made by Coldwell Banker realtors *does not identify the calls made to Bumpus*. Her claim is therefore not typical of the proposed class claims. *See, e.g.*, *Sandoe*, 333 F.R.D. at 8 ("[T]his is not the first time plaintiff's expert, Ms. Verkhovskaya, has faced criticism that her reverse-append process failed to identify the named plaintiff in a putative class action.").

### C.    The named plaintiffs are not adequate class representatives.

The class should also be decertified under Rule 23(a)(4) because Plaintiffs have proven themselves inadequate as class representatives. Because Bumpus would not be a member of the new Do Not Call class, she is by definition not an adequate representative. *See, e.g.*, *Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 58 (C.D. Cal. 2017) (finding no adequacy of representation because "[p]laintiff may not be a member of the class she purports to represent"); *Greene*, 2021 WL 4926495,

1   at *5 (striking class allegations when the plaintiff was not a member of the class); *Espejo v. Santander*

2   *Consumer USA, Inc.*, No. 11-cv-8987, 2016 WL 6037625, at *11 (N.D. Ill. Oct. 14, 2016) (denying class

3   certification where objective criteria of class definition, based on call records, excluded plaintiff).

4          The named plaintiffs have further shown their inadequacy by failing to take sufficient

5   discovery to make the third-party call records on which the class claims depend admissible evidence

6   at trial. As shown in Defendants' Motion in Limine 3, Plaintiffs chose not to take any deposition of

7   two of the three dialing platforms, with the result no evidence shows the records to be authentic or

8   qualified for an exception to the hearsay rules. Plaintiffs' inadequate discovery has put the people they

9   are purporting to represent at risk. *Cf. Sapan*, 2021 WL 5302908, at *2 (Donato, J.) (commenting in

10  denying certification of a TCPA class that plaintiff "dropped the ball during discovery").

11         Finally, Plaintiffs have shown their inadequacy through this Motion. Their own chart shatters

12  the existing certified classes and leaves Verkhovskaya's credibility in tatters. Their choice to wait until

13  six weeks for trial to address critiques that Defendants raised nearly two years ago casts doubt on their

14  diligence. And their repeated pattern of concealing flaws in their evidence, telling the Court

15  Defendants' critiques are "speculative" and "unfounded," and then changing course when the flaws

16  are revealed, makes it difficult to trust anything they say. In this very Motion, Plaintiffs do it again.

17  They state that "the analysis and conclusions set forth in Ms. Verkhovskaya's expert report are not

18  changed." Mot. 5. After filing their motion, however, they added surprise new class-list exhibits to the

19  trial exhibit list that are allegedly based on their new analyses—and they list Verkhovskaya as the

20  sponsoring witness. This is attempted trial by ambush in complete disregard for the rules, this Court's

21  scheduling deadlines, and what Plaintiffs previously told the Court about this case.

22                                         **CONCLUSION**

23         Plaintiffs' motion is untimely, unjustified, and unsupported. The Court should not certify

24  Plaintiffs' surprise new classes. Instead, because Plaintiffs' own motion, together with the factual

25  record, shows that the new classes, equally with the old ones, are riddled with individual issues, the

26  Court should deny Plaintiffs' motion and decertify the classes.

27

28

1    Dated: April 12, 2023                            Respectfully submitted,

2
                                                      s/ *Aaron D. Van Oort*
3                                                     **FAEGRE DRINKER BIDDLE &**
                                                      **REATH LLP**
4                                                     David J.F. Gross (SBN 290951)
                                                      *david.gross@faegredrinker.com*
5                                                     1950 University Avenue, Suite 450
                                                      East Palo Alto, CA 94303
6                                                     Telephone: (650) 324-6700
                                                      Facsimile: (650) 324-6701
7

8                                                     Aaron D. Van Oort (*pro hac vice*)
                                                      *aaron.vanoort@faegredrinker.com*
9                                                     2200 Wells Fargo Center
                                                      90 South 7th Street
10                                                    Minneapolis, MN 55402
                                                      Telephone: (612) 766-7000
11                                                    Facsimile: (612) 766-1600

12
                                                      *Counsel for Defendants Realogy Holdings*
13                                                    *Corp., Realogy Intermediate Holdings LLC,*
                                                      *Realogy Group LLC, and Realogy Brokerage*
14                                                    *Group LLC (f/k/a NRT LLC)*

15

16

17

18

19

20

21

22

23

24

25

26

27

28