John W. Barrett (*pro hac vice*)
jbarrett@baileyglasser.com
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 340-2287

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan and the Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH BUMPUS, MICHELINE PEKER, *and* CHERYL ROWAN, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>REALOGY HOLDINGS CORP., REALOGY INTERMEDIATE HOLDINGS LLC, REALOGY SERVICES GROUP LLC, REALOGY GROUP LLC, *and* REALOGY BROKERAGE GROUP LLC (f/k/a NRT LLC),<br><br>Defendants. | Case No.: 3:19-cv-03309-JD<br><br>**DECLARATION OF JOHN W. BARRETT IN SUPPORT OF MOTION TO MODIFY THE CLASS DEFINITION AND TO DISMISS WITHOUT PREJUDICE THE IDNC CLAIM**<br><br>Hon. James Donato |

I, John W. Barrett, declare as follows:

1. I am a Partner at the law firm of Bailey & Glasser LLP, which is co-counsel for Plaintiffs and the certified Classes in the above-captioned action. I am a member in good standing of the bars of West Virginia and Massachusetts, and I am admitted to practice before this Court in this case.

2. The facts set forth in this declaration are based in part upon my personal knowledge, investigation, and discussion with co-counsel and our expert Ms. Anya Verkhovskaya, and I could competently testify to them if called upon to do so.

**Overview**

3. In Plaintiffs' motion to modify the class definitions, Class Counsel identified seven categories of proposed exclusions to the Class definitions in order to streamline the case. ECF No. 372. As discussed in the motion at 4-5, a similar process was used effectively in another Telephone Consumer Protection Act ("TCPA") jury trial that I litigated, one of the very few to be tried to affirmed judgment on a class action basis. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019).

4. At the outset, it is important to note that the proposed modification is of course only a proposal. If the Court rejects it, our plan, subject to Court approval, is to continue to litigate the case on behalf of the certified Classes and allow the jury to decide through special interrogatories whether to find the calls discussed in the categories below violate the TCPA.

5. In this declaration I will explain each step in generating the proposed modified class definition. For context, it is helpful to understand Ms. Verkhovskaya's method of identifying class members affected by the proposed modifications. The operative class definitions include 1,196,835 telephone calls to 245,302 unique telephone numbers in the NDNC Class, and 264,104 telephone calls to 201,001 unique telephone numbers in the Prerecorded Message Class. Corrected Expert Rep. Verkhovskaya ¶¶ 124-25, 127-28, ECF No. 355-1 ("Verkhovskaya Report" or "Report").[1] As proposed in our motion to modify the class definitions, that number would be reduced to account for

---

[1] This is the same report discussed at length in the Court's order granting class certification, ECF No. 223, and was the primary basis for Plaintiffs' motion to certify the classes.

1

DECLARATION OF JOHN W. BARRETT IN SUPPORT OF MOTION TO MODIFY THE CLASS DEFINITION
*Bumpus v. Realogy Holdings Corp.*, Case No. 3:19-cv-03309-JD

1 the identification of telephone calls (and their matching telephone numbers) affected by each exclusion. Each step was done in "waterfall" succession, such that calls and phone numbers that were removed from the previous step would not be removed again in a later step. This method allowed each call to be removed only once, and avoided double counting of a call and corresponding telephone number if the call fell under multiple categories.

6. As additional background, the call logs that support the Classes came from three dialing companies: former defendant Mojo Dialing Solutions, LLC ("Mojo"), PhoneBurner, Inc. ("PhoneBurner"), and WAVV Communications, LLC ("WAVV"). *See* Verkhovskaya Rep. ¶ 45, ECF No. 355-1; Order re Class Certif. 5, ECF No. 223.

**Explanation of Each Step Leading to Plaintiffs' Proposed Modified Class Definition**

**Category 1: Methods Used to Identify Zero Duration Calls with the Call Disposition "No Answer," "NO_ANSWER," or "NOANSWER" (NDNC Class Only)**

7. In her Report that led to class certification, Ms. Verkhovskaya explained that one step in her identification of calls and telephone numbers in the NDNC Class was to eliminate all calls with zero-second duration, except for calls in the call logs produced by Mojo that had one of the following dispositions: "Drop Message," "Answering Machine," and "No Answer." Verkhovskaya Rep. ¶ 54, ECF No. 355-1. She retained those three categories because record evidence indicates that zero-second calls with these three dispositions were connected to the call recipient. *See, e.g.*, Tr. Dep. Verkhovskaya 63:9-64:14, 66:22-70:9, 76:2-3, 205:1-206:9, 210:22-212:14, ECF No. 239-5; Pls.' Consolidated Opp'n Mots. Exclude Verkhovskaya 13-15, ECF No. 239.

8. Despite this evidence, Defendants lodged numerous objections to the inclusion of any zero-second calls in the NDNC Class. *See, e.g.*, Rebuttal Expert Rep. Daley ¶ 63, ECF No. 212-3. While Plaintiffs do not agree with Defendants' arguments, to resolve in part this merits challenge and narrow disputed issues, Class Counsel proposed in the motion to modify the class definition to remove from the NDNC Class all zero-second duration calls with the call disposition "No Answer" (as well as, in an abundance of caution, the similar dispositions "NO_ANSWER" and "NOANSWER"). Class Counsel do *not* propose to remove zero-second duration calls with the dispositions "Answering Machine" or "Drop Message" from the NDNC Class.

2

DECLARATION OF JOHN W. BARRETT IN SUPPORT OF MOTION TO MODIFY THE CLASS DEFINITION
*Bumpus v. Realogy Holdings Corp.*, Case No. 3:19-cv-03309-JD

9. We therefore asked Ms. Verkhovskaya to identify all zero-second duration calls from Coldwell Banker-affiliated agents with a call disposition "No Answer," "NO_ANSWER," or "NOANSWER" from her NDNC Class list for the proposed removal. Ms. Verkhovskaya performed this work by using computerized Structured Query Language ("SQL") queries to identify and tally telephone calls with these dispositions within the NDNC Class call records. This work identified 720,289 calls made to 77,961 unique phone numbers.

10. The method used to identify the calls in this category did not involve listening to any call recordings.

**Category 2: Methods Used to Identify Calls with the Disposition "NOT YET INTERESTED" (NDNC Class Only)**

11. Category 2 proposes to exclude calls from the NDNC Class that included the call disposition "NOT YET INTERESTED." Class Counsel propose to remove calls with this disposition—which affects a *de minimis* number of calls (32 out of 1,196,835)—to address any potential challenges based on the existence of an established business relationship between the caller and recipient. We asked Ms. Verkhovskaya to identify calls in the NDNC Class with the "NOT YET INTERESTED" disposition. She did so using computerized SQL queries within the NDNC Class call records.

12. The method used to identify the calls in this category did not involve listening to any call recordings.

**Category 3: Methods Used to Exclude Certain Calls in PhoneBurner Logs (Both NDNC and Prerecorded Message Classes)**

13. Category 3 relates to call records produced by PhoneBurner. It has two parts, detailed below. The proposed exclusions are based on information PhoneBurner provided that was not previously accounted for in the Verkhovskaya Report. The proposed exclusion affects a *de minimis* number of calls—21 out of 1,196,835 for the NDNC Class and 75 out of 264,104 for the Prerecorded Message Class.

14. By way of background, Paul Rydell, a co-founder of PhoneBurner, provided a declaration on April 29, 2021, stating PhoneBurner's production in this case included, *inter alia*, four

3

call logs and four associated documents describing the headings of the columns in the logs. Decl. Rydell ¶¶ 3-5, ECF No. 355-3; *see also* ECF Nos. 355-5, 355-6, 355-7, 355-8 (documents describing column headings). All PhoneBurner call logs include columns titled "connected" and "voicemail," the content of which is always a "0" or a "1."

15. The first part of the proposed Category 3 exclusion is to remove all PhoneBurner calls where a "0" is in the "voicemail" column. The documents describing the PhoneBurner column headings indicate that for all logs, when a "1" is in the "voicemail" column, it means "[a] recording was played," and therefore when a "0" is in the "voicemail" column, there is no specific record that a recording was played. Calls where the "voicemail" column did not expressly indicate a recording was played were identified in Plaintiffs' motion to modify for proposed removal from the Classes.

16. The second part of the proposed Category 3 exclusion is to remove all PhoneBurner calls that are dated up to and including June 26, 2019, and that have a "1" in the "connected" column. According to Mr. Rydell, for these calls, the "connected" field "would be set to 0 if a voicemail was left and it would be set to 1 if a live answer button was clicked." Decl. Rydell at p. 3:12-15. Requiring a "0" to be in the "connected" column for the June 26, 2019, and earlier date range of the PhoneBurner calls evidences that a voicemail was left.

17. Class Counsel asked Ms. Verkhovskaya to identify all calls that met either of the above criteria. Using computerized SQL queries within the NDNC Class call records, Ms. Verkhovskaya identified 21 such calls in the NDNC Class, but no telephone numbers that only received these calls in that class—thus the proposal would not remove any unique phone numbers. With respect to the Prerecorded Message Class, using the same computerized SQL queries, she identified 75 such calls to 38 unique numbers.

18. The method used to identify the calls in this category did not involve listening to any call recordings.

**Category 4: Methods Used to Identify Calls by Agents Whose Names Were Identified as a Coldwell Banker-affiliated Agent by Soundex Software**

**(Both NDNC and Prerecorded Message Classes)**

19. In her Report leading to class certification, Ms. Verkhovskaya was tasked with

4

identifying which of the calls were placed by Coldwell Banker-affiliated agents. The call logs from each of the three dialing companies included a field corresponding to the name of the person who placed each call, and Defendants produced a list of Coldwell Banker-affiliated agents[2] together with the dates they were affiliated with Coldwell Banker; Ms. Verkhovskaya was able to match the names in the call logs with the names provided by Defendants. Verkhovskaya Rep. ¶¶ 57-58, ECF No. 355-1. However, in some instances the name corresponding to the call log did not exactly match the name of the Coldwell Banker agent produced in discovery. For example, a call record might indicate the name of the person who placed the call was "Jon Smith" or "Jonny Smith," but the agent's full name provided by Coldwell Banker in discovery was "Jonathan Smith." *Id.* ¶ 58.

20. As described in her Report, to identify these types of scenarios systematically, Ms. Verkhovskaya used a proprietary version of a software program called "Soundex," which uses an algorithm to match names. Using the Soundex software, Ms. Verkhovskaya input the list of Coldwell Banker agent names obtained in discovery, and used the Soundex algorithm to identify matches. Verkhovskaya Rep. ¶¶ 57, 58, ECF No. 355-1.

21. Defendants and their experts questioned Ms. Verkhovskaya's application of Soundex and claimed that some telephone numbers may have been included in the class due to what they said was an error in Ms. Verkhovskaya's use of Soundex. Rebuttal Expert Rep. Daley ¶¶ 84-96, ECF No. 212-3.

22. To eliminate any dispute on this issue, Class Counsel directed Ms. Verkhovskaya to identify any calls that were previously included in the Classes because of Soundex, so Plaintiffs could propose their removal from the Classes. Ms. Verkhovskaya used computerized SQL queries to identify and tally telephone numbers that had been matched to Coldwell Banker-affiliated agents using the Soundex algorithm as described in her Report. Ms. Verkhovskaya has not changed her expert opinion about the appropriateness and reliability of Soundex, but she provided the data set requested by Class Counsel.

23. Eliminating the Soundex name matches resulted in the proposed exclusion of 39,205

---

[2] The file name is 2021-01-11 Chinitz - CONFIDENTIAL RBG005013A.xlsx.

5

Declaration of John W. Barrett in Support of Motion to Modify the Class Definition
*Bumpus v. Realogy Holdings Corp.*, Case No. 3:19-cv-03309-JD

calls to 10,571 unique phone numbers from the NDNC Class, and 39,942 calls to 26,224 unique phone numbers from the Prerecorded Message Class.

24. Furthermore, according to the dialer call records, Class Representative Sarah Bumpus received a call from "Chris Mitchell," but there was only a "Christopher Mitchell" in the Defendants' list of agents. Because "Chris" is the diminutive of "Christopher," Class Counsel directed Ms. Verkhovskaya to identify which calls were made by "Chris Mitchell" from the initial Classes identified by Ms. Verkhovskaya prior to the narrowing process. There were 1,365 calls to 513 unique telephone numbers in the NDNC Class and 5,683 calls to 2,116 unique telephone numbers in the Prerecorded Message Class from Chris Mitchell. These calls were added back into the proposed narrowed Class Lists.

25. Overall, this step of removing Soundex to identify agent names, and retaining the "Chris Mitchell" calls, resulted in the proposed removal of 37,840 phone calls to 10,058 unique phone numbers in the NDNC Class, and 34,259 calls and 24,113 phone numbers in the Prerecorded Message Class.

26. The method used to identify the calls in this category did not involve listening to any call recordings.

**Category 5: Methods Used to Identify Calls Where Any Field Contained the Word "Test"**
**(Both NDNC and Prerecorded Message Classes)**

27. Category 5 proposes to exclude all calls where the word "Test" appeared in any field in the call records, as Defendants' expert claimed that the Classes included calls records with the disposition "Test" which might not be telemarketing calls. Class Counsel proposed to exclude these calls, which are *de minimis* in number, because we identified them as an anomaly suggesting that a small number of calls may not have been made. Ms. Verkhovskaya identified these "Test" calls using computerized SQL queries within the NDNC and Prerecorded Class call records—there were two of them to a single telephone number in the NDNC Class and four calls to two telephone numbers in the Prerecorded Message Class.

28. The method used to identify the calls in this category did not involve listening to any call recordings.

**Category 6: Methods Used to Identify Calls Where the Prerecorded Message**

**Did Not Specifically Identify the Agent as Affiliated with Coldwell Banker**

**(Both NDNC and Prerecorded Message Classes)**

29.   The Mojo dialing system is a software application that Coldwell Banker-affiliated agents used to send calls to class members, including prerecorded message calls. Through discovery, Mojo produced 753 call log files from accounts held by Coldwell Banker-affiliated agents. Verkhovskaya Rep. pp. 17-36, ECF No. 355-1 (listing Mojo call log files by Bates number). Mojo also produced 2,166 audio files, each containing a single prerecorded message only a few seconds in length.

30.   The individual call entries within the Mojo call log files that indicate a prerecorded message was dropped do not identify the file name of any particular audio recording that was dropped. For that reason, Plaintiffs did not rely on the 2,166 Mojo audio files at class certification, because it was unknown which audio recording, if any, was sent through any specific call. Ms. Verkhovskaya's Report did not review or rely upon the 2,166 Mojo audio files for the same reason. *See generally id.*

31.   Nonetheless, in his pre-class certification expert report, Defendants' expert Jan Kostyun "sampled" the 2,166 recordings, and identified 13 that were blank, appeared to have been sent on behalf of a company other than Coldwell Banker, or for other reasons were unconnected to Coldwell Banker solicitations. Expert Rep. Kostyun ¶ 36-45, ECF No. 187-6. According to Mr. Kostyun, the audio files "could have been potentially played during the calls at issue." *Id.* ¶ 36.

32.   Although he only identified 13 such recordings, and did not connect those recordings to any calls to the Classes, Class Counsel anticipated that Kostyun would attempt at trial to identify more such recorded messages and thereby confuse and mislead the jury. For this reason, we endeavored to identify these recorded messages so we could ask the Court to exclude from the class any calls in which they could have been potentially played.

33.   To do this, first we identified the 221 call log files (out of 753 produced) that both contained at least one call in the Classes and were associated with at least one Mojo audio recording. To do this, Class Counsel's staff member reviewed the Mojo production, which, according to the production email from Mojo's counsel, was sorted by Customer ID. The Mojo production was organized in the following grouping for each Customer ID: (1) a call log; (2) a file containing a list of

7

the Mojo accountholder's leads and contacts, and their contact information; (3) audio recordings, if any, associated with the account (i.e., not all Mojo accountholders made pre-recorded calls or maintained audio recordings in their Mojo accounts); and (4) invoices.

34. For example:

- MOJO-Chinitz 1.CSV[3] is a call log pertaining to a specific Coldwell Banker agent account. Verkhovskaya Rep. p. 17, ECF No. 355-1.
- MOJO-Chinitz 2.CSV is a list of that account's leads and contacts, and their contact information ;
- MOJO-Chinitz 3.WAV is an audio recording of a call from the same account.
- MOJO-Chinitz 4.TIF – MOJO-Chinitz 53.TIF are monthly invoices for that account.

Thus, the "MOJO-Chinitz 3.WAV" audio recording is associated with the same account as the "MOJO-Chinitz 1.CSV" call log.

35. Using the pattern in the above production order, Class Counsel matched 1,032 produced audio recordings with the 221 call log files described above.

36. Class Counsel's staff members then listened to those 1,032 Mojo audio files and identified which of them did not include an agent specifically identifying themselves as with "Coldwell Banker." Of the 1,032 audio files, 698 included an agent specifically identifying themselves as with "Coldwell Banker," leaving 334 recordings where an agent did not specifically identify themselves in connection with "Coldwell Banker."

37. Next, Class Counsel matched these 334 audio recordings with 100 specific Mojo call log files (from the 221 call log files) that may have included calls that transmitted the 334 audio recordings that were unrelated to Coldwell Banker. To do this, Class Counsel used the same methods and inferences described above in Paragraphs 33-35.

38. Class Counsel provided Ms. Verkhovskaya with that list of 100 Mojo call log files and requested that she exclude *all calls* from those call logs files from her Class Lists (both NDNC and

---

[3] For ease of reading, the leading zeroes have been removed from the Bates numbers here.

8

DECLARATION OF JOHN W. BARRETT IN SUPPORT OF MOTION TO MODIFY THE CLASS DEFINITION
*Bumpus v. Realogy Holdings Corp.*, Case No. 3:19-cv-03309-JD

Prerecorded Message Class Lists), since the logs lack information linking any specific call with any specific recording. Using computerized SQL queries within the NDNC and Prerecorded Message Classes' call records, Ms. Verkhovskaya identified 63,387 calls to 7,050 numbers in the NDNC Class, and 64,812 calls to 48,641 numbers in the Prerecorded Message Class to be excluded.

39. This analysis was only performed on the Mojo files. PhoneBurner also produced audio recordings, but no defense expert has testified that any of those recordings are unrelated to Coldwell Banker. WAVV produced no audio recordings.

**Category 7: Methods Used to Identify Calls Where Only 1 Call Was Made to a Number on the NDNCR in a 12-month Period after Above Analysis Was Complete (NDNC Class Only)**

40. After carrying out the exclusions identified above, to ensure all remaining numbers on the NDNC Class List after the proposed exclusions meet the criteria for Do Not Call violations of the TCPA, Class Counsel requested Ms. Verkhovskaya identify all numbers and calls where there was only one remaining call made within a 12-month period for all phone numbers on the NDNCR for at least 32 days, as a minimum of 2 calls within a 12-month period is required for the call to be a violation of the TCPA. Using computerized SQL queries within the NDNC Class call records, Ms. Verkhovskaya identified an additional 54,512 calls and 51,384 phone numbers in the NDNC Class that Class Counsel propose removing.

41. This process did not involve the review of any call recordings.

* * *

42. I have reviewed the transcript from the Court's hearing on June 20, 2024, and I am aware of the Court's concerns about the impact of this process on the viability of the previously certified Classes. I regret that the efforts described above and in our motion to modify the class definition have caused the Court to question the continued viability of the certified Classes. Our intention was to proactively address and eliminate certain merits challenges to portions of the calls at issue, based on the Defendants' discrete attacks on the sufficiency of the evidence, and based on our own work as we prepared for trial. If the Court rejects our proposal to modify the class, we are fully prepared the try the case on behalf of the certified Classes without any of the suggested modifications,

and to allow a jury to decide through special interrogatories whether the challenges addressed above are valid and should result in judgment against the affected class members. For example, a question could be posed to the jury to ask whether Plaintiffs have proven by a preponderance of the evidence that the remaining zero duration calls were connected to the recipients such that they violate the TCPA.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 5th day of July 2024.

/s/_____
John W. Barrett

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan and the Classes*