George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Sabita J. Soneji (State Bar No. 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Hassan A. Zavareei (State Bar No. 181547)
hzavareei@tzlegal.com
Gemma Seidita (State Bar No. 322201)
gseidita@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900

Brian A. Glasser (*pro hac vice*)
bglasser@baileyglasser.com
John W. Barrett (*pro hac vice*)
jbarrett@baileyglasser.com
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

Rachel E. Kaufman (State Bar No. 259353)
rachel@kaufmanpa.com
Avi Kaufman (*pro hac vice*)
avi@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881

Stefan Coleman (*pro hac vice*)
law@stefancoleman.com
**LAW OFFICES OF STEFAN COLEMAN**
66 West Flagler Street, Unit 900
Miami, Florida 33130
Telephone: (877) 333-9427

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker,*
*and Cheryl Rowan and the Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH BUMPUS, MICHELINE PEKER, and CHERYL ROWAN, *individually, and on behalf of a class of similarly situated persons,*<br><br>                    Plaintiffs,<br><br>         v.<br><br>REALOGY HOLDINGS CORP.; REALOGY INTERMEDIATE HOLDINGS LLC; REALOGY GROUP LLC; REALOGY SERVICES GROUP LLC; *and* REALOGY BROKERAGE GROUP LLC (f/k/a NRT LLC),<br><br>                    Defendants. | Case No. 3:19-cv-03309-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASSES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 27, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 27, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable James Donato in Courtroom 11, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan will respectfully move for preliminary approval of the class action Settlement reached in this case.

Plaintiffs request that the Court enter the proposed Preliminary Approval Order and:

1.      Preliminarily approve the Settlement;

2.      Preliminarily certify the Settlement Classes;

3.      Appoint Sarah Bumpus as the representative of the Settlement NDNC Class and Micheline Peker and Cheryl Rowan as the representatives of the Settlement Prerecorded Message Class;

4.      Appoint Tycko & Zavareei LLP, Reese LLP, Kaufman, P.A., and Bailey & Glasser LLP as counsel for the Settlement Classes;

5.      Appoint Epiq Class Action & Claims Solutions, Inc., as the Settlement Administrator and direct it to carry out the duties assigned to it in the Settlement Agreement;

6.      Approve the proposed Notice Plan, direct that Notice be distributed to the Settlement Classes, and direct that Non-Settlement Class Notice be distributed to members of the Certified Classes who are not members of the Settlement Classes;

7.      Approve the Parties' proposed Claim Form and the proposed procedures for submitting Claims, objecting to the Settlement, and requesting exclusion; and

8.      Schedule a Final Approval Hearing.

Plaintiffs base the motion on the following documents: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings, record, and other filings in the case; the Declaration of George V. Granade and its accompanying exhibits; the Declaration of John W. Barrett; the Declaration of Cameron A. Azari, Esq. Regarding Notice Plan; and such other oral and written points, authorities, and evidence as the parties may present at the time of the hearing on the motion. Defendants Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy

1  Group LLC, Realogy Services Group LLC, and Realogy Brokerage Group LLC (formerly known as

2  NRT LLC) support this motion.

3  Respectfully submitted,

4  Date: January 20, 2025                                    **REESE LLP**

5                                          By:   */s/ George V. Granade*
                                               George V. Granade (State Bar No. 316050)
6                                              *ggranade@reesellp.com*
                                               8484 Wilshire Boulevard, Suite 515
7                                              Los Angeles, California 90211
                                               Telephone: (310) 393-0070
8
                                               **REESE LLP**
9                                              Michael R. Reese (State Bar No. 206773)
                                               *mreese@reesellp.com*
10                                             100 West 93rd Street, 16th Floor
                                               New York, New York 10025
11                                             Telephone: (212) 643-0500

12                                             **TYCKO & ZAVAREEI LLP**
                                               Sabita J. Soneji (State Bar No. 224262)
13                                             *ssoneji@tzlegal.com*
                                               1970 Broadway, Suite 1070
14                                             Oakland, California 94612
                                               Telephone: (510) 254-6808
15
                                               **TYCKO & ZAVAREEI LLP**
16                                             Hassan A. Zavareei (State Bar No. 181547)
                                               *hzavareei@tzlegal.com*
17                                             Gemma Seidita (State Bar No. 322201)
                                               *gseidita@tzlegal.com*
18                                             2000 Pennsylvania Avenue, NW, Suite 1010
                                               Washington, District of Columbia 20036
19                                             Telephone: (202) 973-0900

20                                             **BAILEY & GLASSER LLP**
                                               Brian A. Glasser (*pro hac vice*)
21                                             *bglasser@baileyglasser.com*
                                               John W. Barrett (*pro hac vice*)
22                                             *jbarrett@baileyglasser.com*
                                               209 Capitol Street
23                                             Charleston, West Virginia 25301
                                               Telephone: (304) 345-6555
24
                                               **KAUFMAN P.A.**
25                                             Rachel E. Kaufman (State Bar No. 259353)
                                               *rachel@kaufmanpa.com*
26                                             Avi Kaufman (*pro hac vice*)
                                               *avi@kaufmanpa.com*
27                                             237 South Dixie Highway, Floor 4
                                               Coral Gables, Florida 33133
28                                             Telephone: (305) 469-5881

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICES OF STEFAN COLEMAN**
Stefan Coleman (*pro hac vice*)
*law@stefancoleman.com*
66 West Flagler Street, Unit 900
Miami, Florida 33130
Telephone: (877) 333-9427

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan and the Classes*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     Introduction ........................................................................................................................ 1

II.    Overview of the History of the Litigation ....................................................................... 2

III.   The Terms of the Settlement Agreement ......................................................................... 2

     A.     The Proposed Settlement Classes .......................................................................... 2

     B.     The Benefits to the Settlement Classes ................................................................. 3

     C.     Class Member Release .............................................................................................. 3

     D.     Settlement Administrator and Administration Costs .......................................... 4

     E.     Proposed Notice Plan ............................................................................................... 4

     F.     Objections and Exclusions ...................................................................................... 4

     G.     Fee and Service Awards ........................................................................................... 5

IV.    Legal Standard for Preliminary Approval ....................................................................... 5

V.     Argument ............................................................................................................................. 6

     A.     The Settlement Agreement Warrants Preliminary Approval ............................. 6

          1.     Rule 23(e)(2)(A): Plaintiffs and Plaintiffs' Counsel have adequately represented the proposed Settlement Classes .................................. 6

          2.     Rule 23(e)(2)(B): The Settlement was negotiated at arm's length ...... 6

          3.     Rule 23(e)(2)(C): The relief for the Settlement Classes is substantial ............. 7

               a.     Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal ............. 7

               b.     Rule 23(e)(2)(C)(ii): The proposed method of distributing relief and of processing Claims is and will be effective ......................... 8

               c.     Rule 23(e)(2)(C)(iii): The terms and timing of the proposed Fee Award are fair and reasonable ......................... 8

               d.     Rule 23(e)(2)(C)(iv): There are no supplemental agreements ............... 9

          4.     Rule 23(e)(2)(D): Settlement Class Members are treated equitably ......... 9

          5.     Additional Ninth Circuit factors favor approval or are neutral ........... 10

               a.     The amount offered in Settlement ....................................................... 10

    b. The experience and views of Plaintiffs' Counsel ................................. 11

    c. Government participation and settlement class reaction.................... 12

 B. The Court Should Certify the Settlement Classes for Settlement Purposes ............... 12

  1. The narrowed scope of the Settlement Classes and claims to be released ........................................................................................................ 12

  2. The Settlement Classes satisfy Federal Rule of Civil Procedure 23(a) ........... 13

  3. The Settlement Classes satisfy Federal Rule of Civil Procedure 23(b)(3) ........................................................................................................ 13

 C. The Court Should Approve the Proposed Class Notice Program ............................... 14

VI. Proposed schedule for final approval proceedings........................................................... 15

VII. Conclusion ........................................................................................................................ 15

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3

*Briseno v. Henderson,*
    998 F.3d 1014 (9th Cir. 2021) ............................................................................ 7

4

*Brown v. Hain Celestial Grp., Inc.,* No. 3:11-cv-03082-LB,
5    2015 WL 12915098 (N.D. Cal. Oct. 8, 2015) ................................................... 12

6

*Campbell v. Facebook, Inc.,*
    951 F.3d 1106 (9th Cir. 2020) ............................................................................ 5

7

*Chinitz v. Intero Real Est. Servs.,* No. 18-cv-05623-BLF,
8    2022 WL 16528137 (N.D. Cal. Oct. 28, 2022) ................................................ 12

9

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .................................................................5, 10, 12

10

*Dennis v. Kellogg Co.,* No. 09-cv-1786-L-WMC,
11    2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .................................................... 8

12

*Dunakin v. Quigley,*
    99 F. Supp. 3d 1297 (W.D. Wash. 2015) .......................................................... 13

13

*Ellis v. Costco Wholesale Corp.,*
14    657 F.3d 970 (9th Cir. 2011) .............................................................................. 13

15

*Golan v. FreeEats.com, Inc.,*
    930 F.3d 950 (8th Cir. 2019) ........................................................................ 7, 11

16

*Hesse v. Sprint Corp.,*
17    598 F.3d 581 (9th Cir. 2010) .............................................................................. 13

18

*In re Hyundai & Kia Fuel Econ. Litig.,*
    926 F.3d 539 (9th Cir. 2019) ............................................................................... 6

19

*In re Mego Fin. Corp. Sec. Litig.,*
20    213 F.3d 454 (9th Cir. 2000) ............................................................................... 5

21

*In re Mercury Interactive Corp. Sec. Litig.,*
    618 F.3d 988 (9th Cir. 2010) ............................................................................... 9

22

*In re Online DVDRental Antitrust Litig.,*
23    779 F.3d 934 (9th Cir. 2015) ............................................................................. 14

24

*In re Uber FCRA Litig.,* No. 14-cv-05200-EMC,
    2017 WL 2806698 (N.D. Cal. June 29, 2017) ................................................. 11

25

*Johnson v. Moss Bros. Auto Grp., Inc.,* No. 19-cv-02456-FMO-SP,
26    2021 WL 4556052 (C.D. Cal. June 25, 2021) ................................................. 10

27

*Knutson v. Schwan's Home Serv., Inc.,* No. 3:12-cv-00964-GPC,
    2014 WL 3519064 (S.D. Cal. July 14, 2014) .................................................. 15

28

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................................................... 15

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ............................................................................................. 11

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-00795-IEG-RBB,
   2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ......................................................................... 6

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR,
   2021 WL 1788447 (N.D. Cal. May 5, 2021) ......................................................................... 6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 8, 12

*Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR,
   2021 WL 3129568 (N.D. Cal. July 23, 2021) ....................................................................... 6

*Odom v. ECA Mktg., Inc.*, No. 20-cv-00851-JGB-SHK,
   2021 WL 4803488 (C.D. Cal. May 27, 2021) ..................................................................... 10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................... 10

*Paz v. AG Adriano Goldschmeid, Inc.*, No. 14-cv-01372-DMS-DHB,
   2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ........................................................................ 8

*Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ....................................................................... 6

*True Health Chiropractic Inc. v. McKesson Corp.*,
   332 F.R.D. 589 (N.D. Cal. 2019) ........................................................................................ 13

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................................................ 14

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................................................... 14

*Wakefield v. ViSalus, Inc.*,
   51 F.4th 1109 (9th Cir. 2022) .......................................................................................... 7, 10

*Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ............................................................. 9, 10, 11

**STATUTES**

28 U.S.C. § 1715 ..................................................................................................................... 4

47 U.S.C. § 227 ................................................................................................................. 7, 10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ................................................................................. passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    Introduction

After more than five years of litigating this hard-fought case, Plaintiffs[1] are pleased to present to the Court this motion seeking preliminary approval of a $20 million common fund to resolve the claims against Realogy,[2] an outstanding result for the proposed Settlement Classes.

From the $20 million Total Settlement Amount, the Settlement Agreement requires Realogy to pay a cash award to every claimant who submits an Approved Claim, the amount of which will be increased or decreased *pro rata* depending on the claim rate, the amount of attorneys' fee awarded (Plaintiffs propose $6 million, which is 30% of the Total Settlement Amount), litigation costs (a proposed $892,373), costs of settlement notice and administration (a maximum of $475,000[3]), and service awards (a proposed $5,000 to each of the three class representatives). Regardless of the claim rate, this represents a substantial recovery for the Settlement Class Members, of which there are approximately 298,494.[4] If the Court awards the requested attorneys' fees, costs, and Service Awards, $12,617,627 will remain for distribution to class members, who would receive the following amounts at the claims rates specified below:

| Claim Rate | Estimated Cash Award Per Settlement Class Member |
|---|---|
| 100% | $42.27 |
| 50% | $84.54 |
| 20% | $211.35 |
| 15% | $281.80 |
| 10% | $422.70 |

To maximize the value to claiming Settlement Class Members, the Settlement Agreement also requires a second distribution of remaining settlement funds, if administratively feasible.

This relief was secured through extensive arm's-length negotiations by experienced and

---

[1] Unless otherwise indicated, capitalized terms are defined in the Settlement Agreement. *See generally* Stlmt. Agmt. (filed herewith as Exhibit 1 to the Declaration of George V. Granade ("Granade Decl." or "Granade Declaration")).

[2] Collectively, Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy Group LLC, Realogy Services Group LLC, and Realogy Brokerage Group LLC are "Realogy."

[3] The Settlement Administrator has agreed to cap Settlement Administrative Expenses at $475,000 and estimates that Settlement Administrative Expenses will be $422,692. Granade Decl. ¶ 143.

[4] When the lists of telephone numbers in the Settlement Classes are consolidated into a single list and duplicates are removed, there are 298,494 unique telephone numbers in the Settlement Classes. *See* Stlmt. Agmt., Ex. C. A single person might use more than one number on the list, however.

1   informed counsel, who had litigated the case through a contested class certification motion, summary

2   judgment motions, motions to exclude critical experts, and up to nearly the eve of trial, with all pretrial

3   submissions filed. The Parties also mediated before the Honorable Edward A. Infante (Ret.) and Bruce

4   A. Friedman, Esquire, of JAMS and participated in a settlement conference before the Honorable

5   Magistrate Judge Thomas S. Hixson; while none of these were immediately successful, they informed

6   the Parties' settlement negotiations. The Settlement contains no clear-sailing provision regarding

7   attorneys' fees and costs and is supported by a strong class Notice Plan, with innovative class Notice,

8   intended to generate a robust claims rate. No other cases will be affected by the Settlement.

9   As outlined below, the proposed Settlement is fair, reasonable, and adequate, and the Court

10  should preliminarily approve it under Federal Rule of Civil Procedure 23(e), Ninth Circuit case law,

11  and this District's Procedural Guidance for Class Action Settlements ("Settlement Guidance").

12  **II.    Overview of the History of the Litigation**

13  The Granade Declaration, outlining the multi-year, hotly-contested litigation requiring

14  enormous efforts by Plaintiffs' Counsel, is an integral part of this submission. It includes a detailed

15  description of the factual and procedural history of the litigation. Granade Decl. ¶¶ 5-138.

16  **III.   The Terms of the Settlement Agreement**

17  In exchange for the proposed release, Realogy has agreed to pay a $20 million non-reversionary

18  Total Settlement Amount, which will pay Settlement Class Members, the Fee Award, all Service

19  Awards, and all Settlement Administrative Expenses. §§ A.30, F.49-53, F.55, I.64-65, J.70-71.[5] The

20  key terms of the Settlement are discussed below.

21  **A.    The Proposed Settlement Classes**

22  Under the Settlement Agreement, Plaintiffs seek, and Realogy does not oppose, certification

23  under Rule 23(a) and (b)(3) of the following Settlement Classes for Settlement purposes only:

24  (a) "NDNC Class" means all persons in the United States who received two or more
    calls, as indicated by non-zero call durations and/or disposition codes other than "No
25  Answer," "NO_ANSWER," or "NOANSWER," made by a Coldwell Banker-
    affiliated real estate agent using a Mojo, PhoneBurner, and/or Storm dialer in any 12-
26  month period on a residential landline or cell phone number that appeared on the
    National Do Not Call Registry for at least 31 days for the time period beginning June
27  11, 2015 and ending December 3, 2020 (all phone numbers within NDNC Class are

28  ---
    [5] Unless otherwise specified, all section (§) references are to sections of the Settlement Agreement.

listed in Exhibit A to the Settlement Agreement);

(b) "Prerecorded Message Class" means all persons in the United States who received a call on their residential telephone line or cell phone number with an artificial or prerecorded message, as indicated by the following call disposition codes: (i) 'Drop Message' (if using the Mojo dialer), (ii) ATTENDED_TRANSFER' (if using the Storm dialer), and (iii) 'VOICEMAIL' (if using a PhoneBurner dialer) and made by a Coldwell Banker-affiliated real estate agent for the time period beginning June 11, 2015 and ending December 3, 2020 (all phone numbers within the Prerecorded Message Class are listed in Exhibit B to the Settlement Agreement).

§§ A.26, D.32.[6] The Parties stipulate to the appointment of Sarah Bumpus as the representative of the Settlement NDNC Class, Micheline Peker and Cheryl Rowan as the representatives of the Settlement Prerecorded Message Class, and Plaintiffs' Counsel as counsel for the Settlement Classes. § D.32. There are 131,892 telephone numbers in the proposed Settlement NDNC Class and 201,001 telephone numbers in the proposed Settlement Prerecorded Message Class. Stlmt. Agmt., Exs. A-B. There are 298,494 unique telephone numbers in both Settlement Classes. Stlmt. Agmt., Ex. C.

**B.    The Benefits to the Settlement Classes**

The settlement will pay a *pro rata* share to every Settlement Class Member who submits a timely, valid Approved Claim. §§ I.64-65. With 298,494 unique telephone numbers in the Settlement Classes, each Settlement Class Member will receive approximately $281.80 if the claim rate is 15% and the Court awards all requested fees and costs. *See supra* p. 1.

Approved Claims will be paid 60 days after the Effective Date, § I.67, electronically or by check, and will expire unless cashed within 180 days after issuance, § I.68.

Regarding Settlement Guidance ¶ 1.f, the Settlement Administrator has estimated a claim rate of around 15% for this settlement. Granade Decl. ¶ 144. Plaintiffs' Counsel support this estimate, as it is reasonable and consistent with their experience. *Id.*

**C.    Class Member Release**

All Settlement Class Members who do not exclude themselves will release the Released Parties

---

[6] Excluded from both Settlement Classes are: (a) current or former officers and directors of Anywhere, (b) Anywhere's employees, agents, and counsel and its counsel's employees, (c) independent contractor real estate agents affiliated with an Anywhere brand, (d) Plaintiff's Counsel and their employees, (e) any judge, magistrate, mediator, arbitrator, and/or court personnel that was involved in presiding over or rendering a decision in this case, and their immediate family members, and (f) any valid Opt-Out Members. § A.26.

1  from all claims "that were brought in the Action or could have been brought in the Action or that

2  arise from telephone communications made or attempted by any Coldwell Banker affiliated real estate

3  agent from June 11, 2015 to December 3, 2020 to Settlement Class Members or telephone numbers

4  assigned to Settlement Class Members." §§ A.19, A.21, J.70. This release is appropriately tailored to

5  the legal and factual claims of the Settlement Classes in the Action.

6       **D.**    **Settlement Administrator and Administration Costs**

7       The proposed Settlement Administrator is Epiq Class Action & Claims Solutions, Inc.

8  ("Epiq"), a leading class action administration firm in the United States. Decl. Azari re: Notice Plan

9  ¶¶ 4-7 ("Azari Decl.") (filed concurrently herewith). Before selecting Epiq, Plaintiffs' Counsel

10  considered bids from six reputable administrators. Granade Decl. ¶ 140. Plaintiffs' Counsel selected,

11  and Realogy agreed to, Epiq because of Epiq's expertise, the competitiveness of its bid, and because

12  Epiq already handled the litigation notice to the Certified Classes and was familiar and experienced

13  with the class data. *Id.* at ¶ 141. Plaintiffs' Counsel's history of engagements with Epiq over the last

14  two years is set forth in the Granade Declaration. *Id.* at ¶ 142. Epiq estimates Settlement

15  Administrative Expenses of $422,692, and has agreed that in no event will Settlement Administrative

16  Expenses exceed $475,000. *Id.* at ¶ 143; Azari Decl. ¶ 38.

17       **E.**    **Proposed Notice Plan**

18       The notice plan has five components: (1) direct Postcard Notice, (2) direct Email Notice,

19  (3) an internet digital notice campaign, (4) a Class Settlement Website, and (5) a toll-free settlement

20  hotline. Azari Decl. ¶¶ 23-35. The program is reasonably calculated to reach approximately 90% of

21  the Settlement Classes. *Id.* at ¶ 40. Epiq will also provide the CAFA Notice to state and federal officials

22  as provided in 28 U.S.C. § 1715 within 10 days after the filing with the Court of the Settlement

23  Agreement and this motion for preliminary approval. *Id.* at ¶ 18.

24       **F.**    **Objections and Exclusions**

25       The notices will advise Settlement Class Members that they may opt out of or object to any

26  aspect of the Settlement. Stlmt. Agmt., Ex. F. Objectors must mail objections to the Court within 90

27  days of the Notice Date, and must provide: (i) the objector's name, address, and telephone number;

28  (ii) the name, address, and telephone number of any attorney for the objector with respect to the

1    objection; (iii) the factual basis and legal grounds for the objection, with documents to establish

2    standing as a Settlement Class Member, including the phone number(s) at which he or she received

3    communications covered by this Settlement; and (iv) identification of the case name, case number,

4    and court for any prior class action lawsuit in which the objector and the objector's attorney (if

5    applicable) has objected to a proposed class action settlement. § E.41. If an objector chooses to appear

6    at the Final Approval Hearing, the objector must also file a notice of intention to appear, either in

7    person or through an attorney, with the name, address, and telephone number of the person and

8    attorney who will appear. *Id.*

9        Settlement Class Members can exclude themselves via a written, mailed request postmarked

10   by the Opt-Out Deadline that states their request to opt out. § E.46. The request must be personally

11   signed by the Opt-Out Member, and must include his or her name, address, and the telephone number

12   that allegedly received a telephone communication covered by the Settlement. *Id.*

13       **G.    Fee and Service Awards**

14       The Settlement Agreement contemplates Plaintiffs' Counsel petitioning the Court for a Fee

15   Award. § G.58. Plaintiffs' Counsel intend to seek $6 million, which is 30% of the Total Settlement

16   Amount. Separately from the request for fees, Plaintiffs' Counsel also intend to seek $892,373 in

17   litigation costs[7] and Settlement Administrative Expenses of approximately $422,692. Plaintiffs'

18   Counsel may also petition for Service Awards, § H.62, and intend to request $5,000 for each of the

19   three class representatives. There is no clear-sailing provision.

20   **IV.   Legal Standard for Preliminary Approval**

21       The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where

22   complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir.

23   2020). The trial judge may exercise his or her sound discretion in considering a preliminary approval

24   motion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). The Rule 23(e)(2) factors

25   that inform the analysis, along with additional factors outlined in *Churchill Vill., L.L.C. v. Gen. Elec.*,

26   361 F.3d 566, 575 (9th Cir. 2004), are discussed below.

27

28   ───────────────
[7] Plaintiffs anticipate there may be additional costs but have not factored them in here. Plaintiffs will provide adequate detail for all costs, including any additional costs, in their motion for fees and costs.

1    **V.    Argument**

2        **A.    The Settlement Agreement Warrants Preliminary Approval**

3            **1.    Rule 23(e)(2)(A): Plaintiffs and Plaintiffs' Counsel have adequately represented the proposed Settlement Classes**

4
        Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Classes. All

5    Plaintiffs have "actively participated in the prosecution of this case," *Norton v. LVNV Funding, LLC*,

6    No. 18-cv-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021), and "[t]here are no

7    indications that [Plaintiffs have] failed to adequately represent the interests of the class," *Moreno v. Cap.*

8    *Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May

9    5, 2021). Plaintiffs assisted Plaintiffs' Counsel by reviewing the pleadings, responding to

10    interrogatories, searching for and producing documents, sitting for their depositions, being available

11    during mediations and a settlement conference, and reviewing the Settlement Agreement. Granade

12    Decl. ¶ 145. Plaintiffs have no conflicts with the other Settlement Class Members. *Id.* at ¶ 146.

13        Further, the Court concluded Plaintiffs and their counsel were adequate when it certified the

14    classes. ECF No. 223 at 8-9, 16. Since that appointment, counsel have poured time and expense into

15    the case and have secured what they believe is an outstanding settlement. *Perks v. Activehours, Inc.*, No.

16    5:19-cv-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("Initially, when originally

17    certifying the Settlement Class, the Court found that . . . Class Counsel will adequately represent the

18    class, have done so, and are adequate. No contrary evidence has emerged." (citation omitted));

19    Granade Decl. ¶¶ 147-53 & Exs. 2-4 (firm resumes); Decl. Barrett ¶¶ 3-6 (filed concurrently herewith).

20            **2.    Rule 23(e)(2)(B): The Settlement was negotiated at arm's length**

21        The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive,

22    negotiated resolution" in analyzing whether to approve a class action settlement. *In re Hyundai & Kia*

23    *Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Here, the Parties completed extensive factual and

24    expert discovery, and the settlement was reached on the eve of trial. Granade Decl. ¶¶ 45-77, 124,

25    137-38. Thus, Plaintiffs and Plaintiffs' Counsel were well apprised of the salient legal and factual issues

26    before reaching the decision to settle the Action. *Id.* at ¶ 155; *see also Louie v. Kaiser Found. Health Plan,*

27    *Inc.*, No. 08-cv-00795-IEG-RBB, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels'

28

1    extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

2        Further, the Settlement includes none of the indicia of collusion identified by the Ninth

3    Circuit. Plaintiffs' Counsel will not receive a disproportionate distribution of the settlement, the

4    settlement agreement contains no "clear sailing" provisions for fees or service awards, and unclaimed

5    settlement funds will not revert to Realogy—they will be redistributed to Settlement Class Members

6    or be distributed as *cy pres*. *Briseno v. Henderson*, 998 F.3d 1014, 1025-28 (9th Cir. 2021); § I.68.

7            **3.    Rule 23(e)(2)(C): The relief for the Settlement Classes is substantial**

8                **a.    Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal**

9        *First*, the Settlement is fair, reasonable, and adequate in light of the strengths and risks of

10    Plaintiffs' case. Granade Decl. ¶ 156. While Plaintiffs' Counsel are confident in the strength of

11    Plaintiffs' claims, there is risk inherent in litigation of this magnitude. *Id.* Should the case proceed in

12    litigation, Plaintiffs could see their claims dismissed or narrowed by motions *in limine*, at trial, or on a

13    subsequent appeal. *Id.* The Court could grant Realogy's motion *in limine* to exclude the PhoneBurner

14    and WAVV call logs, and it could decline to admit the Mojo call logs, which at minimum would greatly

15    increase the complexity and difficulty of prevailing on a classwide basis at trial. *Id.* The jury could also

16    decline to credit Plaintiffs' evidence. *Id.* For example, if the jury does not credit Sarah Bumpus's

17    testimony that she told Coldwell Banker agents not to call her back before she received the calls at

18    issue, then Ms. Bumpus would not be able to prevail on the NDNC Class's claims because she would

19    have an established business relationship with Coldwell Banker. *Id.* The jury could also find for the

20    NDNC Class but award them only a de minimis amount in damages on a per violation basis, *see* 47

21    U.S.C. § 227(c)(5) (providing for "up to $500" per call). *Id.* Plaintiffs would also likely face a post-

22    verdict motion to reduce the judgment amount for both the NDNC Class and Prerecorded Message

23    Class based on the Ninth Circuit's direction in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022)

24    (citing *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (affirming district court's reduction of

25    statutory damages by 98%, from $500 to $10 per violation for TCPA violative prerecorded calls)).

26    Granade Decl. ¶ 156. Realogy has also repeatedly requested to decertify the classes, and the Court has

27    held open the possibility that decertification could occur at or after trial. *Id.*; ECF No. 390.

28        *Second*, the risks, expense, complexity, and likely duration of further litigation also support

preliminary approval of the Settlement. Granade Decl. ¶ 157. In evaluating these factors, the Court should "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). "In this respect, '[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.'" *Id.* If the Court does not approve the Settlement, the Parties would incur the expense and burden of continuing to prepare for trial, finalizing all pretrial filings, and conducting the trial. Granade Decl. ¶ 157; *see Paz v. AG Adriano Goldschmeid, Inc.*, No. 14-cv-01372-DMS-DHB, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Even if Plaintiffs were to succeed on the merits at trial, any recovery would likely be delayed by challenges to the judgment and appeals that could take years to resolve. Granade Decl. ¶ 157. Absent settlement, there is no guarantee that any of this would lead to greater benefits for the Settlement Class Members. *Id.* The Settlement provides immediate and substantial cash payments to claiming class members. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L-WMC, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013).

   **b.**  **Rule 23(e)(2)(C)(ii): The proposed method of distributing relief and of processing Claims is and will be effective**

  The proposed distribution plan is effective. Settlement Class Members must only submit a simple Claim Form with basic questions about contact information, the unique identifier assigned to the Settlement Class Member in the Notice, and the telephone number(s) they used during the class period on which they were called by Coldwell Banker agents. Stlmt. Agmt., Ex. E. They may submit Claim Forms through the Settlement Website or by hard copy mailed to Epiq. *Id.* Payments will be made through check or electronic payment, at the Settlement Class Member's option. § I.68; *see also* Settlement Guidance ¶ 3 (Plaintiffs' Counsel should consider "distributions to class members via direct deposit"). This procedure is Claimant-friendly, efficient, cost-effective, proportional, and reasonable.

   **c.**  **Rule 23(e)(2)(C)(iii): The terms and timing of the proposed Fee Award are fair and reasonable**

  The terms and timing of the proposed Fee Award are fair and reasonable. Plaintiffs' Counsel

1  will seek approval of attorneys' fees in the amount of $6 million, which is 30% of the $20 million Total

2  Settlement Amount. Plaintiffs' Counsel's lodestar is $10,126,551, for 10,456 hours of work. Granade

3  Decl. ¶¶ 162, 166. Thus, their fee request amounts to a negative multiplier of approximately 0.59.

4       Proposed Settlement Administrative Expenses are $422,692, and are capped at $475,000.

5  Granade Decl. ¶ 164. In addition, separately from attorneys' fees, Plaintiffs will also seek $892,373 in

6  litigation costs,[8] which includes $288,815 paid to expert witnesses, most of which ($266,128) was paid

7  to Anya Verkhovskaya and her company, Class Experts Group. *Id.* at ¶¶ 163-65. Ms. Verkhovskaya's

8  work supplied the basis for identifying violative class calls, and was the subject of Realogy's *Daubert*

9  motion, which the Court denied. Also included in the litigation costs is $365,390 to pay Epiq for the

10  cost of the initial class notice. *Id.* at ¶¶ 164-65.

11       Plaintiffs' Counsel will also seek $5,000 each as Service Awards for the three class

12  representatives, who responded to discovery requests, produced documents, sat for depositions,

13  participated in settlement, and prepared to testify at trial. Granade Decl. ¶¶ 145-46, 166; *Wong v. Arlo*

14  *Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021) ("Service

15  awards as high as $5,000 are presumptively reasonable in this judicial district.").

16       Plaintiffs' Counsel will file a motion seeking this relief at least 60 days before the objections

17  deadline, § I.58, which will afford Settlement Class Members a full opportunity to consider this issue

18  before deciding how to proceed under the Settlement. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d

19  988, 993 (9th Cir. 2010); *see also* Settlement Guidance ¶ 9.

20       **d.  Rule 23(e)(2)(C)(iv): There are no supplemental agreements**

21       The Parties have no agreements other than the Settlement Agreement. Granade Decl. ¶ 139.

22       **4.  Rule 23(e)(2)(D): Settlement Class Members are treated equitably**

23       The settlement proposal treats class members equitably relative to each other. FED. R. CIV. P.

24  23(e)(2)(D). Each Settlement Class Member may make a claim, to be reviewed and reasonably audited

25  by Epiq for timeliness and validity, and will receive the same amount regardless of the number of calls

26  they may have received. This is consistent with the approved distribution of funds in other settlements

27

28  [8] *See supra* note 7.

of TCPA cases. *See, e.g., Johnson v. Moss Bros. Auto Grp., Inc.*, No. 19-cv-02456-FMO-SP, 2021 WL 4556052, at *8 (C.D. Cal. June 25, 2021) (preliminarily approving TCPA class action settlement in which each class member would receive approximately $46, less fees and costs, regardless of the number of calls they received); *Odom v. ECA Mktg., Inc.*, No. 20-cv-00851-JGB-SHK, 2021 WL 4803488, at *3 (C.D. Cal. May 27, 2021) (preliminarily approving TCPA class action settlement in which each class member would receive approximately $35, regardless of number of calls received).

### 5.    Additional Ninth Circuit factors favor approval or are neutral

#### a.    The amount offered in Settlement

The "relief that the settlement is expected to provide to class members is a central concern," which the Court should consider. *Wong*, 2021 WL 1531171, at *9; *see also Churchill Vill., L.L.C.*, 361 F.3d at 575. Here, the expected recovery per Approved Claim is substantial, *see supra* p. 1, and Epiq has estimated the claim rate will be around 15%, Granade Decl. ¶ 144.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

Here, the Settlement NDNC Class received a total of 438,921 calls, Granade Decl. ¶ 160; because the TCPA allows for damages of "up to $500" per call for do-not-call claims, 47 U.S.C. § 227(c)(5), a favorable jury verdict for those claims could bring damages ranging from $438,921 (at $1 per call) to up to $219,460,500 (at the $500 maximum). This amount could reach $658,381,500 if the Court were to find the violations were knowing or willful. *Id.*

The Settlement Prerecorded Message Class received a total of 264,104 calls, Corrected Expert Rep. Verkhovskaya ¶¶ 127-28, ECF No. 355-1, and, consequently, could have recovered $132,052,000 at trial at the statutory rate of $500 per call and up to $396,156,000 if the Court were to find the violations were knowing or willful, *see* 47 U.S.C. § 227(b)(3).

Notwithstanding, at any of these amounts, class members faced the risk of a post-judgment reduction of damages. *See Wakefield*, 51 F.4th at 1122-25 ("Constitutional limits on aggregate statutory damages awards therefore must be reserved for circumstances in which a largely punitive per-violation amount results in an aggregate that is gravely disproportionate to and unreasonably related to the legal

violation committed."). In fact, courts have reduced per call awards by as much as 98%, *see Golan*, 930 F.3d at 962 n.11, a path that Realogy would likely urge here were the case to proceed to trial and judgment. As unlikely as this reduction would be, its mere urging makes it at least a possibility.

What all of this adds up to is that the guaranteed and immediate class recovery of $20 million compares favorably to the almost worst-case[9] low-end recovery of $3,079,961 and to a maximum non-trebled recovery of $351,512,500. Under this range, the Total Settlement Amount spans from far *more* than the almost worst-case result, to 5.68% of the best-case non-trebled scenario. Or, if the jury were to award $1 per violative call for the NDNC Class, and Plaintiffs could also sustain the $500 penalty for the Prerecord Class against a *Golan*-type challenge, the recovery would total $132,490,921, and the $20 million Total Settlement Amount would be 15.095% of that figure.

The difficulty of predicting jury trial outcomes has in part caused courts to find similar recoveries to be fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."); *Wong*, 2021 WL 1531171, at *9 (settlement amount of 2.35% of potential trial damages was adequate); *In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 WL 2806698, at *7 (N.D. Cal. June 29, 2017) (settlement of "7.5% or less" of total possible liability was adequate).

In accordance with Settlement Guidance ¶ 11, paragraph 158 of the Granade Declaration includes a chart providing information about comparable class action settlements. Based on the anticipated payout per claimant, the Settlement compares favorably to settlements in substantively similar TCPA vicarious liability cases against national realty brokerages. *See* Decl. Granade ¶ 158 (Keller Williams: approximately $14/claimant; eXp Realty: approximately $59/claimant).

The discount applied to the claims is further justified by the costs, risks, and delay of trial and appeal. *See supra* Part V.A.3.a.

        **b.**        **The experience and views of Plaintiffs' Counsel**

Plaintiffs' Counsel believe the Settlement is an outstanding recovery for the Settlement Classes,

---

[9] "Almost worst-case" because the worst case, of course, is a zero recovery.

1   particularly in light of per claimant recoveries in settlements in substantively similar TCPA vicarious

2   liability cases against national realty brokerages, and fully endorse it as fair, reasonable, and adequate.

3   Granade Decl. ¶ 154. Plaintiffs' Counsel are experienced in class action litigation, including TCPA

4   cases, and they have a nuanced understanding of the legal and factual issues involved in this case. *Id.*

5   at ¶¶ 149-52 & Exs. 2-4; Decl. Barrett ¶¶ 3-6. "'Great weight' is accorded to the recommendation of

6   counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural*

7   *Telecomms. Coop.*, 221 F.R.D. at 528. Thus, this *Churchill* factor supports preliminary approval.

8              c.    **Government participation and settlement class reaction**

9          The government participation and settlement class reaction factors are neutral here.

10   **B.    The Court Should Certify the Settlement Classes for Settlement Purposes**

11          **1.    The narrowed scope of the Settlement Classes and claims to be released**

12          *First*, while the Settlement Classes are narrower than the Certified Classes, the differences are

13   appropriate. *See* Settlement Guidance ¶ 1.a-b. The proposed Settlement NDNC Class is narrower than

14   the certified NDNC Class as follows: zero-duration calls with the dispositions "No Answer,"

15   "NO_ANSWER," and "NOANSWER" were excluded, and after the foregoing calls were excluded,

16   calls that were not made within a 12-month period of another call to the same number on the NDNCR

17   were excluded. Granade Decl. ¶ 159. This narrowing—proposed to address the difficulties in proof

18   posed by class calls that Realogy would assert were not even received—would eliminate 113,410

19   telephone numbers from the NDNC Class, which are listed in Exhibit D to the Settlement Agreement.

20   The Parties have agreed upon a proposed Non-Settlement Class Notice to be sent to persons

21   associated with the eliminated telephone numbers. § A.13; Stlmt. Agmt., Ex. I.

22          The narrowing is appropriate, as Rule 23(c)(1)(C) authorizes the Court to amend the class

23   definition before a decision on the merits; the Parties stipulated to narrow the class; and the Parties

24   will provide notice to those persons whose claims are no longer part of the class. *Chinitz v. Intero Real*

25   *Est. Servs.*, No. 18-cv-05623-BLF, 2022 WL 16528137, at *4 (N.D. Cal. Oct. 28, 2022) (narrowing

26   definition of previously-certified class at settlement to, among other things, exclude zero-duration

27   calls); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2015 WL 12915098, at *3 (N.D.

28   Cal. Oct. 8, 2015) (approving settlement class narrower in scope than previously-certified classes).

1    **Second**, the claims to be released are narrower than the Certified Classes' claims only in that

2    Plaintiffs do not seek settlement certification of the Internal DNC Class, precisely because it is a Rule

3    23(b)(2) class that does not seek monetary relief. The scope of the release is appropriate because it

4    covers only claims that relate to or arise out of the calls that the Settlement Class Members challenged

5    in the litigation. § J.70; *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (release of class

6    claims appropriate where claims are "based on the identical factual predicate as that underlying the

7    claims in the settled class action").

8          **2.**      **The Settlement Classes satisfy Federal Rule of Civil Procedure 23(a)**

9    **Numerosity**. The Settlement Classes include 298,494 unique telephone numbers. Stlmt.

10   Agmt., Ex. C. Thus, joinder is a logistical impossibility. *See Dunakin v. Quigley*, 99 F. Supp. 3d 1297,

11   1327 (W.D. Wash. 2015) (class of 40 or more members satisfies numerosity).

12   **Commonality**. The Court previously found commonality was met for the Certified Classes in

13   connection with its analysis of predominance. ECF No. 223 at 9-13, 14-15. It should find commonality

14   is met for the Settlement Classes for the same reasons. *See infra* Part V.b.3 (discussing predominance).

15   **Typicality**. "Under the 'permissive [typicality] standards' of Rule 23(a)(3), the claims need

16   only be 'reasonably co-extensive with those of absent class members,' rather than 'substantially

17   identical.'" *True Health Chiropractic Inc. v. McKesson Corp.*, 332 F.R.D. 589, 606 (N.D. Cal. 2019). Here,

18   the Court found typicality was met when certifying the Certified Classes. ECF No. 223 at 8-9. Nothing

19   has changed since then that would render Plaintiffs atypical.

20   **Adequacy**. Finally, as discussed above, Plaintiffs and Plaintiffs' Counsel are adequate. *See supra*

21   Part V.A.1. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

22         **3.**      **The Settlement Classes satisfy Federal Rule of Civil Procedure 23(b)(3)**

23   This Court previously found the Certified Classes satisfied Rule 23(b)(3)'s predominance and

24   superiority requirements. ECF No. 223 at 9-13, 14-15. It should do so again for the Settlement Classes.

25   Common questions predominate over any questions affecting only individual members, including

26   whether the call logs provided by Mojo Dialing Solutions, LLC, PhoneBurner, Inc., and WAVV

27   Communications LLC show Realogy's sales associates violated the TCPA by calling numbers on the

28   NDNCR or by sending prerecorded messages, and whether these calls were intended to encourage

1   the purchase of Realogy's services. These questions can be resolved using the same evidence for all

2   Settlement Class Members and are exactly the kind of predominant common issues that make

3   certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). Accordingly,

4   predominance is met. ECF No. 223 at 9-13, 14-15. Superiority is also met. Here, "classwide litigation

5   of common issues will reduce litigation costs and promote greater efficiency," and "no realistic

6   alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).

7           **C.      The Court Should Approve the Proposed Class Notice Program**

8           Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members

9   who would be bound by the proposal" if it is likely Rule 23(e)(2) is met and certification will be granted.

10   The Notice Plan is comprised of direct email and postcard notice as well as a Settlement Website,

11   where the long-form Notice and important case documents will be available. Azari Decl. ¶¶ 23, 34. A

12   toll-free telephone number will be available to Settlement Class Members with questions. *Id.* at ¶ 35.

13   And additional indirect notice will be provided via internet advertisements. *Id.* at ¶¶ 29-33. The

14   operative notice plan is the best notice practicable and is reasonably designed to reach the Settlement

15   Class Members. *Id.* at ¶¶ 39-42. The Ninth Circuit has approved less comprehensive approaches to

16   class notice. *See, e.g.*, *In re Online DVDRental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (finding

17   notice satisfied due process and Rule 23(e) where an initial email notice was supplemented by a

18   postcard notice only to those whose emails bounced back). And Epiq will rely on the contact

19   information obtained during original Class Notice. Granade Decl. ¶ 141.

20           Moreover, the Notice contains all the critical information required to apprise Settlement Class

21   Members of their rights under the Settlement and is written in simple, straightforward language in full

22   compliance with Settlement Guidance ¶ 3. The postcard notice includes the Settlement Class

23   Member's unique identification number, the Toll-Free Settlement Hotline, and a link to the Settlement

24   Website, and the email notice include the foregoing information as well as information about the

25   lawsuit, Plaintiffs' Counsel, how to make a claim or opt out, the deadline to file a claim, and the date

26   of the Final Approval Hearing. Stlmt. Agmt., Exs. G-H. The long-form Notice provides detailed

27   information, including: (1) basic background information about the Action; (2) a description of the

28   benefits provided by the Settlement; (3) an explanation of how Settlement Class Members can obtain

1  benefits; (4) an explanation of how Settlement Class Members can opt out of or object to the

2  Settlement; (5) an explanation that any claims against Realogy that could have been litigated in the

3  Action will be released if the Settlement Class Member does not opt out; (6) information regarding

4  Plaintiffs' Counsel's forthcoming request for a Fee Award and Service Awards; (7) instructions to

5  access the case docket via PACER; (8) the Final Approval Hearing date (subject to change); (9) an

6  explanation of eligibility for appearing at the Final Approval Hearing; and (10) Plaintiffs' Counsel's

7  contact information. Stlmt. Agmt., Ex. F.

8      This approach to notice is more than adequate. *See, e.g.*, *Knutson v. Schwan's Home Serv., Inc.*, No.

9  3:12-cv-00964-GPC, 2014 WL 3519064, at *5 (S.D. Cal. July 14, 2014) (approving mailed notice where

10  notice would include the settlement website with full settlement details and the claim administrator's

11  toll free number). This information provides "sufficient detail" to allow class members with adverse

12  viewpoints to conduct further investigation and "come forward to be heard." *Lane v. Facebook, Inc.*,

13  696 F.3d 811, 826 (9th Cir. 2012). Accordingly, this notice program will fully apprise Settlement Class

14  Members of their rights under Rule 23(e) and should be approved.

15  **VI.    Proposed schedule for final approval proceedings**

16      Finally, Plaintiffs ask the Court to schedule the time, date, and place of the Final Approval

17  Hearing to decide whether the Settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

18  Plaintiffs also request that the Court set the other deadlines in Granade Declaration paragraph 167.

19  **VII.    Conclusion**

20      For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve

21  the Settlement; preliminarily certify the Settlement Classes; enter the Preliminary Approval Order;

22  appoint Sarah Bumpus as the representative of the Settlement NDNC Class and Micheline Peker and

23  Cheryl Rowan as the representatives of the Settlement Prerecorded Message Class; appoint Reese

24  LLP, Tycko & Zavareei LLP, Kaufman P.A., and Bailey & Glasser LLP as counsel for the Settlement

25  Classes; appoint Epiq Class Action & Claims Solutions, Inc., as the Settlement Administrator; direct

26  that Notice be distributed to the Settlement Classes and Non-Settlement Class Notice be distributed

27  to members of the Certified Classes who are not members of the Settlement Classes; and schedule a

28  Final Approval Hearing.

Date: January 20, 2025

**REESE LLP**

By:  */s/ George V. Granade*

George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**TYCKO & ZAVAREEI LLP**
Sabita J. Soneji (State Bar No. 224262)
*ssoneji@tzlegal.com*
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
Gemma Seidita (State Bar No. 322201)
*gseidita@tzlegal.com*
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20036
Telephone: (202) 973-0900

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
*bglasser@baileyglasser.com*
John W. Barrett (*pro hac vice*)
*jbarrett@baileyglasser.com*
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

**KAUFMAN P.A.**
Rachel E. Kaufman (State Bar No. 259353)
*rachel@kaufmanpa.com*
Avi Kaufman (*pro hac vice*)
*avi@kaufmanpa.com*
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881

**LAW OFFICES OF STEFAN COLEMAN**
Stefan Coleman (*pro hac vice*)
*law@stefancoleman.com*
66 West Flagler Street, Unit 900
Miami, Florida 33130

1

Telephone: (877) 333-9427

2

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker,*
*and Cheryl Rowan and the Classes*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28