George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Sabita J. Soneji (State Bar No. 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Hassan A. Zavareei (State Bar No. 181547)
hzavareei@tzlegal.com
Gemma Seidita (State Bar No. 322201)
gseidita@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20036
Telephone: (202) 973-0900

Brian A. Glasser (*pro hac vice*)
bglasser@baileyglasser.com
John W. Barrett (*pro hac vice*)
jbarrett@baileyglasser.com
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

Rachel E. Kaufman (State Bar No. 259353)
rachel@kaufmanpa.com
Avi Kaufman (*pro hac vice*)
avi@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881

Stefan Coleman (*pro hac vice*)
law@stefancoleman.com
**LAW OFFICES OF STEFAN COLEMAN**
66 West Flagler Street, Unit 900
Miami, Florida 33130
Telephone: (877) 333-9427

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker,*
*and Cheryl Rowan and the Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH BUMPUS, MICHELINE PEKER, and CHERYL ROWAN, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>REALOGY HOLDINGS CORP.; REALOGY INTERMEDIATE HOLDINGS LLC; REALOGY GROUP LLC; REALOGY SERVICES GROUP LLC; *and* REALOGY BROKERAGE GROUP LLC (f/k/a NRT LLC),<br><br>Defendants. | Case No. 3:19-cv-03309-JD<br><br>**DECLARATION OF GEORGE V. GRANADE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASSES**<br><br>Date: February 27, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

Pursuant to 28 U.S.C. § 1746, I, George V. Granade, declare as follows:

1.      I am a partner at the law firm of Reese LLP, which is co-counsel for Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan and the Classes in the above-captioned action against Anywhere.[1]

2.      I am a member in good standing of the bars of the States of California, New York, and Georgia, as well as the bars of the United States Courts of Appeals for the Ninth Circuit and the Second Circuit and the United States District Courts for the Northern District of California, Southern District of California, Central District of California, Eastern District of California, Northern District of New York, Southern District of New York, Western District of New York, Eastern District of New York, Northern District of Illinois, Southern District of Illinois, Northern District of Georgia, Middle District of Georgia, and District of New Mexico.

3.      I respectfully submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of Settlement Classes, filed concurrently herewith.

4.      The facts set forth in this declaration are based on personal knowledge and on information I obtained from my co-counsel and the Settlement Administrator in this action, and I could competently testify to them if called upon to do so.

## I.      Overview of the History of the Litigation

### A.      Pre-Filing Investigation and *Chinitz v. NRT West, Inc.*[2]

5.      The entirety of this litigation consists of two separate, but related actions. Before filing the original complaint in the first case, Reese LLP and Tycko & Zavareei LLP investigated the potential claims against Coldwell Banker on behalf of their client Ronald Chinitz.[3] Those firms—which are now among the firms appointed as Class Counsel in this matter—gathered information

---

[1] Unless otherwise indicated, capitalized terms are defined in the Settlement Agreement attached hereto as **Exhibit 1**, *see infra* ¶ 138.

[2] The ECF system refers to this action as *Chinitz v. Coldwell Banker Residential Brokerage Company*. Because Coldwell Banker Residential Brokerage Company is a "doing business as" name for NRT West, Inc., Plaintiffs refer to the case here as *Chinitz v. NRT West, Inc.*

[3] Plaintiffs did not initially know the correct defendant to sue on account of calls from "Coldwell Banker" agents. *See* Third Am. Compl. ¶¶ 105-23, ECF No. 118; *see also id.* at ¶¶ 48-51, 55, 64.

about Coldwell Banker's unlawful calling practices. Counsel expended significant resources researching and developing the legal claims at issue.

6.    To challenge Coldwell Banker's practice of making unwanted telemarketing calls to his telephone lines, on October 4, 2018, counsel for Ronald Chinitz filed a class action lawsuit alleging Coldwell Banker Real Estate, LLC, and Coldwell Banker Residential Brokerage Company violated the TCPA and its implementing regulations, 47 C.F.R. § 64.1200, as well as California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL"). Complaint, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Oct. 4, 2018), ECF No. 1. Mr. Chinitz alleged he received: unwanted telephone solicitations from Coldwell Banker agents to residential telephone lines he had previously registered on the National Do Not Call Registry ("NDNCR" or "NDNC"); repeated unwanted telemarketing calls on his residential telephone lines after he had asked Coldwell Banker and/or its agents not to call him back; and unwanted telemarketing calls from Coldwell Banker to his residential telephone lines that used a prerecorded voice to deliver a message. *See, e.g.*, *id.* at ¶¶ 12-22. The case was assigned to Honorable Magistrate Judge Nathanael M. Cousins, and all parties subsequently consented to magistrate judge jurisdiction.

7.    After discussion between Mr. Chinitz's counsel and Coldwell Banker's counsel regarding the appropriate company to sue concerning the conduct at issue, Mr. Chinitz filed an amended complaint against NRT West, Inc. (doing business as Coldwell Banker Residential Brokerage Company), on December 14, 2018, pursuant to Federal Rule of Civil Procedure 15(a)(2), dropping Coldwell Banker Real Estate, LLC, as a defendant. First Amended Class Action Complaint, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Dec. 14, 2018), ECF No. 16.

8.    NRT West, Inc., moved to dismiss Mr. Chinitz's First Amended Class Action Complaint on January 9, 2019, on the grounds that Mr. Chinitz had failed to state a claim for violation of 47 U.S.C. § 227(b)(1)(B) and lacked standing to assert a UCL claim. Defendant NRT West, Inc.'s Notice of Motion and Motion to Dismiss First Amended Class Action Complaint of Plaintiff Ronald Chinitz, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Jan. 9, 2019), ECF No. 26. The parties fully briefed the motion by January 30, 2019.

9.    After oral argument on February 13, 2019, Magistrate Judge Cousins granted the

motion in part and denied it in part on February 20, 2019, dismissing Mr. Chinitz's UCL claim with prejudice but otherwise denying the motion. Order Granting in Part and Denying in Part Motion to Dismiss, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Feb. 20, 2019), ECF No. 42.

10.    NRT West, Inc., answered on March 5, 2019, Defendant NRT West, Inc.'s Answer to First Amended Class Action Complaint of Plaintiff Ronald Chinitz, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Mar. 5, 2019), ECF No. 43, and the case proceeded to discovery.

11.    Mr. Chinitz served two sets of interrogatories and three sets of requests for production of documents on NRT West, Inc., and in response NRT West, Inc., produced 4,542 Bates stamped pages of documents/files. NRT West, Inc., served one set of interrogatories and two sets of requests for production of documents on Mr. Chinitz, and in response Mr. Chinitz produced 274 Bates stamped pages of documents/files.

12.    Mr. Chinitz's counsel also took four depositions, including the deposition of NRT West, Inc., Regional Vice President Nancy Robinson on May 22, 2019; the Rule 30(b)(6) deposition of NRT West, Inc., on June 4, 2019; the deposition of former Coldwell Banker agent Mattias Christensen[4] on June 5, 2019; and the deposition of former Coldwell Banker agent John Carman on September 25, 2019. NRT West, Inc., deposed Mr. Chinitz on July 11, 2019.

13.    During his deposition on June 5, 2019, Mr. Christensen testified that using the tools and services of companies such as Mojo Dialing Solutions, LLC ("Mojo"), to find and call potential clients was a "very common" practice in the real estate industry. According to Mr. Christensen, these tools included lists of telephone numbers of prospective home buyers and sellers. Mr. Chinitz therefore served a subpoena on Mojo on July 17, 2019, seeking, among other things, records of telephone numbers that Mojo had provided to Coldwell Banker agents for potential leads. Mr. Chinitz's counsel met and conferred with Mojo's counsel between July 17, 2019, and August 9, 2019,

---

[4] The calls to Mr. Chinitz at issue included calls made by or on behalf of Mr. Christensen. On March 27, 2019, Mr. Chinitz filed a motion to serve a subpoena on Mr. Christensen by means other than personal service due to difficulties with serving him personally, which NRT West, Inc., opposed. Plaintiff's Notice of Motion and Motion for Leave to Serve Subpoena by Alternate Means, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Mar. 27, 2019), ECF No. 44. After oral argument on April 3, 2019, Magistrate Judge Cousins ultimately granted the motion on April 11, 2019. Order Granting Motion to Serve Third-Party Subpoena by Alternate Means, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Apr. 11, 2019), ECF No. 53.

1  and learned that Mojo provides Coldwell Banker agents not only with telephone numbers for potential

2  leads but also with a dialer service allowing agents to dial the leads and place calls. Mojo further

3  admitted on August 8, 2019, in amended objections to the subpoena that it possessed "documents

4  concerning many persons who are, were or appear to be or to have been real estate agents for Coldwell

5  Banker." After further meeting and conferring, counsel for Mr. Chinitz and Mojo reached an impasse

6  regarding Mojo's response to the subpoena, and Mr. Chinitz's counsel filed a motion to compel

7  compliance with the subpoena in the United States District Court for the District of Puerto Rico on

8  September 25, 2019. Plaintiff's Motion to Compel Compliance with Plaintiff's Subpoena to Non-Party

9  Mojo Dialing Solutions, LLC, *Chinitz v. NRT West, Inc.*, No. 3:19-cv-01922 (D.P.R. Sept. 25, 2019),

10  ECF No. 1.

11      14.    On August 5, 2019, Mr. Chinitz and NRT West, Inc., filed a joint discovery letter brief

12  in which Mr. Chinitz sought to compel the deposition of NRT West, Inc., President Mike James,

13  which NRT West, Inc., opposed on the ground that Mr. Chinitz had not met the standard for allowing

14  an apex deposition. Letter re: Discovery Dispute, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC

15  (N.D. Cal. Aug. 5, 2019), ECF No. 62. Magistrate Judge Cousins denied the request on the same day.

16  Order, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Aug. 5, 2019), ECF No. 63.

17      15.    On August 6, 2019, counsel for Mr. Chinitz and NRT West, Inc., filed a joint discovery

18  letter brief in which Mr. Chinitz sought to compel a response to a request for production seeking all

19  agreements between NRT West, Inc., or its agents and call centers or calling services, which NRT

20  West, Inc., opposed on the ground that Mr. Chinitz's request was a "fishing expedition." Letter re:

21  Discovery Dispute, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Aug. 6, 2019), ECF

22  No. 64. After holding a hearing on August 14, 2019, and receiving additional briefing from the parties,

23  Magistrate Judge Cousins granted Mr. Chinitz's motion in part on August 30, 2019, requiring NRT

24  West, Inc., to produce responsive agreements within its possession or custody but declining to require

25  it to produce responsive agreements that were only within the possession of its real estate agents.

26  Order Granting in Part Plaintiff's Motion to Compel, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-

27  NC (N.D. Cal. Aug. 30, 2019), ECF No. 78.

28      16.    Meanwhile, Mr. Chinitz moved for class certification on June 14, 2019, seeking to

1    certify a nationwide NDNCR class, a nationwide internal do-not-call class, and a nationwide

2    prerecorded message class. Plaintiff Ronald Chinitz's Notice of Motion and Motion for Class

3    Certification, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. June 14, 2019), ECF No.

4    60. The parties fully briefed the motion by August 9, 2019.

5          17.    After oral argument on August 14, 2019, Magistrate Judge Cousins denied the motion

6    for class certification on August 30, 2019, for failure to establish numerosity with respect to the

7    proposed internal do-not-call and prerecord classes and failure to establish commonality with respect

8    to all three classes. Order Denying Plaintiff's Motion for Class Certification, *Chinitz v. NRT West, Inc.*,

9    No. 5:18-cv-06100-NC (N.D. Cal. Aug. 30, 2019), ECF No. 76. With respect to numerosity, the court

10   reasoned that Mr. Chinitz had relied solely on the expert report of Anya Verkhovskaya, but Ms.

11   Verkhovskaya had merely described her intended methodology and had not provided any opinion

12   regarding the numbers of individuals that may be part of the internal do-not-call and prerecorded

13   message classes, which was insufficient to meet Mr. Chinitz's burden. *Id.* at 5. By contrast, Ms.

14   Verkhovskaya had found that 49 phone numbers fit the NDNCR class definition, which was sufficient

15   to satisfy numerosity. *Id.* at 5-6. With respect to commonality, the court held that while Mr. Chinitz

16   had "identified common questions," he had not "shown by a preponderance of evidence that common

17   answers exist to those questions." *Id.* at 9. The court held that while Mr. Chinitz had "provided some

18   evidence to establish the existence of common questions," that evidence was "currently too limited,"

19   because, for example, Mr. Chinitz had submitted evidence of calls by Mr. Christensen but had not

20   provided "evidence of a broader practice" by NRT West, Inc.'s associates. *Id.*

21         18.    After reviewing Magistrate Judge Cousins' order, counsel for Mr. Chinitz believed they

22   could obtain the additional evidence needed to support class certification, based in part on their

23   conversations with counsel for Mojo. On October 4, 2019, Mr. Chinitz filed a motion for extension

24   of the fact discovery deadline and for leave to file a narrowed class certification motion, based in part

25   on his outstanding motion to compel compliance with his subpoena to Mojo. Plaintiff Ronald

26   Chinitz's Motion to Extend Fact Discovery Deadline Pursuant to Civil Local Rule 16-2(d) and for

27   Leave to File Narrowed Class Certification Motion, *Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC

28   (N.D. Cal. Oct. 4, 2019), ECF No. 84. NRT West, Inc., opposed the motion on October 11, 2019,

1  and Magistrate Judge Cousins denied it on October 14, 2019. Order, *Chinitz v. NRT West, Inc.*, No.
2  5:18-cv-06100-NC (N.D. Cal. Oct. 14, 2019), ECF No. 86.

3  **B.   Filing of *Chinitz v. NRT LLC* and Dismissal of *Chinitz v. NRT West, Inc.***

4  19.     Through the depositions Mr. Chinitz's counsel took in *Chinitz v. NRT West, Inc.*, they
5  learned that NRT West, Inc., was a regional entity in northern California and that the nationwide entity
6  responsible for "Coldwell Banker," including Coldwell Banker's nationwide policies regarding
7  marketing using the telephone, was NRT LLC.

8  20.     In order to sue a nationwide entity as he had originally intended, Mr. Chinitz filed the
9  Action before this Court on June 11, 2019, against NRT LLC. Compl., ECF No. 1.

10  21.     After being initially assigned to the Honorable Magistrate Judge Virginia K. DeMarchi,
11  ECF No. 2, and then to the Honorable Saundra Brown Armstrong, Order Reassigning Case, ECF
12  No. 7, who recused herself, Order of Recusal, ECF No. 8, the Action was assigned to the Honorable
13  James Donato on June 21, 2019, Order Reassigning Case, ECF No. 9.

14  22.     The Court set the initial case management conference for September 12, 2019, ECF
15  No. 10, and, at the request of Mr. Chinitz's counsel, continued it to October 24, 2019, ECF No. 15.
16  During the conference, the Court asked why the Action was not proceeding before Magistrate Judge
17  Cousins, and Plaintiffs' Counsel stated that Mr. Chinitz had erroneously believed based on discussion
18  with defense counsel that NRT West, Inc., was a nationwide entity, but that during a deposition, Mr.
19  Chinitz learned that the correct nationwide policy-setting entity was NRT LLC. Plaintiffs' Counsel
20  further explained that defense counsel had refused to stipulate to amend the complaint in *Chinitz v.*
21  *NRT West, Inc.* to add or substitute in NRT LLC, and that Mr. Chinitz intended to add new putative
22  class representatives to the NRT LLC Action. The Parties and the Court discussed the possibility of
23  Mr. Chinitz and NRT West, Inc., filing a stipulation dismissing *NRT West, Inc.* with prejudice, leaving
24  the Action as the single case remaining to be pursued on a nationwide basis, with new putative class
25  representatives to be added to the pleading.

26  23.     Mr. Chinitz and NRT West, Inc., filed a stipulation of dismissal with prejudice of *NRT*
27  *West, Inc.*, on October 28, 2019. Stipulation of Dismissal With Prejudice, *Chinitz v. NRT West, Inc.*, No.
28  5:18-cv-06100-NC (N.D. Cal. Oct. 28, 2019), ECF No. 87.

**C.** **Motions to Dismiss Complaint and to Strike Class Allegations, First Amended Complaint, Motion to Dismiss First Amended Complaint, and Hearing on Motion to Dismiss First Amended Complaint**

24.   NRT LLC filed a motion to dismiss the Complaint and a separate motion to strike the class allegations on October 25, 2019. ECF Nos. 20-21.

25.   After Mr. Chinitz and NRT LLC made administrative filings regarding scheduling, ECF Nos. 25, 27-28, and filed a statement on November 12, 2019, that *NRT West, Inc.*, had been dismissed with prejudice, ECF No. 26, the Court entered an Order on November 25, 2019, allowing Mr. Chinitz to file an amended complaint by December 16, 2019, and terminating the motions to dismiss and strike class allegations without prejudice, ECF No. 29.

26.   On December 16, 2019, Mr. Chinitz filed his First Amended Class Action Complaint ("FAC"), which added new plaintiffs and putative class representatives Sarah Bumpus, Alain Michael, and Rosemary Rodriguez and new defendant Mojo. ECF No. 31.

27.   NRT LLC moved to dismiss on January 6, 2020, arguing Mr. Chinitz's claims were barred by the doctrine of claim preclusion; the FAC failed to provide sufficient notice under Federal Rule of Civil Procedure 8 because it improperly lumped together NRT LLC and its subsidiaries; and each plaintiff's allegations failed to plead sufficient facts to state a claim. ECF No. 32. The parties subsequently fully briefed the motion. ECF Nos. 41, 45-46.

28.   Mojo executed a waiver of service on January 7, 2020. ECF No. 33.

29.   The Court held a hearing on the motion to dismiss on February 27, 2020, ECF No. 48, in which the Court stated, among other things, that the FAC did not sufficiently allege that the actions of Coldwell Banker subsidiaries such as NRT West, Inc., were taken at the behest or direction of NRT LLC. The Court therefore terminated the motion to dismiss and dismissed the FAC. The Court, however, offered Plaintiffs the opportunity to file a second amended pleading within 45 days of the hearing that plausibly alleged that NRT LLC was in control of, and setting the policies for, its subsidiaries.

**D.** **Second Amended Complaint and Motions to Dismiss**

30.   On April 13, 2020, Mr. Chinitz, Ms. Bumpus, Mr. Michael, and Ms. Rodriguez filed an extensive and detailed Second Amended Class Action Complaint ("SAC") against Realogy Holdings

1  Corp., Realogy Intermediate Holdings LLC, Realogy Group LLC, Realogy Services Group LLC,

2  Realogy Brokerage Group LLC ("RBG") (formerly known as NRT LLC),[5] and Mojo. ECF No. 55.

3       31.    RBG moved to dismiss on April 27, 2020, arguing Mr. Chinitz's claims were barred by

4  the doctrine of claim preclusion; the SAC did not sufficiently allege RBG made any call to the plaintiffs

5  or could be held liable for any calls they received; and the SAC filed to give RBG proper notice under

6  Rule 8 because it improperly lumped RBG together with all of its alleged subsidiaries and parents.

7  ECF Nos. 60-61. Mojo also moved to dismiss on the same day. ECF No. 59. The parties fully briefed

8  the motions by May 18, 2020.[6]

9       32.    On June 15, 2020, Realogy Holdings Corp., Realogy Intermediate Holdings LLC,

10  Realogy Group LLC, and Realogy Services Group LLC moved to dismiss on the grounds that Mr.

11  Chinitz's claims were barred by the doctrine of claim preclusion; the SAC failed to state facts sufficient

12  to constitute a claim against the filing defendants; the SAC failed to give the filing defendants sufficient

13  notice of the claims under Rule 8; and Mr. Chinitz did not have standing to allege a UCL claim. ECF

14  No. 71.

15       33.    The Court held a hearing on the motions on June 25, 2020, ECF No. 75, during which

16  the Court, among other things, ordered the Realogy defendants to refile a single motion to dismiss

17  within one week, to which the plaintiffs were to respond two weeks later. The Court also stated that

18  discovery should proceed and asked for a proposed stipulation with a case schedule.

19       34.    Alain Michael filed a notice of voluntary dismissal of all of his claims without prejudice

20  on June 29, 2020. ECF No. 76.

21       35.    On July 2, 2020, Realogy filed a consolidated motion to dismiss. ECF No. 77. The

22  opposition and reply were filed by July 15, 2020. ECF Nos. 79-80.

23       36.    On January 19, 2021, the Court entered an Order denying Realogy's motion to dismiss

24

---

25  [5] Collectively, Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy Group LLC,
   Realogy Services Group LLC, and RBG are "Realogy" or the "Realogy defendants." Plaintiffs
26  determined the identities of the Realogy defendants from the certification of interested entities that
   NRT LLC filed on March 30, 2020, ECF No. 52.
27  [6] Mojo also filed a notice of its claim that 47 U.S.C. § 227(b)(1)(B)'s government-debt exception
   violates the First Amendment on April 28, 2020, ECF No. 63, to which the United States of America
28  responded on June 12, 2020, ECF No. 70. Mojo later withdrew its constitutional challenge on July 28,
   2020. ECF No. 84.

in full. ECF No. 111.

**E.      Third Amended Class Action Complaint, Motion to Dismiss by Mojo, Answer by the Realogy Defendants, and Answer by Mojo**

37.      On February 8, 2021, the Court entered an Amended Scheduling Order that, among other things, set February 12, 2021, as the deadline to add parties or amend pleadings. ECF No. 117.

38.      On February 12, 2021, Mr. Chinitz and Ms. Bumpus, along with new plaintiffs and putative class representatives David Gritz, Micheline Peker, Nathan Rowan, Cheryl Rowan, Daniel Caruso, and Paramjit Lalli, filed a Third Amended Class Action Complaint ("TAC") against the Realogy defendants and Mojo. ECF No. 118. Ms. Rodriguez was not included in the TAC. *Id.*

39.      The Realogy defendants answered the TAC on February 26, 2021. ECF No. 121.

40.      On the same day, Mojo moved to dismiss the TAC. ECF No. 120. The parties fully briefed the motion by April 1, 2021. ECF Nos. 132-33.

41.      On April 5, 2021, Nathan Rowan, Paramjit Lalli, and Daniel Caruso stipulated with the Realogy defendants and Mojo to dismissal of their claims without prejudice. ECF No. 136.

42.      On April 6, 2021, Mr. Chinitz stipulated with the Realogy defendants to dismissal with prejudice of all of his remaining claims in the Action. ECF No. 137.

43.      The Court entered an Order denying Mojo's motion to dismiss the TAC on April 21, 2021. ECF No. 141.

44.      Mojo answered the TAC on May 5, 2021. ECF No. 147.

**F.      Discovery in the Action**

45.      Plaintiffs served the following discovery requests on the Realogy defendants and Mojo:

- interrogatories as follows: Realogy Holdings Corp. (one set), Realogy Intermediate Holdings LLC (one set), Realogy Group LLC (one set), Realogy Services Group LLC (one set), RBG (two sets), and Mojo (one set);
- requests for production of documents as follows: Realogy Holdings Corp. (two sets), Realogy Intermediate Holdings LLC (two sets), Realogy Group LLC (two sets), Realogy Services Group LLC (three sets), RBG (three sets), and Mojo (two sets); and
- requests for admission as follows: Realogy Holdings Corp. (two sets), Realogy Intermediate Holdings LLC (two sets), Realogy Group LLC (two sets), Realogy Services Group LLC (two sets), and RBG (two sets).

46.      In response to Plaintiffs' requests for production of documents, the Realogy defendants and Mojo produced the following:

- Realogy: 64,092 Bates stamped pages of documents/files; and
- Mojo: 24,008 Bates stamped pages of documents/files.

47.    The Realogy defendants served the following discovery requests on Plaintiffs:

- interrogatories as follows: Sarah Bumpus (two sets), Daniel Caruso (two sets), Cheryl Rowan (two sets), Ronald Chinitz (two sets), David Gritz (two sets), Paramjit Lalli (two sets), Nathan Rowan (two sets), Micheline Peker (two sets), and Rosemary Rodriguez (one set).
- requests for production of documents as follows: Sarah Bumpus (two sets), Daniel Caruso (two sets), Cheryl Rowan (two sets), Ronald Chinitz (two sets), David Gritz (two sets), Paramjit Lalli (two sets), Nathan Rowan (two sets), Micheline Peker (two sets), and Rosemary Rodriguez (one set).

48.    Mojo served the following discovery requests on Plaintiffs:

- interrogatories as follows: Sarah Bumpus (one set), Ronald Chinitz (one set), David Gritz (one set), Paramjit Lalli (one set), Micheline Peker (one set), and Rosemary Rodriguez (one set).
- requests for production of documents as follows: Sarah Bumpus (one set), Ronald Chinitz (one set), David Gritz (one set), Paramjit Lalli (one set), Micheline Peker (one set), and Rosemary Rodriguez (one set).

49.    In response to the Realogy defendants' and Mojo's requests for production of documents, Plaintiffs produced the following:

- Sarah Bumpus: 2,064 Bates stamped pages of documents/files;
- Cheryl Rowan: 17 Bates stamped pages of documents/files;
- Ronald Chinitz: 718 Bates stamped pages of documents/files;
- David Gritz: 105 Bates stamped pages of documents/files;
- Micheline Peker: 12 Bates stamped pages of documents/files; and
- Rosemary Rodriguez: 8 Bates stamped pages of documents/files.

50.    Plaintiffs took the following nine fact and expert depositions:

- Rule 30(b)(6) deposition of Mojo (by Davis Mangold) on March 17, 2021;
- Cathleen Ann Livingstone, Senior Education Manager, Learning and Development, at RBG, on April 6, 2021;
- Rule 30(b)(6) deposition of RBG (by Lynn Murtagh regarding, generally speaking, RBG's policies) on April 12, 2021;
- David Metten, Senior Education Manager for the Western Region at Coldwell Banker Realty, on April 15, 2021;
- Chuck Cusson, Director, National Performance Coaching, at RBG, on April 19, 2021;
- David England, Vice President of Mojo Selling Solutions (a company closely related to Mojo), on April 23, 2021;
- Rule 30(b)(6) deposition of RBG (by Wendy Crane regarding, generally speaking, RBG's marketing and agent education efforts) on June 10, 2021;
- Mojo's expert Jan Kostyun on July 12, 2021; and
- Realogy's expert Margaret Daly on July 16, 2021.

51.    Realogy and Mojo took the following fact and expert depositions:

- Plaintiff Micheline Peker on April 13, 2021;

- Plaintiff Cheryl Rowan on April 27, 2021;
- Plaintiff Sarah Bumpus on April 29, 2021;
- Plaintiff David Gritz on April 30, 2021;
- Plaintiffs' expert Randall A. Snyder on July 13, 2021; and
- Plaintiffs' expert Anya Verkhovskaya on July 15, 2021.

52.     On or about June 25, 2020, Plaintiffs served document subpoenas on the following 17 companies that provide lists of telephone numbers to be called and/or that provide dialers that may be used to easily make numerous telephone calls, seeking documents related to use by Coldwell Banker agents of the companies' lead lists and/or dialers:

- Arch Telecom, Inc. (also known as ArchAgent);
- RedX LLC;
- Kai Data LLC (also known as Vulcan7);
- Symphony Source LLC (also known as Espresso Agent);
- SalesDialers LLC (also known as ProspectBoss);
- Landvoice Data, LLC;
- Cole Information Services, Inc. (also known as Cole Realty);
- Benutech, Inc. (also known as Rebogateway);
- Remine Inc.;
- FSBO Hotsheet, LLC;
- PhoneBurner, Inc.;
- MobileSphere LLC (also known as Slybroadcast);
- Speed to Contact LLC (also known as Ricochet 360);
- Five9, Inc.;
- Kixie Online, Inc.;
- AUM LLC (also known as LeadsRain); and
- Cowboy Concepts LLC (also known as Drop Cowboy).

Counsel for Plaintiffs subsequently connected and negotiated with almost all[7] of these entities either through counsel for the company or directly with a representative of the company itself (when the company did not retain counsel).

53.     The responses Plaintiffs received to the subpoenas included but were not limited to the following:

- **SalesDialers LLC**: The company determined there were 13 Coldwell Banker agent accounts in its records. These accounts, however, were in archives that were no longer accessible and from which data could not be extracted.
- **Landvoice Data, LLC**: On June 16, 2021, Bert Compton, Chief Executive Officer of Landvoice Data, LLC ("Landvoice"), produced a sworn declaration that, among other things, described the company's lead generation services and stated that the company had located "approximately 746" of its clients after searching its records for various email domain names associated with Coldwell Banker. Mr. Compton produced an exhibit identifying the names of these 746

---

[7] According to Plaintiffs' process server, Benutech, Inc., and Speed to Contact LLC were served with Plaintiffs' subpoenas. However, neither company ever responded. Plaintiffs' counsel decided not to pursue these subpoenas.

clients, as well as an exhibit identifying which Landvoice lead generation products each of the clients purchased and the durations of their subscriptions. Mr. Compton also stated that "during certain time periods, Landvoice directly integrated with Mojo and fed data directly to the Mojo dialer to be called" and that "Landvoice's practice was to include in that data information enabling the caller to determine what numbers were on the Do Not Call registry."

- **Cole Information Services, Inc. (Cole Realty)**: The company produced an Excel sheet with 777 rows of information showing the account ID number, username, accountholder first and last name, account expiration date, and accountholder email address for Cole Realty accounts associated with email addresses that had domains associated with Coldwell Banker.
- **Remine Inc.**: The company objected to responding to the subpoena on undue burden grounds.
- **FSBO Hotsheet, LLC**: Plaintiffs' counsel had a call with the owner of the company, who claimed the company was small and had very little data.
- **MobileSphere LLC**: After meeting and conferring extensively with counsel for the company regarding whether it was possible to identify Coldwell Banker customers of the company, counsel for Plaintiffs determined not to pursue the subpoena.
- **Kixie Online, Inc.**: On November 17, 2020, Kixie Online, Inc., produced an affidavit signed by Jeff Kuei, a "duly authorized custodian of records or other qualified witness" for Kixie Online, Inc., stating under penalty of perjury that "a diligent and thorough search was made" for records responsive to the subpoena and "to the best of [Mr. Kuei's] knowledge and belief, none of the requested records currently exist."
- **AUM LLC**: A representative of the company searched the company's files and stated to Plaintiffs' counsel by email that there was only one Coldwell Banker account with the company.
- **Cowboy Concepts LLC**: A representative of the company searched the company's files and stated to Plaintiffs' counsel by email that there were no Coldwell Banker accounts with the company, and there had never been any Coldwell Banker accounts with the company.

54.    On September 24, 2020, after having spent significant time meeting and conferring with counsel for dialing service and lead provider **Arch Telecom, Inc.** (including through two letters to counsel for the company and two telephone calls), and having determined that negotiations were at an impasse, Plaintiffs filed a motion to compel compliance with their subpoena to Arch Telecom, Inc., in the United States District Court for the Western District of Texas. Plaintiffs' Opposed Motion to Compel Compliance with Plaintiffs' Subpoena to Non-Party Arch Telecom, Inc., *Chinitz v. Realogy Holdings Corp.*, No. 1:20-mc-00984-RP (W.D. Tex. Sept. 24, 2020), ECF No. 1. Arch Telecom, Inc., opposed the motion on October 8, 2020, and also moved to quash the subpoena and for a protective order. Non-Party Arch Telecom, Inc.'s Motion to Quash and for Protective Order and Response to Plaintiffs' Motion to Compel, *Chinitz v. Realogy Holdings Corp.*, No. 1:20-mc-00984-RP (W.D. Tex. Oct. 8, 2020), ECF No. 6. On October 15, 2020, Plaintiffs filed a reply in support of their motion which

1  also opposed Arch Telecom, Inc.'s motion to quash and for a protective order. On October 22, 2020,

2  the Honorable Magistrate Judge Susan Hightower entered an order denying Plaintiffs' motion to

3  compel compliance with the subpoena and granting in part and denying in part Arch Telecom, Inc.'s

4  motion to quash and for a protective order. Order, *Chinitz v. Realogy Holdings Corp.*, No. 1:20-mc-00984-

5  RP (W.D. Tex. Oct. 22, 2020), ECF No. 8. The court held Plaintiffs had failed to demonstrate that

6  their discovery requests were relevant by providing facts or allegations linking Arch Telecom, Inc., to

7  Plaintiffs' claims or to the defendants in the underlying Action. *Id.* at 4-5. The court further held many

8  of Plaintiffs' requests were facially overbroad. *Id.* at 5. Finally, crediting Arch Telecom, Inc.'s estimate

9  that compliance with the subpoena would cost $45,000 and 600 hours of work, the court held that

10  compliance with the subpoena would impose an undue burden on Arch Telecom, Inc. *Id.* The court,

11  however, denied Arch Telecom, Inc.'s request for attorneys' fees and costs. *Id.* at 6. Plaintiffs filed

12  objections to the magistrate judge's ruling on November 5, 2020; Arch Telecom, Inc., opposed the

13  objections on November 18, 2020; and Plaintiffs a reply on November 25, 2020. The Honorable

14  Robert Pitman affirmed the magistrate judge's ruling on November 30, 2020. Order, *Chinitz v. Realogy*

15  *Holdings Corp.*, No. 1:20-mc-00984-RP (W.D. Tex. Nov. 30, 2020), ECF No. 13.

16          55.     In connection with the subpoena to **RedX LLC**, Plaintiffs' counsel learned from

17  counsel for RedX LLC that the dialer associated with RedX LLC was owned by a separate company

18  that was called Storm LLC. After conducting online research through Utah's Division of Corporations

19  and Commercial Code, Plaintiffs determined that on August 3, 2020, Storm LLC had changed its

20  name to REVN LLC. On or about August 24, 2020, Plaintiffs served a subpoena on REVN LLC.

21  Plaintiffs' counsel subsequently learned from counsel for REVN LLC that it had changed its name

22  again to WAVV Communications LLC ("WAVV"). Plaintiffs' counsel extensively met and conferred

23  telephonically and by email with counsel for WAVV and eventually reached agreement on the content

24  of WAVV's response to the subpoena. On April 26, 2021, Spencer Harman, the President of WAVV,

25  produced a declaration in response to Plaintiffs' subpoena which, among other things, discussed

26  documents that were produced by WAVV in response to the subpoena, including: (1) logs of call

27  activity by Coldwell Banker agents from WAVV's dialers; (2) a list of names and email addresses of

28  the Coldwell Banker agents who made the calls listed in the call logs; and (3) a document containing

1  descriptions of the headings of the columns in the call logs. On June 1, 2021, Spencer Harman

2  produced a supplemental declaration discussing WAVV's records and dialers.

3      56.      **PhoneBurner, Inc.** ("PhoneBurner"), served a response to Plaintiffs' subpoena on

4  September 4, 2020. In meeting and conferring with counsel for PhoneBurner, Plaintiffs' counsel

5  learned PhoneBurner had access to logs of calls made through the dialers of **Kai Data LLC** ("Kai

6  Data") and **Symphony Source LLC** ("Symphony Source").[8] Plaintiffs' counsel extensively met and

7  conferred telephonically and by email with counsel for PhoneBurner and counsel for Kai Data and

8  Symphony Source and eventually reached agreement on the content of PhoneBurner's response to

9  the subpoena. On April 29, 2021, Paul Rydell, the Co-Founder of PhoneBurner, produced a

10  declaration which, among other things, discussed documents that were produced by PhoneBurner in

11  response to the subpoena, including: (1) logs of call activity by Coldwell Banker agents from Kai Data's

12  and Symphony Source's dialers; (2) documents containing addresses of the users of Kai Data's and

13  Symphony Source's dialers who made the calls in the call logs; and (3) documents containing

14  descriptions of the headings of the columns in the call logs. On June 7, 2021, Paul Rydell produced a

15  supplemental declaration discussing PhoneBurner's records and knowledge.

16      57.      Autodialer provider **Five9, Inc.** ("Five9"), served objections and responses to

17  Plaintiffs' subpoena in letter form on July 31, 2020. Five9 refused to conduct a search for documents

18  in response many of the requests in the subpoena that was not limited to a search for documents

19  related to a small number of individual Coldwell Banker sales associates. After meeting and conferring

20  telephonically with Five9's counsel on August 19, 2020, and October 8, 2020, counsel for Plaintiffs

21  determined Five9 and Plaintiffs were at an impasse. Plaintiffs filed a letter in this Court seeking to

22  compel a more robust response on October 27, 2020. ECF No. 97. On December 3, 2020, the Court

23  entered an Order directing Plaintiffs to serve Five9 with the discovery dispute and directing Five9 to

24  file a response to Plaintiffs' letter by December 14, 2020. ECF No. 99. Five9 filed its response to

25  Plaintiffs' letter on December 14, 2020. ECF No. 101. Five9 argued that Plaintiffs had not presented

26  any evidence that any calls relevant to the Action were placed using Five9's software and that Plaintiffs'

27

28  ─────────────────────
[8] Separately, Plaintiffs' counsel had also been meeting and conferring with counsel for Kai Data and Symphony Source (both of which were represented by the same attorney).

1    subpoena was "little more than a vague, overbroad fishing expedition that would represent an

2    unreasonable burden for Five9 to comply with." *Id.* at 1. On December 15, 2020, Plaintiffs filed a

3    letter request leave to file a short response to Five9's letter. ECF No. 102.

4    58.    On January 11, 2021, the Court entered an Order regarding Plaintiffs' dispute with

5    Five9. ECF No. 109. The Court stated that the parties had attached exhibit materials such as emails

6    and correspondence that are not consistent with the Court's standing order on discovery, and it

7    advised all parties and counsel that subsequent non-conforming discovery filings will be summarily

8    stricken and that sanctions may be imposed including monetary and professional conduct sanctions.

9    *Id.* The Court ordered lead counsel for Plaintiffs and Five9 to conduct by January 20, 2021, an in-

10   person meet-and-confer conference via video webinar, which the Court held must last for no less than

11   four hours or until a resolution is reached, whichever is first, and during which the Court prohibited

12   counsel from engaging in any work or communications that were not related to the dispute. *Id.* By

13   January 21, 2021, the Court ordered each lead counsel to file a declaration attesting that they

14   participated in and completed the conference in conformance with the Court's Order. *Id.* The Court

15   further held that failure of lead counsel to appear and personally handle the discussion for their clients

16   would result in sanctions, including possible exclusion from the lead counsel role at motion hearings

17   and at trial, and that if any disputes remained outstanding after the conference, Plaintiffs could file a

18   discovery letter by January 27, 2021. *Id.* On January 21, 2021, counsel for Plaintiffs and Five9 each

19   filed declarations attesting to compliance with the Court's Order. ECF Nos. 113-14. During the

20   videoconference, Plaintiffs and Five9 reached the framework of an agreement to resolve the issues

21   detailed in their discovery dispute letters, and on January 19, 2021, they finalized the terms and logistics

22   for that agreement. *Id.*

23   59.    On February 22, 2021, Plaintiff Bumpus issued a subpoena to AT&T Inc. seeking

24   records of her incoming and outgoing calls throughout the period from June 11, 2015, to the date of

25   the subpoena. AT&T Inc. produced responsive records on March 11, 2021.

26   60.    After the parties had met and conferred multiple times to narrow the issues and

27   Plaintiffs Micheline Peker, Cheryl Rowan, and David Gritz had served amended discovery responses,

28   on June 21, 2021, RBG and Mojo filed a discovery dispute letter seeking to compel Plaintiffs Peker,

1    Rowan, and Gritz to produce their Verizon telephone records for every month that covers the time

2    period of every specific telephone call they received in violation of the TCPA as alleged in the TAC,

3    as requested by RBG's and Mojo's respective requests for production of documents. ECF No. 151.

4    On June 23, 2021, the Court directed Plaintiffs to respond to the letter by July 16, 2021. ECF No.

5    152. Plaintiffs filed a letter in response to RBG's and Mojo's letter on July 16, 2021, stating that

6    Verizon had provided phone records for Plaintiffs Gritz and Rowan, and that a copy had been

7    delivered to Realogy and Mojo. ECF No. 153 at 2. Plaintiffs' letter further stated that Verizon required

8    an amended subpoena regarding Plaintiff Peker's records, but counsel for Realogy had refused to

9    stipulate to extend the discovery period for purposes of the amended subpoena; Plaintiffs proposed

10    that the Court provide an additional extension of the discovery period through the date of Verizon's

11    response to allow Plaintiffs to amend the subpoena to Verizon for Plaintiff Peker's records. *Id.* On

12    September 7, 2021, the Court entered an Order holding that Plaintiffs Gritz and Rowan need take no

13    further action, and that Plaintiff Peker should serve a revised subpoena on Verizon as Plaintiffs

14    outlined in their letter and complete the Verizon subpoena process. ECF No. 158.

15        61.    In or around February 2021, Plaintiffs' consulting expert analyzed the call records

16    produced by the various dialers involved in this action and used available databases to identify the

17    carrier to which each class member telephone number was assigned on the date it was called. Plaintiffs

18    then served document subpoenas on 19 telephone carriers in an effort to identify the class members.

19        62.    In or around March 2021, Plaintiffs served document subpoenas on the following

20    Coldwell Banker agents, each of whom had placed calls to the named Plaintiffs: Vasu & Associates,

21    Inc. ("V&A"), Charles Lefebvre, Lori Fowler, Yochi Melnick, Jermaine Hendricks, Kerry Martin, and

22    Chris Mitchell. The requests in the subpoenas sought, among other things, the following three general

23    categories of documents: (1) documents relating to training materials provided by Coldwell Banker

24    regarding cold calling, lead generation, telemarketing, and use of autodialers; (2) documents relating

25    to the subpoena recipient's use of autodialers, prerecorded messages, and lead lists; and (3) documents

26    relating to any contact between the subpoena recipient and the relevant named Plaintiff in the Action.

27        63.    As indicated above, on March 11, 2021, Plaintiffs served a document subpoena on

28    V&A. V&A served a letter containing only objections on March 24, 2021, taking the position that the

1    requests in the subpoena were unduly burdensome and sought irrelevant documents. After Plaintiff

2    Paramjit Lalli dismissed his claims on April 6, 2021, V&A also began taking the position that Plaintiffs

3    were not entitled to any information sought by the subpoena. Plaintiffs' counsel met and conferred

4    telephonically with counsel for V&A on April 7, 2021, and exchanged three meet and confer letters

5    in an attempt to resolve the dispute, after which Plaintiffs' counsel determined Plaintiffs and V&A

6    were at an impasse. On April 20, 2021, Plaintiffs filed a discovery dispute letter in this Court seeking

7    to compel compliance with the subpoena. ECF No. 140. On April 22, 2021, Plaintiffs filed a

8    withdrawal of their discovery letter brief so the motion could be refiled in the Central District of

9    California. ECF No. 143.

10        64.    On May 6, 2021, Plaintiffs filed a motion in the Central District of California to compel

11   V&A to comply with the subpoena. Notice of Motion and Motion to Compel Discovery from Non-

12   Party Vasu & Associates, Inc., *Bumpus v. Realogy Holdings Corp.*, No. 8:21-mc-00022-CJC-DFM (C.D.

13   Cal. May 6, 2021), ECF No. 2. On May 7, 2021, the case was assigned to the Honorable Cormac J.

14   Carney and the Honorable Magistrate Judge Douglas F. McCormick. On May 11, 2021, the court

15   referred the dispute to Magistrate Judge McCormick. On May 18, 2021, Magistrate Judge McCormick

16   entered an Order extending the deadline to file supplemental memoranda under Local Rule 37-2.3,

17   removing the page limit on such memoranda, ordering Plaintiffs and V&A to further meet and confer

18   about the 13 requests for production at issue, and ordering Plaintiffs and V&A to explain in their

19   supplemental memoranda how they proposed to resolve the dispute on a request-by-request basis.

20   Plaintiffs filed a supplemental memorandum on June 4, 2021, and V&A filed an opposition brief on

21   June 9, 2021 (five days late). On June 14, 2021, Magistrate Judge McCormick entered an Order

22   granting the motion to compel. Further Order re: Plaintiffs' Motion to Compel Discovery from Non-

23   Party Vasu & Associates, Inc., *Bumpus v. Realogy Holdings Corp.*, No. 8:21-mc-00022-CJC-DFM (C.D.

24   Cal. June 14, 2021), ECF No. 9. The court stated that the discussions between Plaintiffs and V&A

25   had foundered on a threshold issue, i.e., whether the subpoena served on V&A obligated V&A's sole

26   shareholders and officers, Victor and Suzanne Vasu, to produce responsive documents. *Id.* at 1. The

27   court stated that "[i]t's hard not to read V&A's supplemental memorandum and come away with the

28   conclusion that V&A is engaged in gamesmanship or perhaps even obstruction." *Id.* at 2. The court

concluded by ordering V&A and the Vasus to produce all documents responsive to the subpoena within seven days of its order. *Id.* at 3. The Vasus produced documents on June 21, 2021.

65. On March 2, 2021, Realogy served notices of its intent to serve document subpoenas on the following entities: Focal Point Data Risk LLC; Sunera LLC; Major League Baseball; Minor League Baseball; Rochester Community Baseball, Inc.; Zillow, Inc.; and Zillow Group, Inc. The documents sought in the subpoenas were as follows:

- The subpoenas to Focal Point Data Risk LLC and Sunera LLC sought: (1) any writings reflecting Plaintiff Paramjit Lalli's use of the phone number at issue in the Action during the course and scope of his employment with Focal Point Data Risk and Sunera LLC, excluding Mr. Lalli's personnel file, and (2) any online communications reflecting Mr. Lalli's use of the number during the course and scope of his employment with Focal Point Data Risk and Sunera LLC.

- The subpoenas to Major League Baseball, Minor League Baseball, and Rochester Community Baseball, Inc., sought the same categories of documents as the subpoenas listed above as to Plaintiff Nathan Rowan's use of the phone number at issue in the Action during the course and scope of his employment and association with Major League Baseball, Minor League Baseball, the Rochester Red Wings, Rochester Community Baseball, Inc., the Toronto Blue Jays, the Kansas City Royals, the Norfolk Tides Baseball Club, and the Minnesota Twins.

- The subpoenas to Zillow, Inc., and Zillow Group, Inc. (together, "Zillow"), sought various documents relating to Plaintiff Micheline Peker and her property in Florida; Plaintiff Daniel Caruso and his property in Florida; and Plaintiff Paramjit Lalli and his property in California. Specifically, the documents requested included but were not limited to: communications between Zillow and the Plaintiffs or real estate agents relating to the properties; Zillow webpages and listings pertaining to the properties; Zillow contact agents forms relating to the properties; all advertising and marketing relating to the properties on Zillow's website; all For Sale By Owner listings relating to the properties on Zillow's website; and emails sent by Zillow to home buyers regarding the properties when the properties were initially listed with Zillow.

66. On March 16, 2021, Plaintiffs, after meeting and conferring telephonically with Realogy, filed a discovery dispute letter with the Court seeking a protective order for Plaintiff Nathan Rowan with respect to Realogy's subpoenas to Major League Baseball (which had previously employed Mr. Rowan) and Minor League Baseball (which had never employed Mr. Rowan). ECF No. 125. Plaintiffs argued Realogy served the subpoenas in an attempt to harass and intimidate Mr. Rowan and that Mr. Rowan was rightly concerned that professional consequences could follow if Major League Baseball and Minor League Baseball were required to respond to the subpoenas, particularly since Realogy could obtain the same information from Mr. Rowan. *Id.* On March 24, 2021, the Court

1   ordered Realogy to file a response by April 7, 2021. ECF No. 130. On March 26, 2021, Realogy filed

2   a letter arguing, among other things, that its subpoenas were narrowly tailored to seek relevant

3   information regarding whether Mr. Rowan's number had been utilized and held out to the public in

4   connection with a business. ECF No. 131. On April 7, 2021, Plaintiffs withdrew their discovery letter,

5   as Mr. Rowan dismissed his claims without prejudice on April 5, 2021. ECF No. 138.

6         67.    Plaintiffs' expert Anya Verkhovskaya served her expert report on May 28, 2021. Ms.

7   Verkhovskaya offered four opinions, including that: (1) using the data provided by Realogy and calling

8   platform providers including Mojo, there is a reliable method by which it can be determined with a

9   high degree of certainty which residential telephone numbers received, during the period from June

10  11, 2015, to the date of the report, two or more calls within any 12-month period after having been

11  on the NDNCR for 32 or more days; whether such calls were made by an agent of Realogy; whether

12  such calls were more than zero duration, where appropriate; and whether such calls were treated as

13  connected, based on telephone call dispositions documented by the calling platform providers;

14  (2) using the data provided by Realogy and the calling platform providers, there is a reliable method

15  by which it can be determined with a high degree of certainty which telephone numbers received,

16  during the period from June 11, 2015, to the date of the report, at least one "prerecorded" message

17  based on telephone call dispositions documented by the calling platform providers; whether such calls

18  were more than zero duration, where appropriate; and whether such calls were made by an agent of

19  Realogy; (3) using the data provided by Realogy and the calling platform providers, there is a reliable

20  method by which it can be determined with a high degree of certainty that Plaintiff Sarah Bumpus's

21  telephone numbers received multiple calls from an agent or agents of Realogy after the date she first

22  asked Realogy not to call her; and (4) using the data provided by Realogy and Mojo, there is a reliable

23  method by which the subscribers and/or users of the telephone numbers that received telephone calls

24  made by agents of Realogy, or others on their behalf, during the period from June 11, 2015, to the

25  date of the report, can be identified. On July 14, 2021, Ms. Verkhovskaya served a corrected expert

26  report. Due to a formatting error, Ms. Verkhovskaya's original report did not show all of the

27  underlying files she had used from within ZIP files produced by Mojo, namely, MOJO-Chinitz

28  001.zip, MOJO-Chinitz 002.zip, and MOJO-Chinitz 003.zip. The corrected report rectified this issue.

68.    Plaintiffs' expert Randall A. Snyder served his expert report on May 28, 2021. Mr. Snyder opined, among other things, that "based on [his] knowledge, education, experience, expertise, and training, [his] review of the relevant documents, and the facts described [in his declaration], that the Mojo automatic dialing system is telecommunications equipment which technically and electronically initiates telephone calls." Decl. Snyder ¶ 58.

69.    Realogy's expert Margaret Daley served her expert report on May 28, 2021. Ms. Daley opined that the dialing data is incomplete and cannot identify class members; there is no method to identify class member as no business records or consent documentation have been produced from the 105,440 independent contractor sales associates; and Plaintiffs cannot reliably identify telephone numbers associated with businesses. Ms. Daley also contended Plaintiffs Peker and Bumpus were clients of Coldwell Banker and Ms. Bumpus used one of her numbers for business purposes.

70.    Mojo's expert Jan Kostyun served his expert report on May 28, 2021. Mr. Kostyun opined, among other things, that determining members of the classes pursuing claims against Mojo would require an individualized review of thousands of messages, and even after this individualized review, dropped messages may not be definitively identified; there is no available method to identify whether the call recipient was the person who registered on the NDNCR and no available classwide method to reliably identify business numbers registered on the NDNCR; and users of the Mojo platform have exclusive control over whether any calls are made on the platform, when the calls are made, to whom the calls are made, and what the content of the calls will be.

71.    Ms. Verkhovskaya served a rebuttal expert report on June 18, 2021, responding to the criticisms of Ms. Daley and Mr. Kostyun in their original expert reports.

72.    Mr. Snyder served a rebuttal expert report on June 18, 2021, responding to the criticisms of Ms. Daley and Mr. Kostyun in their original expert reports.

73.    Ms. Daley served a rebuttal expert report on June 18, 2021, offering a plethora of opinions criticizing Ms. Verkhovskaya's original expert report, including but not limited to: Ms. Verkhovskaya's proposed methodology does not identify Plaintiffs; Ms. Verkhovskaya fails to exclude telephone numbers of persons with established business relationships or who consented to be called; Ms. Verkhovskaya's work is not replicable as she fails to produce supporting workpapers, queries, and

1   source documentation; Ms. Verkhovskaya fails to disclose she will include persons in her class list that

2   her data processors do not associate with the telephone numbers on the dates the calls were made;

3   and Ms. Verkhovskaya's undisclosed methodology for name matching cannot be replicated and is

4   likely highly unreliable.

5       74.     Mr. Kostyun served a rebuttal expert report on June 18, 2021, offering numerous

6   opinions criticizing Ms. Verkhovskaya's original expert report and Mr. Snyder's original expert report,

7   including but not limited to: Ms. Verkhovskaya included calls registered on the NDNCR by someone

8   other than the call recipient; Ms. Verkhovskaya's identification of telephone numbers and calls in

9   violation of the NDNCR cannot be verified; Ms. Verkhovskaya's attempted use of LexisNexis to filter

10  out business numbers is packed with problems; and Mr. Snyder provides no valid basis to support his

11  opinion that Mojo's telecommunications equipment itself automatically initiated all telephone calls

12  made using the Mojo dialing plaform. Mr. Kostyun served a corrected rebuttal expert report on July

13  14, 2021. On the opening page of the report, he stated that "[t]he single correction in this report is a

14  description of additional documents reviewed in paragraph 5, below."

15      75.     On June 7, 2021, Realogy served a document subpoena on Ms. Verkhovskaya, to

16  which Ms. Verkhovskaya responded on June 28, 2021. On June 8, 2021, Mojo served a document

17  subpoena on Ms. Verkhovskaya, to which Ms. Verkhovskaya responded on June 28, 2021. Ms.

18  Verkhovskaya produced 80 Bates stamped pages of responsive documents/files.

19      76.     On June 14, 2021, Plaintiffs served document subpoenas on Ms. Daley and Mr.

20  Kostyun. Mr. Kostyun responded on July 1, 2021. Ms. Daley produced 36 Bates stamped pages of

21  documents/files, including Excel worksheets and SQL databases.

22      77.     On June 24, 2021, Mojo served a deposition/document subpoena on Mr. Snyder, to

23  which Mr. Snyder responded on July 13, 2021, producing 163 Bates stamped pages of responsive

24  documents/files.

25  **G.    Motion for Class Certification, Motion for Leave to File Motion for Reconsideration of Order re: Class Certification, Petition for Leave to File Interlocutory Appeal Pursuant to Federal Rule of Civil Procedure 23(f), the Ninth Circuit's Denial of the Petition, and Motion to Approve Class Notice**

26

27      78.     Plaintiffs moved for class certification on August 20, 2021, seeking to certify the

28

1    following three classes bringing claims against the Realogy defendants[9]:

2    **National Do Not Call Registry Nationwide Class (Rule 23(b)(2) and (3)**: All persons in the United States who received two or more calls made by a Coldwell Banker-affiliated Agent using a Mojo, PhoneBurner, and/or Storm dialer in any 12-month period on a residential landline or cell phone number that appeared on the National Do Not Call Registry for at least 31 days for the time period beginning June 11, 2015, to present, and reflected in the call records listed in Appendix A.

   **National Internal Do Not Call Class (Rule 23(b)(2)**: All persons in the United States who received, in any 12-month period, two or more calls promoting Coldwell Banker's services and made by a Coldwell Banker-affiliated Agent to their residential landline or cell phone number, for the time period beginning June 11, 2015, to present. These persons seek only injunctive relief.

   **National Artificial or Prerecorded Message Class (Rule 23(b)(2) and (3))**: All persons in the United States who received a call on their residential telephone line or cell phone number with an artificial or prerecorded message, as indicated by the following call disposition codes: (1) "Drop Message" (if using the Mojo dialer); (2) "ATTENDED_TRANSFER" (if using the Storm dialer); and (3) "VOICEMAIL" (if using a PhoneBurner dialer) in the call records listed in Appendix A and made by a Coldwell Banker-affiliated Agent for the time period beginning June 11, 2015, to present.

13   ECF No. 155 at 13. Realogy and Mojo opposed the motion on September 24, 2021, ECF Nos. 159,

14   165, and Plaintiffs filed replies on October 8, 2021, ECF Nos. 175-76. Realogy filed objections to

15   Plaintiffs' reply briefs (on the ground that the filing of two reply briefs evaded the page limit in the

16   Court's standing order) and to evidence in the reply briefs on October 15, 2021. ECF No. 179.

17         79.    On October 8, 2021, Realogy filed an administrative motion for leave to file a

18   supplemental declaration in opposition to the motion for class certification on the ground that it had

19   not received Verizon call records pertaining to Plaintiff Peker's cellular telephone number until after

20   it had filed its brief opposing class certification. ECF No. 173 at 2. On October 12, 2021, Plaintiffs

21   filed a response to the administrative motion stating they did not oppose it but they requested leave

22   to file a supplemental response addressing only the issues raised in Realogy's proposed supplemental

23   declaration. ECF No. 178. On October 18, 2021, the Court entered an Order that allowed Realogy to

24   file the supplemental declaration and directed the Parties to meet and confer about dates for filing an

25   amended opposition and amended reply to the motion for class certification to account for any

26   arguments related to the supplemental declaration, to meet and confer about a new hearing date, and

27

28   _____
   [9] Plaintiffs also sought certification of a subclass bringing claims against Mojo.

1   to file a joint statement of their agreement by November 8, 2021. ECF No. 180. On October 19, 2021,

2   the Parties filed the joint statement proposing a briefing schedule and a new hearing date. ECF No.

3   181. On October 21, 2021, the Court entered an Order approving the proposed briefing schedule but

4   declining to set a hearing date. ECF No. 182. Realogy and Mojo filed amended opposition briefs on

5   October 26, 2021, ECF Nos. 183, 186, and Plaintiffs filed amended replies on November 2, 2021,

6   ECF Nos. 188, 190. Mojo and Realogy filed objections to Plaintiffs' reply evidence on November 9,

7   2021. ECF Ns. 192-93.

8       80.    On March 23, 2022, the Court granted in part Plaintiffs' motion for class

9   certification,[10] certifying the Certified Classes; appointing Sarah Bumpus as the representative of the

10  NDNC class and the Internal DNC class and Micheline Peker and Cheryl Rowan as the

11  representatives of the Prerecorded Message class; and appointing Tycko & Zavareei LLP, Reese LLP,

12  and Kaufman P.A. as counsel for all three classes. ECF No. 223.

13      81.    On March 30, 2022, Realogy filed a motion pursuant to Civil Local Rule 7-9 for leave

14  to file a motion for reconsideration of the Court's Order regarding class certification, on the ground

15  that on March 25, 2022, Plaintiffs filed a motion for leave to file a Fourth Amended Class Action

16  Complaint to add a new TCPA claim alleging violation of 47 U.S.C. § 227(b)(1)(A)(iii). ECF No. 240.

17  On August 18, 2022, the Court entered an Order denying the motion for leave to file a motion for

18  reconsideration for lack of good cause under Civil Local Rule 7-9. ECF No. 291.

19      82.    On March 31, 2022, Plaintiffs and Mojo filed a stipulation dismissing Mojo from the

20  Action without prejudice. ECF No. 241. On the same day, the Court entered an Order dismissing

21  Mojo without prejudice. ECF No. 243.

22      83.    On April 6, 2022, Realogy filed a petition with the Ninth Circuit for permission to file

23  an interlocutory appeal of the class certification order pursuant to Federal Rule of Civil Procedure

24  23(f). Defendants/Petitioners' Petition for Permission to Appeal Class-Certification Order Pursuant

25  to Federal Rule of Civil Procedure 23(f), *Bumpus v. Realogy Holdings Corp.*, No. 22-80027 (9th Cir. Apr.

26  6, 2022), ECF No. 1-2. Plaintiffs opposed the petition on April 18, 2022, and on May 26, 2022, the

27

28  _____

[10] The Court denied certification of the subclass bringing claims against Mojo.

1    Ninth Circuit entered an Order denying it, ECF No. 272.

2        84.    Plaintiffs filed a motion for approval of class notice on April 22, 2022, proposing Epiq

3    Class Action & Claims Solutions, Inc. ("Epiq"), as the notice administrator. ECF No. 254 at 1. Realogy

4    opposed the motion on May 6, 2022, arguing Plaintiffs should use the known names and addresses

5    already provided in the dialer records to determine where to send notice; any reverse lookup data

6    should be provided to Realogy; the content of the notice was deficient because it did not identify the

7    Internal DNC class, class members could not opt out electronically, the motion did not provide

8    sufficient information about the content of the notice website, and the draft notices contained

9    language that was not neutral or accurate; and notice should be stayed until after the Ninth Circuit

10   ruled on the 23(f) petition. ECF No. 267. Plaintiffs replied on May 9, 2022, arguing they did not

11   propose to ignore the contact information in the dialer records; they did not object to providing the

12   reverse lookup data to Realogy so long as it only used the data for claims administration purposes; the

13   content of the notices was appropriate because the Internal DNC class, an injunctive relief class, did

14   not need to be identified, the language was accurate and neutral, submission of opt outs by mail is

15   standard and complies with due process, and the content of the proposed website was sufficiently

16   identified in Plaintiffs' filings; and notice should not be stayed while the Rule 23(f) petition was

17   pending because, among other reasons, such petitions are seldom granted. ECF No. 268. On May 26,

18   2022, the Court held a hearing on the motion and ordered notice to go out; during the hearing, the

19   Court asked Plaintiffs to remove references to a trial date from the notice and to ensure there would

20   be 90 days to opt out of the class. *See* ECF No. 273; Tr. Hearing, May, 26, 2022, at 3, 7 ("[I]t's full

21   speed ahead."), 9.

22       85.    On October 7, 2022, Plaintiffs filed a declaration by Cameron R. Azari, Esq., of Epiq

23   discussing the implementation and adequacy of the class notice program. ECF No. 305. The notice

24   program reached approximately 86.6% of the identified NDNCR and Prerecorded Message classes.

25   ECF No. 305-1 at ¶ 7. As of October 5, 2022, Epiq had received 20 valid requests for exclusion and

26   seven incomplete requests. *Id.* at ¶ 22 & Attachment 4. Mr. Azari concluded that the notice program

27   "provided for the best notice practicable under the circumstances of this case, conformed to all aspects

28   of the Rule 23, and comported with the guidance for effective notice set out in the Manual for

Complex Litigation, Fourth," *id.* at ¶ 25, and "[t]he Notice Program schedule afforded sufficient time to provide full and proper notice to Classes before any opt-out deadline," *id.* at ¶ 26.

### H. Motions for Summary Judgment and Partial Summary Judgment, *Daubert* Motions, and Motion to Correct Third Amended Class Action Complaint

86. On February 25, 2022, Plaintiffs moved for partial summary judgment against Realogy on two discrete issues. ECF No. 198. First, Plaintiffs sought a ruling that as a matter of law, RBG was vicariously liable under the doctrines of apparent authority and ratification for any calls deemed at trial to be in violation of the TCPA that were made by or on behalf of Coldwell Banker sales associates. *Id.* at 1-2. Second, Plaintiffs sought summary judgment on Realogy's affirmative defense of consent with respect to Plaintiffs' claims for violation of 47 C.F.R. § 64.1200(c)(2)(ii) with respect to the NDNC class and 47 U.S.C. § 227(b)(1)(B) with respect to the Prerecorded Message class. *Id.* at 2-3. On March 25, 2022, Realogy opposed the motion, arguing (1) Realogy was not vicariously liable for the alleged calls by independent sales associates because, *inter alia*, apparent authority and ratification were inapplicable as a matter of law and (2) there were triable issues of fact concerning Realogy's consent defense because, *inter alia*, Bumpus indisputably provided consent and numerous individual mini-trials would be necessary to ascertain whether consent was provided to the independent sales associates in connection with the other alleged calls. ECF No. 233. On April 22, 2022, Plaintiffs filed a reply. ECF No. 259. On April 29, 2022, Realogy filed objections to evidence in the reply brief. ECF No. 265.

87. On February 25, 2022, Plaintiffs also moved for partial summary judgment against Mojo, asking the Court to hold as a matter of law that Mojo was directly liable under the TCPA for initiating prerecorded calls to the proposed Mojo subclass. ECF No. 201. Mojo opposed the motion on March 25, 2022, arguing the electronic dialing of numbers does not constitute physically placing calls; there was no evidence that Mojo "initiated" the calls or messages at issue; and Plaintiffs' motion depended on mischaracterizations of Mojo and its platform. ECF No. 236. Prior to the deadline for Plaintiffs' reply, on March 23, 2022, the Court denied certification of the proposed Mojo subclass, ECF No. 223, and on March 31, 2022, Mojo was dismissed from the case, ECF Nos. 241-42. Plaintiffs did not file a reply.

88.     On February 25, 2022, Plaintiffs also moved to exclude Realogy's expert Margaret Daley. ECF No. 212. Plaintiffs asked the Court to exclude all of Ms. Daley's legal discussions, legal conclusions, and opinions based on erroneous conceptions of the law; Ms. Daley's speculative opinions; Ms. Daley's opinions based on unreliable methodologies; and Ms. Daley's irrelevant opinions. *Id.* On March 25, 2022, Realogy opposed the motion, arguing Ms. Daley was a qualified expert in data analytics; her opinions were not legal conclusions or speculative; her methodologies were all reliable; and her opinions were relevant. ECF No. 235. On April 22, 2022, Plaintiffs filed a reply. ECF No. 257.

89.     Plaintiffs also moved on February 25, 2022, to exclude Mojo's expert Jan Kostyun. ECF No. 209. Among other things, Plaintiffs asked the Court to exclude Mr. Kostyun's speculative opinions, his personal opinions, his legal analysis and legal opinions, and his opinions premised on incorrect legal assumptions. *Id.* Mojo opposed the motion on March 25, 2022, arguing Mr. Kostyun's criticisms of Ms. Verkhovskaya were based on concrete evidence and established errors, not speculation; Mr. Kostyun's conclusions were not "personal opinions," including his criticisms of Soundex and PacificEast; and Mr. Kostyun did not provide any legal analysis or legal opinions. ECF No. 237. On April 22, 2022, although Mojo had been dismissed from the case, Plaintiffs filed a reply asking the Court to bar Realogy from relying on Mr. Kostyun's opinions or subpoenaing him to provide expert testimony at trial. ECF No. 261.

90.     On February 25, 2022, Realogy moved for summary judgment and/or partial summary judgment as to Plaintiffs' claims. ECF No. 205. Realogy argued, among other things, that Plaintiffs Peker and Rowan lacked standing because they had no knowledge, and were unaware, of the alleged prerecorded messages; Peker and Rowan did not receive any prerecorded messages on their residential telephone lines from Realogy; Bumpus only received one actionable call; Bumpus had an established business relationship with NRT West, Inc.; Bumpus lacked standing to seek injunctive relief; Realogy was not directly liable for any calls to Plaintiffs; and Realogy was not vicariously liable for any calls to Plaintiffs. *Id.* On March 25, 2022, Plaintiffs opposed the motion, arguing, among other things, that Realogy inflicted concrete harms on Plaintiffs Peker and Rowan sufficient to establish standing because they received unwanted prerecorded telemarketing messages and the law does not require

them to remember the calls; Plaintiffs Peker and Rowan received prerecorded messages in violation of 47 U.S.C. § 227(b)(1); Plaintiff Bumpus received more than one actionable call within a 12-month period and terminated her business relationship with Coldwell Banker; Bumpus had standing to seek injunctive relief; and Realogy was vicariously liable for the calls of the Coldwell Banker agents as a matter of law. ECF No. 228. On April 22, 2022, Realogy filed a reply. ECF No. 255.

91.    On February 25, 2022, Realogy also moved to exclude Ms. Verkhovskaya. ECF No. 206. Realogy argued, among other things, that Ms. Verkhovskaya was not qualified to provide the opinions she offered; Ms. Verkhovskaya's Soundex name matching methodology was unreliable; Ms. Verkhovskaya concealed and misrepresented data; Ms. Verkhovskaya relied on insufficient facts and data including insufficient call records, insufficient Pacific East data, insufficient LexisNexis data, and insufficient data regarding residential lines; Ms. Verkhovskaya improperly included zero duration calls; and Ms. Verkhovskaya's opinions should also be excluded pursuant to Rule 37(c)(1) because her original expert report failed to identify all of the facts and data she relied upon in forming her opinion. *Id.* On March 25, 2022, Plaintiffs filed a consolidated brief opposing Realogy's motion and Mojo's motion to exclude Ms. Verkhovskaya, discussed in more detail below. ECF No. 239. On April 22, 2022, Realogy filed a reply. ECF No. 258.

92.    For its part, on February 25, 2022, Mojo moved for summary judgment on Plaintiffs' claims. ECF No. 204. Mojo argued, among other things, that there was no evidence that Mojo initiated the calls or messages at issue; there was no evidence that Peker received any prerecorded message on a residential telephone line; and there was no evidence that Peker suffered a "concrete harm" as required to establish Article III standing. *Id.* On March 25, 2022, Plaintiffs opposed the motion, arguing, among other things, that Mojo was directly liable for initiating prerecorded calls to the proposed Mojo subclass; Peker received prerecorded messages in violation of 47 U.S.C. § 227(b)(1); and Peker had standing because she received two prerecorded voice calls initiated by Mojo. ECF No. 232. Mojo was dismissed from the case before the deadline for its reply.

93.    Mojo also moved on February 25, 2022, to exclude Ms. Verkhovskaya. ECF No. 202. Mojo argued, among other things, that Ms. Verkhovskaya did not qualify as an expert; Ms. Verkhovskaya excluded Plaintiff Peker as a class member; zero-duration "drop message" calls were

not delivered; Soundex was unreliable; Ms. Verkhovskaya intentionally prevented replication of her methodology; and Ms. Verkhovskaya relied upon "black box" techniques. *Id.* As stated above, on March 25, 2022, Plaintiffs filed a consolidated brief opposing Realogy's motion and Mojo's motion to exclude Ms. Verkhovskaya. ECF No. 239. Plaintiffs argued, among other things, that Ms. Verkhovskaya was well qualified to serve as an expert here; Ms. Verkhovskaya's use of Soundex was proper; Realogy's assertions that Ms. Verkhovskaya concealed or misrepresented data were unfounded; Ms. Verkhovskaya properly relied on call records produced by dialer companies that had been kept in the ordinary course of business; Ms. Verkhovskaya properly relied on PacificEast's data regarding the NDNCR; Ms. Verkhovskaya's use of LexisNexis to identify business, residential, and government telephone numbers was sound; Ms. Verkhovskaya's decision to include certain zero duration calls does not cast doubt on the reliability of her methodology; Ms. Verkhovskaya's methodology did identify Plaintiff Peker's number; established business relationships and consent were affirmative defenses on which Realogy bore the burden; Ms. Verkhovskaya's methodology was replicable; and Ms. Verkhovskaya's testimony should not be excluded under Rule 37(c)(1) because she had properly disclosed all material she relied upon and all the files within her possession that were responsive to Realogy's discovery requests. *Id.* Mojo was dismissed before its reply was due.

94.     Mojo also moved on February 25, 2022, to exclude Mr. Snyder. ECF No. 203. Mojo argued that Mr. Snyder's opinions were irrelevant because dialing, technical initiation, and electronic initiation are irrelevant to the FCC's "initiation" analysis and spoofing is irrelevant to the issues before the Court; and that any probative value of Mr. Snyder's opinions was substantially outweighed by the danger of confusing and misleading the jury. *Id.* On March 25, 2022, Plaintiffs opposed the motion, arguing that Mr. Snyder's opinions were relevant and that Mr. Snyder's opinions posed no risk of prejudice because he only provided technical information, not legal conclusions. ECF No. 230. Mojo was dismissed before its reply was due.

95.     On March 25, 2022, Plaintiffs filed a motion for leave to conform the claims asserted in the pleading to the Certified Classes. ECF No. 231. Plaintiffs sought leave to file a proposed Fourth Amended Class Action Complaint that clarified that Plaintiffs' prerecorded message claims are brought under 47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B). *Id.* at 1. Plaintiffs argued that good cause

1   existed for the amendment because Plaintiffs had consistently, diligently litigated the case for years in

2   accordance with the Prerecorded Message class definition, which covers both residential telephone

3   lines and cellular telephones, as demonstrated by numerous documents and filings. *Id.* at 1-4. Plaintiffs

4   asked the Court to allow them to make a "technical clarification" to the pleading so that it referenced

5   both § 227(b)(1)(A)(iii) and § 227(b)(1)(B). *Id.* at 4. Realogy opposed the motion on April 8, 2022,

6   arguing Plaintiffs had not been diligent and permitting the amendment would be unduly prejudicial to

7   Realogy given the late stage of the litigation. ECF No. 248. On April 15, 2022, Plaintiffs filed a reply,

8   arguing Realogy had "always known" Plaintiffs were asserting a prerecorded voice claim under the

9   TCPA based on Realogy agents' calls to cellular telephone numbers, based on numerous documents

10  and filings, and Plaintiffs were not asserting a new claim based on a new theory. ECF No. 252.

11      96.     On May 11, 2022, the Court entered an Order denying all of the summary judgment

12  motions. ECF No. 269. The Court held the reason for the denial was "straightforward." *Id.* at 1. "As

13  the parties' own motion papers amply demonstrate, this case is replete with disputes of material fact

14  that a jury will be required to resolve." *Id.* "Each party filed hundreds of pages in briefing, declarations,

15  and exhibits with their motions." *Id.* "While volume alone is not necessarily fatal to a summary

16  judgment motion, these filings reflect an almost total disagreement between the parties about the facts

17  of the case." *Id.*

18      The Court also ruled on Plaintiffs' motion for leave to conform their pleading. ECF No. 269

19  at 2. The Court held that Realogy's arguments were "form over substance"; that "Plaintiffs have

20  indicated that they inadvertently omitted a reference to the cell phone provision for Peker and

21  Rowan," which was "in effect a scrivener's error"; and that Realogy "cannot say that it is in any way

22  surprised or disadvantaged by the drafting omission." *Id.* Consequently, the Court deemed the TAC

23  to allege a claim for Peker and Rowan under 47 U.S.C. § 227(b)(1)(A)(iii) and terminated the motion.

24  *Id.*

25      With respect to the *Daubert* challenges to the expert reports of Ms. Verkhovskaya and Ms.

26  Daley, the Court stated that it did not rely on either report for its order and that they would be

27  addressed in a separate order. *Id.* at 2-3.

28      97.     On August 16, 2022, the Court entered an order denying the motions to exclude the

1   opinions of Ms. Verkhovskaya and Ms. Daley, holding that the "objections to go the weight of the

2   experts' testimony, not their reliability" and that "[c]ounsel will have an opportunity to cross-examine

3   the witnesses at trial." ECF No. 290. The Court also stated that "[t]o the extent that Daley's report

4   includes legal conclusions, no testimony on legal conclusions will be permitted at trial." *Id.*

5       **I.    Pretrial Filings and Trial Scheduling**

6       98.    On August 14, 2020, the Court entered a Scheduling Order setting the pretrial

7   conference for January 6, 2022, at 1:30 p.m. and the trial for March 7, 2022, at 9:00 a.m. ECF No. 86.

8       99.    On February 8, 2021, the Court entered an Amended Scheduling Order setting the

9   pretrial conference for July 28, 2022, at 10:00 a.m. and the trial for August 22, 2022, at 9:00 a.m. ECF

10   No. 117. On December 27, 2021, the Court entered an Amended Scheduling Order that maintained

11   the same dates for the pretrial conference and trial. ECF No. 195.

12       100.   On July 20, 2022, the Court entered an Order directing the Parties to propose a new

13   trial date by July 27, 2022. ECF No. 279. The Parties submitted competing proposals on July 27, 2022.

14   ECF Nos. 280-81.

15       101.   On August 1, 2022, the Court set the pretrial conference for November 10, 2022, at

16   1:30 p.m. and trial for November 28, 2022, at 9:00 a.m. ECF No. 282.

17       102.   In accordance with the Court's Standing Order for Civil Jury Trials, the Parties

18   engaged in extensive and detailed meet-and-confer discussions related to the Court's required pretrial

19   filings beginning in mid-September 2022, including numerous calls and exchanges of drafts of the

20   required pretrial documents.

21       103.   On October 13, 2022, Plaintiffs served eight motions *in limine* on Realogy, and Realogy

22   served eight motions *in limine* on Plaintiffs. On October 23, 2022, Plaintiffs served oppositions to six

23   of the motions *in limine* and statements of nonopposition to the other two.

24       104.   On October 24, 2022, the Court entered an Order stating that it had a criminal trial

25   with priority over this case and vacating the pretrial conference and trial. ECF No. 317. The Court

26   directed the Parties to propose by November 24, 2022, a trial date in April 2023. *Id.* On November

27   23, 2022, the Parties filed a joint notice stating that "[d]ue to scheduling conflicts throughout April,

28   the parties' first mutually available date for the start of trial is May 1, 2023," and "[t]herefore, the

parties jointly and respectfully request that this case be set for trial beginning May 1, 2023." ECF No. 318.

105.    On January 18, 2023, the Court set the pretrial conference for April 27, 2023, at 1:30 p.m. and the trial for May 15, 2023, at 9:00 a.m. ECF No. 322.

106.    In accordance with the Court's Standing Order for Civil Jury Trials, the Parties subsequently engaged in extensive and detailed meet-and-confer discussions related to the Court's required pretrial filings, including numerous calls and exchanges of drafts of the required pretrial documents.

107.    On March 29, 2023, Plaintiffs filed a motion to modify the class definition and dismiss without prejudice the internal do-not-call claim. ECF No. 323. Plaintiffs sought to exclude seven categories of calls from the Certified Classes, including calls with zero duration with the disposition "No Answer," "NO_ANSWER," or "NOANSWER"; calls with the disposition "NOT YET INTERESTED"; PhoneBurner calls where the "voicemail" and "connection" fields in the call logs indicated the caller did not leave a prerecorded message; calls made by agents whose names were identified as Coldwell Banker-affiliated by Soundex; calls where any field contained the word "Test"; calls where the prerecorded message identified the agent as affiliated with a brokerage other than Coldwell Banker; and calls where only one call was made to a number on the NDNCR in a 12-month period after the foregoing exclusions were made. *Id.* at 3-4. Realogy opposed the motion on April 12, 2023, and argued the Court should decertify the classes. ECF No. 329. Plaintiffs filed a reply on April 13, 2023. ECF No. 359.

108.    On March 31, 2023, Plaintiffs and Realogy stipulated to the dismissal of all of David Gritz's claims in the Action with prejudice. ECF No. 326. The Court so ordered the stipulation on April 3, 2023. ECF No. 327.

109.    Plaintiffs' counsel observed and participated in three focus groups comprised of mock jurors from the San Francisco area on March 29 and 30, 2023. The focus groups were conducted in San Francisco by James B. Lees of Hunt & Lees L.C. It was helpful, in preparation for trial, for Plaintiffs' counsel to see reactions of lay people with no knowledge of Plaintiffs' claims to Plaintiffs' case and supporting evidence.

110.    On April 13, 2023, the Parties made pretrial filings including the following:

- Joint proposed voir dire, ECF No. 331;
- Joint witness list, ECF No. 332;
- Trial briefs, ECF Nos. 333, 342;
- Joint proposed verdict forms, ECF No. 334;
- Three motions *in limine* by Plaintiffs and responses thereto by Realogy, ECF Nos. 335-37;
- Joint exhibit lists, ECF No. 341;
- Eight motions *in limine* by Realogy and responses thereto by Plaintiffs, ECF Nos. 343-50;
- Joint pretrial statement, ECF No. 353; and
- Joint proposed jury instructions, ECF No. 354.

111.    On April 24, 2023, the Court entered an Order vacating the pretrial conference and trial in light of the Court's trial schedule for cases with priority over this case. ECF No. 362. The Court directed the Parties to propose by May 22, 2023, a trial date in fall 2023. *Id.* On May 22, 2023, the Parties filed a joint notice stating that "[d]ue to scheduling conflicts, the parties' first mutually available date for the start of trial is December 18, 2023" and "[t]herefore, the parties jointly and respectfully request that this case be set for trial beginning December 18, 2023." ECF No. 363.

112.    On May 25, 2023, the Court entered an Order setting the pretrial conference for January 11, 2024, at 1:30 p.m. and trial for January 29, 2024, at 9:00 a.m. ECF No. 364.

113.    On September 22, 2023, Plaintiffs filed an administrative motion requesting a case management conference to seek guidance from the Court regarding two issues: (1) trial structure and format and (2) Plaintiffs' motion to modify the class definition and Realogy's opposition thereto. ECF No. 369. Plaintiffs stated that the Parties' positions on the structure and format of the trial were "widely divergent," as Plaintiffs proposed a single class action trial that would take approximately five days, while Realogy proposed a trial to resolve the individual Plaintiffs' claims in their entirety and the common elements of the class TCPA claims and Plaintiffs' veil-piercing claims, followed by separate trials on individual issues related to liability and vicarious liability on the class claims. *Id.* at 2. Plaintiffs stated that the Parties' positions on the motion to modify the class definition were also "plainly . . . incompatible." *Id.* at 3.

114.    On November 27, 2023, the Court entered an Order scheduling a hearing on the class definition issue for February 8, 2024, and vacating the pretrial conference and trial pending further order. ECF No. 370.

115.    On February 5, 2024, the Court entered an Order continuing the hearing on the class definition issue to February 15, 2024, at 10:00 a.m. ECF No. 371.

116.    On February 5, 2024, Plaintiffs filed a corrected motion to modify the class definition, correcting some numbers in the motion that had inadvertently been stated incorrectly. ECF No. 372. On March 27, 2024, Realogy refiled its opposition papers without redactions. ECF No. 376.

117.    On February 7, 2024, Realogy filed an unopposed motion to continue the hearing on the class definition issue because Realogy's lead trial counsel was to be in trial in another case on February 15, 2024. ECF No. 373.

118.    On February 8, 2024, the Court entered an Order continuing the hearing on the class definition issue to May 23, 2024, at 10:00 a.m. ECF No. 374.

119.    On May 7, 2024, the Court entered an Order continuing the hearing on the class definition issue to May 30, 2024, at 10:00 a.m. ECF No. 382.

120.    On May 14, 2024, Plaintiffs filed an unopposed motion to reschedule the hearing on the class definition issue because trial counsel for Plaintiffs would be in hearings for other cases on May 30, 2024. ECF No. 383.

121.    On May 14, 2024, the Court entered an Order continuing the hearing on the class definition issue to June 20, 2024, at 10:00 a.m. ECF No. 384.

122.    On June 20, 2024, the Court held a hearing on Plaintiffs' motion to narrow the classes and Realogy's request to decertify the classes. ECF No. 385. The Court directed Plaintiffs to file by July 5, 2024, "a declaration stating with specificity the methods used to determine the proposed exclusions from the certified classes." *Id.* Furthermore, the Court directed Plaintiffs that "[f]or each category of proposed exclusions, the declaration must state whether the method involved listening to a call recording, and if so, the extent to which the exclusion is based on a manual review of recordings," "in addition to a full description of the method that was used." *Id.*

123.    On July 5, 2024, Plaintiffs filed the Declaration of John W. Barrett in support of their motion to modify the class definition as ordered by the Court. ECF No. 389. The declaration explained each step leading to Plaintiffs' proposed modified class definition in detail with respect to all seven categories of proposed exclusions. *Id.* For each category, Plaintiffs stated whether the method involved

listening to a call recording, and if so, the extent to which the exclusion was based on manual review of the recordings. *Id.*

124.    On August 15, 2024, the Court entered an Order denying Plaintiffs' request to modify the class definition without prejudice. ECF No. 390. The Court stated:

> In effect, the request is an improper motion for reconsideration that does not satisfy any of the elements for that. See Civil L.R. 7-9. The request was filed approximately one year after the Court's class certification order, Dkt. No. 223, and just a few weeks before the original trial date. The Court declines to change the certification order at this late date, particularly in light of the prejudice to defendant, which has prepared experts, witness, and evidence for trial on the basis of that order. The parties will be free at trial to examine plaintiffs' experts with respect to the issues in the modification request. After a full record is developed at trial, plaintiffs may renew their request, and defendants may propose to decertify some or all of the classes, as the evidence warrants.

*Id.* On the same day, the Court entered an order lifting the stay and setting the pretrial conference for January 23, 2025, at 1:30 p.m. and trial for February 3, 2025. ECF No. 391.

**J.**    **Mediations and Settlement Conference**

125.    Plaintiffs and Realogy mediated with the Honorable Edward A. Infante (Ret.) of JAMS on January 4, 2022. The mediation terminated with the Parties at an impasse. ECF No. 196.

126.    Pursuant to an Order of the Court, Plaintiffs and Realogy took part in a settlement conference with the Honorable Magistrate Judge Thomas S. Hixson on June 27, 2022, via Zoom. *See* ECF Nos. 226, 246, 276. The settlement conference terminated with the Parties again at an impasse. ECF No. 276.

127.    Plaintiffs and Realogy mediated with Bruce A. Friedman, Esquire, of JAMS on August 25, 2022. The mediation terminated with the Parties again at an impasse, after less than half of a day.

**K.**    **Settlement**

128.    On October 10, 2024, counsel for Plaintiffs had a discussion with counsel for Realogy about the possibility of settlement and, generally speaking, the terms on which the Parties might be able to agree to a settlement. The discussions suggested the Parties were close enough together with respect to settlement relief that settlement might be possible.

129.    On or about October 31, 2024, Plaintiffs received a settlement offer from Realogy.

130.    On November 4, 2024, Plaintiffs provided a revised settlement demand to Realogy.

1    On November 5, 2024, Realogy asked Plaintiffs to provide definitions for Plaintiffs' proposed
2    settlement classes.

3        131.    On November 6, 2024, Plaintiffs sent Realogy a proposed narrowed definition for the
4    settlement NDNCR class which eliminated zero-duration calls with the dispositions "No Answer,"
5    "NO_ANSWER," and "NOANSWER." Plaintiffs also provided a revised settlement demand.

6        132.    On November 7, 2024, Realogy sent Plaintiffs a revised settlement offer. Plaintiffs
7    sent a revised demand on the same day, and on the same day Realogy responded with a revised offer.

8        133.    On November 9, 2024, Plaintiffs conveyed a revised demand to Realogy, and Realogy
9    responded with a revised offer.

10       134.    On November 14, 2024, the Parties reached a settlement in principle that included a
11   common settlement fund of $20 million, $1 million of which Realogy would fund shortly after
12   preliminary approval for notice and administration and the remainder of which Realogy would fund
13   upon final approval.

14       135.    Realogy began work on a draft of the settlement agreement, and the Parties drafted a
15   notice of settlement. The Parties also conducted legal research and had discussions related to
16   developing certain details of the settlement.

17       136.    The Parties filed the notice of settlement on December 13, 2024. The noticed included
18   a request that the Court set a deadline of January 31, 2025, for Plaintiffs to file a motion for preliminary
19   approval and for the Court to stay all pretrial deadlines to allow the Parties to focus on finalizing and
20   presenting the proposed settlement for review.

21       137.    On January 9, 2025, the Court denied the request to stay all pretrial deadlines. The
22   Court stated that a stay will not be considered until an application for preliminary approval of a
23   proposed classwide settlement is filed.

24       138.    The Parties then negotiated the precise terms of the Settlement Agreement. On
25   January 20, 2025, the Settlement Agreement was fully executed. A true and correct copy of the fully
26   executed Settlement Agreement is attached to this declaration as **Exhibit 1**, except that Exhibits A
27   through D to the Settlement Agreement have not been included. Exhibits A through D to the
28   Settlement Agreement are lists of telephone numbers within the Settlement Classes and a list of

1   telephone numbers that were in the Certified Classes that are no longer in the Settlement Classes;

2   Plaintiffs' Counsel decided not to file Exhibits A through D in the public record in an effort to reduce

3   the likelihood of fraudulent claims. If the Court wishes to review Exhibits A through D to the

4   Settlement Agreement, Plaintiffs will submit them.

5       139.    Other than the Settlement Agreement, there are no other agreements between

6   Plaintiffs and Realogy.

7   **II.     The Settlement Administrator**

8       140.    Before selecting a Settlement Administrator, Plaintiffs' Counsel considered bids from

9   six reputable administrators: Epiq; A.B. Data, Ltd.; Angeion Group; Brown Greer; Kroll; and Verita

10  (formerly known as KCC).

11      141.    Plaintiffs' Counsel selected, and Realogy agreed to, Epiq because of Epiq's expertise,

12  the competitiveness of its bid, and because Epiq already handled the litigation notice to the Certified

13  Classes and was familiar and experienced with the class data. To send notice to the Settlement Classes,

14  Epiq will rely on the contact information obtained during the original Class Notice.

15      142.    During the past two years, Tycko & Zavareei LLP, Kaufman P.A., and Bailey &

16  Glasser LLP have not engaged Epiq other than in this Action. During the past two years, Reese LLP

17  has engaged Epiq in this Action and in the following cases: *Rankins v. Old Lyme Gourmet Co.*, No. 1:20-

18  cv-01756-ENV-TAM (E.D.N.Y.); *Lipsett v. Popular Bank*, No. 1:22-cv-03901-MMG (S.D.N.Y.);

19  *McKinley v. Conopco Inc.*, Index No. 805260/2024E (N.Y. Supreme Ct., Bronx Cty.); *Gudgel v. Reynolds*

20  *Consumer Products, Inc.*, Case No. 23LA00000486 (19th Judicial Circuit, Lake County, Illinois); and *In re*

21  *Fairlife Milk Products Marketing and Sales Practices Litig.*, MDL No. 2909, Master Case No. 19-cv-3924

22  (N.D. Ill.). While Plaintiffs' Counsel have sufficient information to be confident in Epiq's

23  qualifications, there is no ongoing relationship between Epiq and Plaintiffs' Counsel, as Plaintiffs'

24  Counsel routinely solicit bids from multiple settlement administrators and often work with other

25  administrators (*e.g.*, KCC and Angeion) for each case where notice and/or claims administration is

26  required. Moreover, none of the Parties have a financial interest in Epiq or otherwise have a

27  relationship with Epiq that could create a conflict of interest.

28      143.    Epiq has provided Plaintiffs' Counsel with an estimate stating that Settlement

1    Administrative Expenses will be approximately $422,692, and Epiq has agreed that in no event will

2    Settlement Administrative Expenses exceed $475,000.

3        144.    Epiq has estimated a claim rate of around 15% for this settlement. This estimate is

4    reasonable and consistent with Plaintiffs' Counsel's experience.

5    **III.    Adequacy of Plaintiffs and Plaintiffs' Counsel**

6        145.    Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan assisted Plaintiffs'

7    Counsel in this case by reviewing the pleadings, responding to interrogatories, searching for and

8    producing documents, sitting for their depositions, being available during mediations and a settlement

9    conference, reviewing the Settlement Agreement, and preparing to testify at trial.

10       146.    Ms. Bumpus, Ms. Peker, and Ms. Rowan do not have any conflicts with other

11   Settlement Class Members. All have in fact provided substantial assistance in prosecuting this case on

12   behalf of absent class members.

13       147.    This Court previously appointed Tycko & Zavareei LLP, Reese LLP, and Kaufman

14   P.A. as counsel for the Certified Classes when it granted class certification. ECF No. 223 at 16.

15       148.    Since that appointment, counsel have poured time and expense into the case and have

16   secured what they believe is an outstanding settlement.

17       149.    Attached as **Exhibit 2** is the firm resume of Tycko & Zavareei LLP.

18       150.    Attached as **Exhibit 3** is the firm resume of Reese LLP.

19       151.    Attached as **Exhibit 4** is the firm resume of Kaufman P.A.

20       152.    In September 2022, after the case did not settle at the mediation with Bruce A.

21   Friedman on August 25, 2022, Brian Glasser and John W. Barrett of Bailey & Glasser LLP were

22   retained to assist with settlement negotiations and any potential trial in this case. Mr. Glasser and Mr.

23   Barret were trial counsel for the class of plaintiffs in *Krakauer v. Dish Network, LLC*, Case No. 1:14-

24   CV-333 (M.D.N.C.), and secured a jury verdict of over $61 million for violations of the TCPA's do-

25   not-call provisions and successfully defended that verdict on appeal. They have brought their

26   experience to bear on this case, zealously representing the interests of the Settlement Classes, and

27   substantially contributed to the ultimate resolution of this matter. The Declaration of John W. Barrett

28   in Support of Appointment as Class Co-Counsel, filed concurrently herewith, details Bailey & Glasser

1  LLP's experience.

2  153.    As Plaintiffs' Counsel's firm resumes and the Declaration of John W. Barrett show,

3  Plaintiffs' Counsel have significant experience in litigation, certification, and settlement of class action

4  lawsuits, including those involving the TCPA. This experience, along with Plaintiffs' Counsel's

5  extensive history of litigating the instant case, provides Plaintiffs' Counsel with a nuanced

6  understanding of the legal and factual issues involved and informs our conclusion that this settlement

7  is an excellent recovery for the Settlement Classes.

8  **IV.    Fairness, Reasonableness, and Adequacy of the Proposed Settlement**

9  154.    Plaintiffs' Counsel believe the Settlement is an outstanding recovery for the Settlement

10  Classes, particularly in light of per claimant recoveries in settlements in substantively similar TCPA

11  vicarious liability cases against national realty brokerages, and fully endorse it as fair, reasonable, and

12  adequate.

13  155.    As discussed above, the Parties completed extensive factual and expert discovery, and

14  the settlement was reached on the eve of trial. Thus, Plaintiffs and Plaintiffs' Counsel were well

15  apprised of the salient legal and factual issues before reaching the decision to settle the Action.

16  156.    The Settlement is fair, reasonable, and adequate in light of the strengths and risks of

17  Plaintiffs' case. While Plaintiffs' Counsel are confident in the strength of Plaintiffs' claims, there is risk

18  inherent in litigation of this magnitude. Should the case proceed in litigation, Plaintiffs could see their

19  claims dismissed or narrowed by motions *in limine*, at trial, or on a subsequent appeal. The Court could

20  grant Realogy's motion *in limine* to exclude the PhoneBurner and WAVV call logs, and it could decline

21  to admit the Mojo call logs, which at minimum would greatly increase the complexity and difficulty of

22  prevailing on a classwide basis at trial. The jury could also decline to credit Plaintiffs' evidence. For

23  example, if the jury does not credit Sarah Bumpus's testimony that she told Coldwell Banker agents

24  not to call her back before she received the calls at issue, then Ms. Bumpus would not be able to

25  prevail on the NDNC Class's claims because she would have an established business relationship with

26  Coldwell Banker. The jury could also find for the NDNC Class but award them only a de minimis

27  amount in damages on a per violation basis, *see* 47 U.S.C. § 227(c)(5) (providing for "up to $500" per

28  call). Plaintiffs would also likely face a post-verdict motion to reduce the judgment amount for both

1   the NDNC Class and Prerecorded Message Class based on the Ninth Circuit's direction in *Wakefield*

2   *v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) (citing *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir.

3   2019) (affirming district court's reduction of statutory damages by 98%, from $500 to $10 per violation

4   for TCPA violative prerecorded calls)). Realogy has also repeatedly requested to decertify the classes,

5   and the Court has held open the possibility that decertification could occur at or after trial. ECF No.

6   390.

7        157.    The risks, expense, complexity, and likely duration of further litigation also support

8   preliminary approval of the Settlement. If the Court does not approve the Settlement, the Parties

9   would incur the expense and burden of continuing to prepare for trial, finalizing all pretrial filings, and

10  conducting the trial. Even if Plaintiffs were to succeed on the merits at trial, any recovery would likely

11  be delayed by challenges to the judgment and appeals that could take years to resolve. Absent

12  settlement, there is no guarantee that any of this would lead to greater benefits for the Settlement

13  Class Members.

14       158.    Below is a chart summarizing information about three comparable class action

15  settlements, in accordance with paragraph 11 of the Northern District of California's Procedural

16  Guidance for Class Action Settlements:

| Case | *Bulette v. Western Dental Services Inc.*, No. 3:19-cv-00612-MMC (N.D. Cal. 2020) | *DeShay v. Keller Williams Realty, Inc.*, No. 2022CA000457 (Fla. Cir. Ct. 19th Jud. Cir. Indian-River Cty. 2023) | *Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EK (M.D. Fla. 2022) |
|---|---|---|---|
| Description | A nationwide TCPA class action arising from calls to Do Not Call Registry registered and internal do not call list numbers settled in this District with a substantively similar notice plan involving both mail and email direct notice | A nationwide TCPA class action arising from calls to National Do Not Call Registry registered numbers by real estate agents affiliated with a national real estate brokerage | A nationwide TCPA class action arising from prerecorded calls by real estate agents affiliated with a national real estate brokerage that was adversarially certified and trial ready prior to settlement |
| Claims released | TCPA and TCPA-like claims | TCPA and TCPA-like claims | TCPA and TCPA-like claims |

| | | | |
|---|---|---|---|
| **Total settlement fund** | $9,700,000 | $40,000,000 | $26,910,000 |
| **Total number of class members** | 284,264 | 2,000,000 | 299,000 |
| **Total number of class members to whom notice was sent** | 261,261 | 1,890,050 | 269,100 |
| **Method(s) of notice** | Direct mail, direct email, and publication | Direct mail and publication | Direct mail, direct email, text message, telephone call, and publication |
| **Number and percentage of claim forms submitted** | 27,128 claims submitted, 9.54% | 605,687 claims submitted, approximately 30% | 9,851 claims submitted, approximately 3.3% |
| **Average recovery per class member or claimant** | $251.66 | Approximately $14 | Approximately $59 |
| **Amount distributed to cy pres** | No cy pres. All unclaimed funds were escheated. | No cy pres distribution. All unclaimed funds reverted to the defendant. | No cy pres distribution. All unclaimed funds reverted to the defendant. |
| **Administrative costs** | $430,000 | Exceeded $1,000,000 | $274,369, not including the costs of the text message, phone call, or publication notice, which were not paid from the settlement fund |
| **Attorneys' fees and costs** | $2,437,919.49 | $10,000,000 | $9,076,262 |
| **Total exposure if plaintiffs had prevailed on every claim** | Exceeded $284,264,000 if plaintiffs had prevailed on every claim and had been awarded $500 per call for calls to NDNCR registered and internal do not call list numbers | Exceeded $2,000,000,000 if plaintiffs had prevailed on every claim and had been awarded $500 per call for calls to NDNCR registered numbers | $149,500,000 |
| **Were class members provided discount coupons, debit cards, or similar instruments?** | No | No | No |

| **Injunctive and other non-monetary relief** | Cessation of text messages to class members that had opted out of text messaging | The realty brokerage established a TCPA task force and made available TCPA compliance materials to agents to enhance TCPA compliance | The realty brokerage established a TCPA task force and removed telemarketing materials from its cloud-based platform and replaced them with TCPA compliance materials to agents to enhance TCPA compliance |

## V.     Narrowing of the NDNC Class

159.     During the course of settlement negotiations, the Parties agreed to narrow the scope of the certified NDNC Class to define the Settlement NDNC Class. Specifically, to determine membership in the Settlement NDNC Class, the Parties started with the certified NDNC Class and then made the following exclusions in the following order:

- zero-duration calls with the dispositions "No Answer," "NO_ANSWER," and "NOANSWER" were excluded, and then

- calls that were not made within a 12-month period of another call to the same number on the NDNCR were excluded.

The Settlement Prerecorded Message Class is unchanged from the certified Prerecorded Message Class.

160.     Plaintiffs' expert Anya Verkhovskaya created an Excel sheet containing a list of all telephone numbers remaining in the Settlement NDNC Class after performing the exclusions set forth in the preceding paragraph, as well as the number of telephone calls to each number. The Excel sheet is Exhibit A to the Settlement Agreement. On January 18, 2025, I made a copy of the Excel sheet (to preserve the original). The number of calls received by each telephone number in the Settlement NDNC Class is listed in a single column of the Excel sheet. I highlighted all of the numbers of calls in this column for all telephone numbers in the entire sheet. I then used Excel's "AutoSum" function to have Excel determine the sum of all of the numbers of calls in the column. This revealed that the Settlement NDNC Class received a total of 438,921 calls.

161.     The Settlement Agreement and the Notice Plan include a plan for providing Non-Settlement Class Notice to those individuals who were members of the Certified Classes who

1   are not members of the Settlement Classes, informing them, among other things, that they are not

2   members of the Settlement Classes. A copy of the Non-Settlement Class Notice is attached as

3   Exhibit I to the Settlement Agreement.

4   **VI.**   **Attorneys' Fees and Costs**

5       162.   Each firm working on this case provided information regarding the firm's hours and

6   rates, excluding hours from timekeepers who worked less than 50 hours on the case. Each firm also

7   provided cost information, with the following reductions: (a) hotel costs were capped at $350 per

8   night; (b) meals were capped at $40 for dinner, and $20 for all other meals; (c) copy charges were

9   eliminated; (d) flight costs were capped at $700. This information is summarized below:

| Firm | Hours | Lodestar | Costs |
|---|---|---|---|
| Bailey & Glasser, LLP | 999 | $654,035 | $19,991 |
| Law Offices of Stefan Coleman | 454 | $331,420 | $63,927 |
| Kaufman P.A. | 1,267 | $975,030 | $61,079 |
| Reese LLP | 2,388 | $3,303,450 | $155,972 |
| Tycko & Zavareei LLP | 5,348 | $4,862,616 | $226,014 |
| **TOTAL** *(excluding Settlement Administrative Expenses – see ¶ 164)* | **10,456** | **$10,126,551** | **$526,983** |

17   The above time *includes* a limited number of hours spent on the first lawsuit relating to the Realogy

18   calls at issue here, *Chinitz v. NRT West, Inc.*, recounted more fully above. That litigation provided critical

19   information that led to this proposed settlement.

20       163.   The following are *included* in the costs listed in paragraph 162:

21   - $266,128 to Class Experts Group for Anya Verkhovskaya's work;
     - $6,600 to expert Randy Snyder and his company Wireless Research Services, LLC;
22   - $4,000 to Realogy's expert witness Jan Kostyun for his deposition time;
     - $5,400 to Realogy's expert witness Margaret Daley for her deposition time; and
23   - $6,687 paid to a consulting expert to assist in managing and analyzing the large volume of class data and call records.

24   The total paid to expert witnesses amounts to $288,815. Some of these costs were incurred in *Chinitz*

25   *v. NRT West, Inc.* Plaintiffs will provide a full justification and explanation for these requests in their

26   motion for fees and costs, which will be filed after class notice.

27       164.   The following costs were or will be incurred in the case but are *not included* in the chart

above:

- The cost of the initial notice to class members was $365,390. The appointed notice administrator who sent that notice, Epiq, has deferred payment of that invoice.
- Epiq estimates that Settlement Administrative Expenses will be $422,692. Epiq has agreed to cap Settlement Administrative Expenses at $475,000.

165.    As shown above, the total costs incurred, excluding Settlement Administrative Expenses, are $892,373 ($526,983 plus $365,390). Including Settlement Administrative Expenses of $475,000 increases this total to $1,367,373. Should this amount or any of its components change, Plaintiffs will promptly notify the Court in an appropriate filing.

166.    Plaintiffs' Counsel will be seeking attorneys' fees of $6,000,000, which is 30% of the Total Settlement Amount. As shown above, to date, and not counting future time and effort on settlement administration and approval, counsel's total current lodestar is $10,126,551 based on 10,456 total hours expended to date at each firm's customary hourly rates. The $6,000,000 in attorneys' fees that Plaintiffs' Counsel intend to seek thus reflects a negative multiplier of approximately 0.59 on their current lodestar. Plaintiffs' Counsel will also seek Service Awards of $5,000 for each of the three class representatives.

## VII.    Proposed Case Schedule

167.    The Settlement Agreement contemplates that the Court will adopt the following case schedule, subject to any modifications by the Court. All section (§) references below are to sections of the Settlement Agreement.

| Event | Deadline |
|---|---|
| Deadline for CAFA Notice to be served | 10 days after filing of Settlement Agreement and motion for preliminary approval, § E.36 |
| Notice Date | 30 days after the Court enters the Preliminary Approval Order, § E.38.b |
| Deadline for Plaintiffs' Counsel's application for a Fee Award and Service Awards | 60 days before the Opt-Out Deadline, § G.58 |
| Opt-Out Deadline | 90 days after the Notice Date, § A.16 |
| Deadline for objections | Same as Opt-Out Deadline, § E.41 |
| Claim Deadline | 90 days after the Notice Date, § A.5 |
| Time to file final approval motion | In a timely manner after notice is disseminated to the Settlement Classes, § E.40 |

| Event | Deadline |
|-------|----------|
| Deadline for Settling Parties to respond to any objection | 7 days prior to the Final Approval Hearing, § 45 |
| Final Approval Hearing | To be determined by the Court |
| Deadline for Anywhere to deposit $1,000,000 into the Escrow Account | 14 business days after the Escrow Account has been opened and preliminary approval is granted, § F.49 |
| Deadline for Anywhere to deposit the remaining $19,000,000 into the Settlement Fund | 21 business days after the Effective Date, § F.49 |
| Deadline for the Settlement Administrator to pay all Approved Claims from the Settlement Fund | 60 days after the Effective Date, § I.67 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 20, 2025, at Santa Monica, California.

By: */s/ George V. Granade*
George V. Granade