**FAEGRE DRINKER BIDDLE & REATH LLP**
David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
4800 North Scottsdale Road, Suite 2200
Scottsdale, AZ 85251
Telephone: (480) 643-1850

Aaron D. Van Oort (*pro hac vice*)
*aaron.vanoort@faegredrinker.com*
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000

*Counsel for Defendants Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy Services Group LLC, Realogy Group LLC, and Realogy Brokerage Group LLC (f/k/a NRT LLC)*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH BUMPUS, MICHELINE PEKER, *and* CHERYL ROWAN, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br>v.<br><br>REALOGY HOLDINGS CORP.; REALOGY INTERMEDIATE HOLDINGS LLC; REALOGY GROUP LLC; REALOGY SERVICES GROUP LLC; *and* REALOGY BROKERAGE GROUP LLC (f/k/a NRT LLC),<br>Defendants. | Case No. 3:19-cv-03309-JD<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF PRELIMINARY SETTLEMENT APPROVAL**<br><br>Date: February 27, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

   A. The Certified Litigation Classes ......................................................................................2

   B. The Major Errors Revealed Within The Litigation Classes.............................................3

   C. The Settlement Agreement ...............................................................................................4

III. ARGUMENT .........................................................................................................................5

   A. Legal Standard .................................................................................................................5

   B. The Settlement Pays More Than The Claims Are Worth, Given The Imminent Risk of Class Decertification or a Total Class Loss at Trial..........................................5

      1. The litigation classes contained massive numbers of people with no claims and hence at trial would either be decertified or lose for failure to prove classwide liability..........................................................................................................6

      2. The litigation classes would also lose on a common basis for several reasons.................................................................................................................10

IV. CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                   **Page(s)**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333, 350 (2011) ..................................................................................................... 1

*Brown v. Hain Celestial Grp., Inc.*,
   No. 3:11-CV-03082-LB, 2015 WL 12915098 (N.D. Cal. Oct. 8, 2015) .................................. 7

*Chennette v. Porch.com, Inc.*,
   50 F.4th 1217 (9th Cir. 2022) ............................................................................................. 8, 9

*Chinitz v. Intero Real Est. Servs.*,
   No. 18-CV-05623-BLF, 2022 WL 16528137 (N.D. Cal. Oct. 28, 2022) ................................ 7

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................................. 5

*Dorfman v. Albertsons, LLC*,
   No. 1:18-CV-00094-EJL, 2019 WL 5873448 (D. Idaho Feb. 12, 2019) ................................. 3

*Fitzhenry v. ADT Corp.*,
   No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) .................................................. 3

*Koeppen v. Carvana, LLC*,
   No. 21-CV-01951-TSH, 2024 WL 1974545 (N.D. Cal. May 3, 2024) .................................. 5

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................ 5

*Pacheco v. JPMorgan Chase Bank, N.A.*,
   No. 3:15-CV-05689-JD, 2017 WL 3335844 (N.D. Cal. Aug. 4, 2017) ................................... 5

*Reyes v. Educ. Credit Mgmt. Corp.*,
   773. F. App'x 989 (9th Cir. 2019) ......................................................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................................... 5

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
   2022 WL 2713278 (N.D. Iowa June 9, 2022) ......................................................................... 9

*Sandoe v. Bos. Sci. Corp.*,
   333 F.R.D. 4 (D. Mass. 2019) ........................................................................................... 7, 10

*Sapan v. Yelp, Inc.*,
   No. 3:17-CV-03240-JD, 2021 WL 5302908 (N.D. Cal. Nov. 15, 2021) ....................... 1, 9, 11

*Shuckett v. DialAmerica Mktg., Inc.*,
　No. 17CV2073-LAB (KSC), 2019 WL 3429184 (S.D. Cal. July 30, 2019) .............................6

*In re Tableware Antitrust Litig.*,
　484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................5

*True Health Chiropractic Inc. v. McKesson Corp.*,
　2021 WL 4818945 (N.D. Cal. Oct. 15, 2021) .....................................................................10

*Wilson v. Badcock Home Furniture*,
　329 F.R.D. 454 (M.D. Fla. 2018) .........................................................................................7

**Statutes, Rules & Regulations**

47 C.F.R. § 64.1200(a)(3) ...........................................................................................................8

47 C.F.R. § 64.1200(c)(2) .......................................................................................................8, 9

47 C.F.R. § 64.1200(f)(15) ........................................................................................................11

47 U.S.C. § 227(a)(4) ................................................................................................................11

47 U.S.C. § 227(b)(1)(B) ............................................................................................................8

47 U.S.C. § 227(c) ......................................................................................................................8

47 U.S.C. § 227(c)(5) .................................................................................................................6

Fed. R. Civ. P. 23(e) ...................................................................................................................5

Fed. R. Civ. P. 23(e)(2) ..............................................................................................................5

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................................5, 12

DEFENDANTS' BRIEF IN SUPPORT OF PRELIMINARY SETTLEMENT APPROVAL
*Bumpus v. Realogy Holdings Corp*, No. 3:19-cv-03309-JD
iii

## I. INTRODUCTION

The Realogy Defendants join Plaintiffs in respectfully requesting the Court to preliminarily approve the Settlement because the record shows it to be fair, reasonable, and adequate to class members. Indeed, the Settlement is more than fair, reasonable, and adequate because if this case proceeded to trial, Plaintiffs would certainly lose. The litigation classes Plaintiffs' expert Anya Verkhovskaya proposed and led this Court to certify contain literally hundreds of thousands of people who have no possible claim against Realogy under the Telephone Consumer Protection Act ("TCPA"). Verkhovskaya included people called by Realogy's competitors, people who had established business relationships with the brokerages who called them, people who never registered their numbers on the national Do Not Call list, people who never received a call, people called on business numbers, and on and on. At trial, Verkhovskaya's methodology would have been revealed to be of "questionable reliability and validity," just as this Court found in another TCPA case where Verkhovskaya was the expert and the Court denied class certification. *Sapan v. Yelp, Inc.,* No. 3:17-CV-03240-JD, 2021 WL 5302908, at *3 (N.D. Cal. Nov. 15, 2021). Her testimony would be excluded and the classes decertified. Moreover, the classes would be decertified regardless of whether Verkhovskaya's testimony was excluded because liability turns on repeated individual questions, including whether the person who made a call was a Coldwell Banker realtor, whether a call was received or instead dropped, blocked, or made to disconnected numbers, whether the called number was residential or business, and whether the called person invoked do-not-call protection by registering the number or instead whether the number was reassigned after someone else registered it. And if the classes were not decertified, they would lose on the merits.

Realogy reached a settlement in this case not because Plaintiffs have valid claims but because it would be imprudent to take any risk of an annihilating statutory-damages judgment, given that the real estate brokerage industry is in the third year of the worst real estate market in half a century. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) ("[W]hen damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable. Faced with even a small chance of a

devastating loss, defendants will be pressured into settling questionable claims."). The $20 million fixed-fund Settlement mitigates that risk and pays class members more than their unfounded claims are worth. Realogy therefore joins in asking the Court to preliminarily approve the Settlement and authorize notice to be sent.

## II.     BACKGROUND

### A.     The Certified Litigation Classes

On March 23, 2022 this Court certified two litigation classes for trial, a National Do Not Call Class ("NDNC class"), defined as:

> All persons in the U.S. who received two or more calls made by a Coldwell Banker-affiliated Agent using a Mojo, PhoneBurner, and/or Storm dialer in any 12 month period on a residential landline or cell phone number that appeared on the National Do Not Call Registry for at least 31 days for the time period beginning June 11, 2015, to present

And a Prerecorded Message Class, defined as:

> All persons in the United States who received a call on their residential telephone line or cell phone number with an artificial or prerecorded message, as indicated by the following call disposition codes: (i) "Drop Message" (if using the Mojo dialer), (ii) "ATTENDED_TRANSFER" (if using the Storm dialer), and (iii) "VOICEMAIL" (if using a PhoneBurner dialer) in the call records listed in Appendix A and made by a Coldwell Banker-affiliated Agent for the time period beginning June 11, 2015, to present.

(Dkt. 223.)

These class definitions were based entirely on the analysis and opinions of Plaintiffs' expert, Anya Verkhovskaya. According to Verkhovskaya, she could deduce from dialing records produced by third parties Mojo, PhoneBurner, and Storm that there were 245,302 telephone numbers in the NDNC Class and 201,001 telephone numbers in the Prerecorded Message Class. (Dkt. 206-1, Ex. 1, Verkhovskaya Report ¶¶ 125, 128.) Based on the explanation of Verkhovskaya's methodology Plaintiffs provided to the Court during class certification, the Court understood Verkhovskaya to have "identified calls that were **completed *and* had non-zero durations**, *and* **were made on behalf of Realogy** based on a list of names of Realogy agents." (Dkt. 223 at 5:10-12 (emphasis added).) In fact, none of this was true. Verkhovskaya had not limited her classes to calls "made on behalf of Realogy," she had not limited them to

calls that were "completed," and she had affirmatively included hundreds of thousands of calls with zero duration. Realogy laid bare these fundamental defects in its pretrial exchanges, and Plaintiffs saw them.

### B. The Major Errors Revealed Within The Litigation Classes

Seeing that Verkhovskaya's methodological failures would be revealed in stark detail at trial, Plaintiffs filed a motion seeking major modifications to the certified classes. Among other things, Plaintiffs proposed to remove all calls associated with recordings that did not identify Coldwell Banker, and they further proposed to remove all zero-second "No Answer" disposition calls from the NDNC class. (Dkts. 329 (original motion), 372 (corrected motion) at 3-4.)

In response, Realogy requested decertification of both classes because Plaintiffs' own motion had revealed the gross errors in Verkhovskaya's analyses and shown that Plaintiffs' claims could not be tried with common evidence. (Dkt. 329.) For example, Plaintiffs' motion showed that they could not even accurately identify calls made by Coldwell Banker real estate agents without relying on individual evidence. Whereas they had previously told the Court that Verkhovskaya's Soundex name-matching methodology was "tried-and-true," they "refused to disclose Verkhovskaya's list of alleged matches to prevent it from being checked" (*id.* at 14), and now "their new, manual name-matching methodology excludes 37,840 calls from the Do Not Call class and 34,259 calls from the Prerecorded Message class that Verkhovskaya opined were made by Coldwell Banker independent realtors" (*id.* at 6). Even then, the identification remained flawed. Based on listening to individual call recordings, Plaintiff excluded another "98,335 calls in the Do Not Call class and 64,812 calls in the Prerecorded Message class that Verkhovskaya had wrongly included." (*Id.*) Needing to individually listen to recorded messages would preclude class certification. *See, e.g., Dorfman v. Albertsons, LLC*, No. 1:18-CV-00094-EJL, 2019 WL 5873448, at *4 (D. Idaho Feb. 12, 2019) ("Because the Court would also need to make individualized inquiries into the circumstances and content of the calls other class members received, the Court agrees with Defendant that no common question predominates …."); *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *7 (S.D. Fla. Nov. 3, 2014)

("[L]istening to 36,748 phone calls … demonstrates that Plaintiff has not met his burden of showing that common questions predominate over individual issues.").

Plaintiffs' motion also showed that, contrary to the Court's understanding, Verkhovskaya had included literally hundreds of thousands of zero-second calls in her NDNC class. (Dkt. 329 at 17.). The exact number of zero-second calls could not be verified by either Realogy or the Court because Verkhovskaya did not "disclose which calls in her classes lasted zero seconds and which ones lasted longer." (*Id.*) In addition, removing the zero-second calls would not cure the individual-evidence problems because "evidence shows that prerecorded messages sometimes are not delivered even when the dialer records indicate they might have been." (*Id.*)

At the hearing on June 20, 2024, the Court described in compelling language the risk of class decertification that Plaintiffs would face in proceeding to trial: "I am persuaded, now, that your punitive [sic] expert does not have a sound, reasonable, and valid method for satisfying the 23(a) and 23(b)(3) inquiries on commonality and predominance. It just doesn't. This is -- you know -- you took -- you took a cake, and you cut out cookie-cutter holes all over it. It's the opposite of commonality and predominance. And there just isn't a method here that works." (Dkt. 388 at 5:5-12.)  The Court further stated: "I don't see any option here but to decertify this class. I mean, you have now persuaded me that there's just no commonality of proof. There's no predominance." (Dkt. 388 at 2:24-3:1.) Ultimately, the Court denied Plaintiffs' motion to modify the classes and deferred a final ruling on class decertification until trial, stating: "The parties will be free at trial to examine plaintiffs' experts with respect to the issues in the modification request. After a full record is developed at trial, plaintiffs may renew their request, and defendants may propose to decertify some or all of the classes, as the evidence warrants." (Dkt. 390.)

C.  **The Settlement Agreement**

After the June 20, 2024 hearing, the parties revisited their prior settlement negotiations in light of the Court's comments. They ultimately agreed on a $20 million settlement. The Settlement Class includes the entire Prerecorded Message class as originally certified by this Court. The NDNC portion of the Settlement Class excludes all phone numbers that received only

zero-second calls with "No Answer" dispositions, consistent with the Court's understanding of what it originally thought was certified.

## III.   ARGUMENT

### A.   Legal Standard

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Class action settlements are to be approved when they are "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2) (listing factors). "[T]here is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Pacheco v. JPMorgan Chase Bank, N.A.*, No. 3:15-CV-05689-JD, 2017 WL 3335844, at *2 (N.D. Cal. Aug. 4, 2017) (Donato, J.) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

"Preliminary approval is appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Koeppen v. Carvana, LLC*, No. 21-CV-01951-TSH, 2024 WL 1974545, at *4 (N.D. Cal. May 3, 2024) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### B.   The Settlement Pays More Than The Claims Are Worth, Given The Imminent Risk of Class Decertification or a Total Class Loss at Trial.

In assessing whether a class settlement is fair, reasonable, and adequate, the lead consideration is whether "the relief provided for the class is adequate, taking into account," among other things, "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Among the risks courts consider are the risks of decertification and of a loss on the merits. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (holding

that risk of decertification of the nationwide class weighed in favor of settlement). Here, if Plaintiffs took this case to trial, they were certain to face either decertification or a classwide loss given the stark errors in Verkhovskaya's methodology, which resulted in including literally hundreds of thousands of people with no TCPA claim in her classes. Beyond that, Plaintiffs would also lose on the merits for several common reasons.

> **1. The litigation classes contained massive numbers of people with no claims and hence at trial would either be decertified or lose for failure to prove classwide liability.**

First, the evidence at trial will show beyond dispute that many people within the certified litigation classes do not have TCPA claims, requiring either decertification or a complete defense verdict. Realogy summarizes in this brief what it covered at greater detail in the joint pretrial statement (Dkt. 353) and its opposition to Plaintiffs' motion to modify the classes (Dkt. 329).

**"No Answer" Zero-Duration Calls**

Verkhovskaya's NDNC class includes hundreds of thousands of calls to nearly 78,000 telephone numbers that had zero-second duration and a software-recorded disposition of "No Answer."[1] Consistent with the zero-second duration, dialer documentation indicates that the "No Answer" disposition means "the call was never connected." (Dkt. 329-1, Ex. G at 496.) Only connected calls can be an NDNC violation. *Shuckett v. DialAmerica Mktg., Inc.*, No. 17CV2073-LAB (KSC), 2019 WL 3429184, at *3 (S.D. Cal. July 30, 2019) (finding that call must have "manifested itself in some way on [the] phone" for plaintiff to have "'received' a call"). These unconnected calls should never have been included in the class.

Based on the explanation of Verkhovskaya's methodology that Plaintiffs provided to the Court during class certification, the Court understood Verkhovskaya to have "identified calls that were **completed and had non-zero durations**." (Dkt. 223 at 5:10-11 (emphasis added).) That

---

[1] In Plaintiffs' motion to modify the classes (Dkt. 372), they argued for excluding 720,289 calls and 77,961 phone numbers from the do not call class as calls with a no answer disposition and zero second duration. (Dkt. 372 at 3.) In addition, Plaintiffs attempted to remove an additional 51,384 phone numbers from the class because after the removal of the zero duration calls and phone numbers, along with other changes, there was only one call remaining in a 12-month period, rather than the two calls required under 47 U.S.C. § 227(c)(5). (Dkt. 372 at 4.) Realogy has no way of verifying the accuracy of these numbers because Verkhovskaya has never disclosed which calls in her class are zero-second calls.

was not correct. Plaintiffs in fact included hundreds of thousands of "No Answer" zero-duration calls in their NDNC class. In their motion to modify the classes, Plaintiffs acknowledged that zero-duration calls were included and attempted to remove all zero-duration calls with a "No Answer" disposition, for a total change of 720,289 fewer calls, and 77,961 fewer telephone numbers. (Dkt. 372 at 4.) As the Court commented at the hearing: "Calls of zero duration with disposition - - no answer, - - and all of a sudden, now, what I was told by your expert, last time, when I certified the class, that she had cleaned all those up. Now you want to exclude 720,000 calls. That's a lot." (Dkt. 388 at 9:1-5.)

Accordingly, the settlement class definition excludes telephone numbers that only received zero-duration "No Answer" calls. Excluding those calls comports with the requirements of a settlement to be fair, reasonable, and adequate. *See e.g.*, *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2022 WL 16528137, at *4 (N.D. Cal. Oct. 28, 2022) (narrowing definition of previously-certified class at settlement to, among other things, exclude zero-duration calls); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2015 WL 12915098, at *3 (N.D. Cal. Oct. 8, 2015) (approving settlement class narrower in scope than previously-certified classes).

**Soundex Name-Matching**

Plaintiffs' theory of liability is that Realogy Brokerage Group can be held liable for calls made by independent-contractor local realtors who worked under the Coldwell Banker brand and associated with brokerages owned by Realogy Brokerage Group. This theory's necessary first step is to identify calls made by Coldwell Banker independent realtors—because Realogy Brokerage Group is not even arguably responsible for calls made by other people. Verkhovskaya proposed to do this by using a software program, Soundex, that analyzes whether a particular name "sounds similar" to the names of Coldwell Banker agents. But this methodology is grossly flawed. Multiple courts have criticized Verkhovskaya's name-matching methodology for failing to identify the named plaintiff as part of the class and requiring individualized additional evidence to add them to the class. *See e.g.*, *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 8 (D. Mass. 2019); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 457 (M.D. Fla. 2018).

Here, neither Realogy nor the Court can tell exactly how flawed Verkhovskaya's name-matching is because she refused to disclose the list of alleged matches to prevent it from being checked. (Dkt. 206-1, Ex. 7 ¶ 84.) But Plaintiffs' motion to modify the class reveals that the flaws are massive. Plaintiffs proposed excluding 10,058 phone numbers from the NDNC class and 24,113 phone numbers from the Prerecorded Messages class in their motion to modify the classes, because they were "inexact match[es]." (Dkt. 372 at 3.) Specifically, recorded messages produced by the third-party dialing services included numerous calls where a competing brokerage was identified, as well as calls made for non-real estate purposes, and calls that never mentioned Coldwell Banker. (Dkt. 372 at 3-4.) At trial, this evidence would be devastating to Plaintiffs' claims. One recording, for example, states: "Hey, this is Billy McElroy with Keller Williams Realty. I was actually calling about your house for sale. …" Van Oort Decl. Ex D (MOJO-Chinitz-0012081). Even worse for Plaintiffs, in an extraordinary footnote in their motion to modify, they revealed that class representative Sarah Bumpus's own claim cannot be included in their revised class without individual evidence. Apparently, the new matching methodology Plaintiffs proposed *did not identify Chris Mitchell*, the person who called Bumpus. (*See* Dkt. 372 at 3 n.3; Dkt. 118 ¶¶ 157-64.)

Plaintiffs' inability to connect Coldwell Banker to calls without considering individual evidence means there can be no class. For this reason alone, at trial both classes would either be decertified or lose on the merits for failure to prove classwide liability.

**Business Phone Numbers**

Another problem Plaintiffs would face at trial is that Verkhovskaya failed to effectively screen the classes to eliminate phone numbers used primarily for business purposes, and that screening cannot occur without considering individual evidence. Only residential numbers can support an NDNC claim, 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)(2), and all business landlines are required to be excluded from a prerecorded message claim, 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3). Whether a called number was a "residential" or "business" phone number is an individual liability issue that turns on individual evidence about how the number was used and held out. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th

Cir. 2022). At trial, the jury would learn that both the NDNC class and the Prerecorded Messages class include numerous phone numbers that were obvious business lines, such as Anthony's Trattoria & Pizzeria, Collier County Florida Water Sewer District, L.A. Insurance, Palo Alto Health Care System, Lighthouse Appraisals, and Pisces Restaurant. (Dkt. 206-1, Ex. 7 at ¶ 62.) This proof would require either decertification or a complete defense verdict.

**Established Business Relationship**

Another problem Plaintiffs would face at trial is that individual evidence would show that many class members may have had an "established business relationship" with the person or entity who called them. *See Sapan*, 2021 WL 5302908 (Donato, J.) (denying class certification because of individual issues raised by "established business relationship" rule). For example, the named plaintiff, Sarah Bumpus, was selling her house with a Coldwell Banker-affiliated realtor at the time she claims that she was called in violation of the TCPA. Her phone records show that she was affirmatively contacting Coldwell Banker-affiliated realtors to communicate about selling her home. (Dkt. 205-1, Ex. 7 at 51:1-19, 59:13-60:23, 63:10-18, 67:15-68:4.) At summary judgment, the Court held that "the record demonstrates a genuine dispute of material fact about the calls made to Bumpus, and whether Bumpus had an established business relationship." (Dkt. 269 at 2.) That the named plaintiff consented to be called is a serious factual flaw in Plaintiffs' case. Further, Verkhovskaya did no screening of the NDNC class to remove phone numbers with established business relationships. As a result, there are numerous examples of established business relationships in evidence, such as calls thanking the recipient for attending an open house. (*See e.g.*, Dkt. 376 at 21.)

**Evidence of Registration on Do Not Call List**

Another problem with Plaintiffs' class claims is that do-not-call protection applies only to a person who "has registered his or her telephone number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2), and proving registration requires individual evidence. If a number is placed on the do-not-call registry by one person, then is disconnected and assigned to someone else, that new person has no legal basis for a do-not-call claim. *See Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, at *2–3 (N.D. Iowa June 9, 2022) (dismissing DNC

claim because plaintiff did "not allege that she registered her telephone number on the do-not-call registry," even though her number was on the registry); *Sandoe*, 333 F.R.D. at 10 (holding that the plaintiff "failed to demonstrate that common proof can be used to establish…whether the individual who received the call was the individual who registered his or her name on the Do-Not-Call Registry.").

**Conclusion**

These problems are only the beginning of the challenges Plaintiffs would face at trial. But they are more than enough to show that the $20 million fixed-fund settlement is more than fair, reasonable, and adequate compared to the many, serious flaws in their claims. The trial record would in fact compel decertification, as this Court previously intimated in response to Plaintiff's motion to modify the class. (Dkt. 388 at 2:24-3:1 ("I don't see any option here but to decertify this class. I mean, you have now persuaded me that there's just no commonality of proof. There's no predominance.").) And if the class is not decertified, judgment as a matter of law will be required for Realogy because Plaintiffs manifestly cannot prove classwide liability. *See, e.g.*, *True Health Chiropractic Inc. v. McKesson Corp.*, 2021 WL 4818945 (N.D. Cal. Oct. 15, 2021) (liability turned on whether each plaintiff used a standalone fax machine or online fax service and therefore could not be resolved in common).

**2. The litigation classes would also lose on a common basis for several reasons.**

In addition to facing decertification or judgment at trial because of individual issues, Plaintiffs would also face the risk of loss on a common basis for several reasons.

**Vicarious liability.** First, Realogy did not make any of the phone calls challenged in this case. The only calls that Realogy could even arguably be held liable for were placed by independent contractor real estate agents, and Plaintiffs' attempts to hold Realogy vicariously liable for these calls at trial would have failed. Realogy did not authorize any calls in violation of the TCPA, there was no evidence of any reliance by any call recipient on any representation of authorization as would have been necessary to support an apparent authority theory, and there was no evidence that Realogy ratified any violative calls after the fact. At the close of evidence,

DEFENDANTS' BRIEF IN SUPPORT OF PRELIMINARY SETTLEMENT APPROVAL
*Bumpus v. Realogy Holdings Corp*, No. 3:19-cv-03309-JD
10

Realogy would be entitled to judgment as a matter of law for lack of vicarious liability, as demonstrated in its trial brief. (Dkt. 333 at 7-11.)

**Inadmissible spreadsheets of phone calls**. Second, Plaintiffs' claims depend entirely on spreadsheets created and produced by third parties Mojo, PhoneBurner, and WAVV that report certain data regarding calls made using their systems. But Plaintiffs failed to elicit testimony from two of these third parties to authenticate their records as accurate and reliable business records. Moreover, the evidence that *was* obtained demonstrates that these records contain inadmissible hearsay statements by the third-party real estate agents who made the calls. Realogy therefore has moved in limine to exclude the dialing records. (*See* Dkt. 345, Defendants' Motion in *Limine* No. 3.) Without these inadmissible records, Plaintiffs' claims would fail as a matter of law. *Cf. Sapan*, 2021 WL 5302908, at *2 (Donato, J.) (commenting in denying certification of a TCPA class that plaintiff "dropped the ball during discovery").

**Losing class representatives.** Third, the individual class representatives either will not appear at trial or will lose on the merits. During the litigation, several class representatives were dropped after it was discovered that their phone numbers were used extensively for business purposes, disqualifying any calls to those numbers as TCPA violations. As a result, only three class representatives remained. One of those, Micheline Peker, was ill and unable to serve as a representative at trial. (Dkt. 353 at 1.) This left Sarah Bumpus as the only remaining class representative for the NDNC class. But Bumpus's phone records showed that she had only received one call from a Realogy-affiliated real estate agent (Dkt. 206-1, Ex. 7 at ¶¶ 24-28), while an NDNC violation requires two calls within a 12-month period. In addition, Bumpus was selling her house with a Realogy brokerage at the time of that lone call (Dkt. 205-1, Ex. 7 at 51:1-19, 59:13-60:23, 63:10-18, 67:15-68:4), resulting in an established business relationship that permitted Realogy-affiliated agents to call her. 47 U.S.C. § 227(a)(4) (defining "telephone solicitation"); 47 C.F.R. § 64.1200(f)(15) (defining "established business relationship"). For the Prerecorded Message Class, Cheryl Rowan was the only remaining class representative, but she too was destined to lose at trial, not least because she could not prove that she actually received any prerecorded-message calls. (Dkt. 205-1, Ex. 33 at 62:1-18, 64:1-69:24.) If, as seems inevitable,

Bumpus and Rowan lost their individual claims, the classes would have to be decertified. *See Reyes v. Educ. Credit Mgmt. Corp.*, 773. F. App'x 989, 990 (9th Cir. 2019).

## IV. CONCLUSION

For the reasons that Realogy summarized here and presented in much greater detail in its opposition to Plaintiffs' motion to modify the litigation classes (Dkt. 329), trial brief (Dkt. 333), proposed verdict forms (Dkt. 334), joint pretrial statement (Dkt. 353), proposed jury instructions (Dkt. 354), and motions in limine (Dkts. 343-350), Plaintiffs faced imminent decertification or a merits loss at trial. Under Rule 23, the Court assesses whether the "relief provided for the class is adequate" by "taking into account," among other things, the "risks … of trial." Fed. R. Civ. P. 23(e)(2)(C)(i). Judged against those risks, the $20 million fixed settlement fund is fully adequate. Realogy therefore respectfully requests the Court to grant preliminary approval of the Settlement and authorize notice to be sent.

Dated:  January 21, 2025

Respectfully submitted,

By: */s/ Aaron D. Van Oort*

**FAEGRE DRINKER BIDDLE & REATH LLP**
David J.F. Gross (SBN 290951)
david.gross@faegredrinker.com
4800 North Scottsdale Road, Suite 2200
Scottsdale, AZ 85251
Telephone: (480) 643-1850

Aaron D. Van Oort (*pro hac vice*)
aaron.vanoort@faegredrinker.com
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

*Counsel for Defendants Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy Group LLC, and Realogy Brokerage Group LLC (f/k/a NRT LLC)*