George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Sabita J. Soneji (State Bar No. 224262)
*ssoneji@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
Gemma Seidita (State Bar No. 322201)
*gseidita@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900

Brian A. Glasser (*pro hac vice*)
*bglasser@baileyglasser.com*
John W. Barrett (*pro hac vice*)
*jbarrett@baileyglasser.com*
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

Rachel E. Kaufman (State Bar No. 259353)
*rachel@kaufmanpa.com*
Avi Kaufman (*pro hac vice*)
*avi@kaufmanpa.com*
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881

Stefan Coleman (*pro hac vice*)
*law@stefancoleman.com*
**LAW OFFICES OF STEFAN COLEMAN**
66 West Flagler Street, Unit 900
Miami, Florida 33130
Telephone: (877) 333-9427

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker,
and Cheryl Rowan and the Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH BUMPUS, MICHELINE PEKER, and CHERYL ROWAN, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>REALOGY HOLDINGS CORP.; REALOGY INTERMEDIATE HOLDINGS LLC; REALOGY GROUP LLC; REALOGY SERVICES GROUP LLC; *and* REALOGY BROKERAGE GROUP LLC (f/k/a NRT LLC),<br><br>Defendants. | Case No. 3:19-cv-03309-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: August 28, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 28, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable James Donato in Courtroom 11, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan will and hereby do respectfully move for an Order granting final approval of the Parties' Settlement Agreement dated January 20, 2025, ECF No. 395-2, the terms of which are discussed in the Memorandum of Points and Authorities filed in support of this motion.

Plaintiffs request that the Court enter the proposed Final Approval Order and:

1.      Finally approve the Settlement;

2.      Affirm the certification of the Settlement Classes for settlement purposes only;

3.      Affirm the appointment of Sarah Bumpus as the representative of the Settlement NDNC Class and Micheline Peker and Cheryl Rowan as the representatives of the Settlement Prerecorded Message Class;

4.      Affirm the appointment of Reese LLP as counsel for the Settlement Classes;

5.      Grant Plaintiffs' motion for a Fee Award and Service Awards, ECF No. 403;

6.      Retain jurisdiction over this matter to resolve any issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement; and

7.      Enter Final Judgment.

Plaintiffs base the motion on the following documents: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings, record, and other filings in the case; the concurrently filed Declaration of George V. Granade; the Declaration of Cameron R. Azari, Esq. regarding Implementation and Adequacy of Notice Plan and its accompanying exhibits, filed concurrently herewith; and such other oral and written points, authorities, and evidence as the Parties may present at the time of the hearing on the motion.

Defendants Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy Group LLC, Realogy Services Group LLC, and Realogy Brokerage Group LLC do not oppose the relief requested in this motion.

Pursuant to the Court's Procedural Guidance for Class Action Settlements, Final Approval

¶ 1, Plaintiffs further state that the Settlement Class Members' response for the Settlement Classes preliminarily certified in the Court's Preliminary Approval Order, ECF No. 400, is as follows:

1.    **The Number of Undeliverable Class Notices and Claim Packets.** Epiq analyzed the telephone numbers in the Settlement Classes, the telephone numbers of members of the Certified NDNC Class who are not members of the Settlement NDNC Class, and the information already in its database associated with the Certified Classes, which resulted in 394,020 unique records. Decl. Azari re Implementation & Adequacy of Notice Plan ¶¶ 13, 20 ("Final Decl. Azari") (filed concurrently herewith). Of the 394,020 unique records, 108,889 unique records were associated with identified Non-Settlement Class Member phone numbers, *id.* at ¶¶ 13-14, and 285,131 unique records were associated with identified Settlement Class Member phone numbers, *id.* at ¶¶ 20-21.

2.    As of July 21, 2025, Epiq was able to deliver either email notice or postcard notice to 98,726 of the 108,889 unique, identified Non-Settlement Class Members, or approximately 90.6%. Final Decl. Azari ¶ 27. There were 10,163 unique, identified Non-Settlement Class Members for whom the non-settlement email notice and/or postcard notice were undeliverable. *Id.*

3.    As of July 21, 2025, Epiq was able to deliver either email notice or postcard notice to 260,646 of the 285,131 unique, identified Settlement Class Members, or approximately 91.4%. Final Decl. Azari ¶ 27. There were 24,485 unique, identified Settlement Class Members for whom email notice and/or postcard notice were undeliverable. *Id.*

4.    Epiq mailed a Long Form Notice and Claim Form ("Claim Package") to all persons who requested one via the toll-free phone number or other means. Final Decl. Azari ¶ 26. As of July 21, 2025, the number of Claim Packages mailed as a result of such requests was 214. *Id.* As of July 21, 2025, there were 10 undeliverable Claim Packages. *Id.*

5.    **The Number of Class Members Who Submitted Valid Claims.** The Claim Deadline was July 3, 2025. Preliminary Approval Order ¶ 25, ECF No. 400. Epiq is in the process of conducting a complete quality control review of Claim Forms received and has not determined a final number of Approved Claims. Final Decl. Azari ¶ 48. However, as of July 21, 2025, after screening out fraudulent claims, 40,853 preliminarily approved Claim Forms have been submitted, for approximately 14% of the unique, identified Settlement Class Member records. *Id.* at ¶¶ 42-48.

6. **The Number of Class Members Who Opted Out.** As of July 21, 2025, Epiq had received one request for exclusion from the Settlement Classes. Final Decl. Azari ¶ 38; *id.*, Ex. 9 (Exclusion Report).

7. **The Number of Class Members Who Objected to or Commented on the Settlement.** Scott B. Marovich filed a letter with the Court objecting to the Settlement on April 28, 2025, ECF No. 404. Mr. Marovich, however, is not a Settlement Class Member. Final Decl. Azari ¶ 38. Epiq's review of its records indicates a Non-Settlement Class Notice was sent to the address located on the letter Mr. Marovich filed with the Court. *Id.* Mr. Marovich's letter did not provide a telephone number that was included in the Settlement Classes. *Id.* No Settlement Class Member objected to or commented on the Settlement. *Id.*

Respectfully submitted,

Date: July 24, 2025

**REESE LLP**

By: _/s/ George V. Grande_
George V. Grande (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**TYCKO & ZAVAREEI LLP**
Sabita J. Soneji (State Bar No. 224262)
*ssoneji@tzlegal.com*
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
Gemma Seidita (State Bar No. 322201)
*gseidita@tzlegal.com*
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20036
Telephone: (202) 973-0900

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
bglasser@baileyglasser.com
John W. Barrett (*pro hac vice*)
jbarrett@baileyglasser.com
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

**KAUFMAN P.A.**
Rachel E. Kaufman (State Bar No. 259353)
rachel@kaufmanpa.com
Avi Kaufman (*pro hac vice*)
avi@kaufmanpa.com
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881
**LAW OFFICES OF STEFAN COLEMAN**
Stefan Coleman (*pro hac vice*)
law@stefancoleman.com
66 West Flagler Street, Unit 900
Miami, Florida 33130
Telephone: (877) 333-9427

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker,
and Cheryl Rowan and the Classes*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.      Introduction ............................................................................................................. 1

II.     Factual and Procedural Background ....................................................................... 1

III.    Summary of the Settlement Benefits ....................................................................... 2

        A.      The Settlement Classes ................................................................................ 2

        B.      The Benefits to the Settlement Classes ...................................................... 2

        C.      Settlement Class Member Release .............................................................. 3

        D.      Settlement Administrative Expenses, Fee Award, and Service Awards ........ 3

IV.     The Class Notice Satisfied Due Process and Rule 23 ............................................. 3

V.      Legal Standard for Final Approval .......................................................................... 5

VI.     The Settlement Is Fair, Reasonable, and Adequate ................................................ 5

        A.      Rule 23(e)(2)(A): The Settlement Classes Have Adequate Representation ...... 5

        B.      Rule 23(e)(2)(B): The Parties Negotiated the Settlement at Arm's Length ........ 5

        C.      Rule 23(e)(2)(C): The Settlement Relief Is Sufficient ................................. 6

                1.      Rule 23(e)(2)(C)(i): The Settlement Eliminates the Risk of Zero or
                        Significantly Delayed Recovery ..................................................... 6

                2.      Rule 23(e)(2)(C)(ii): The Method of Distributing Relief Is Effective ....... 7

                3.      Rule 23(e)(2)(C)(iii): The Request for Attorneys' Fees Is Reasonable ...... 8

                4.      Rule 23(e)(2)(C)(iv): There Are No Supplemental Agreements ............ 9

        D.      Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably ......... 9

        E.      The Settlement Satisfies the Remaining Ninth Circuit Approval Factors .......... 10

                1.      The Settlement Amount Is Fair and Reasonable ............................. 10

                2.      Plaintiffs' Counsel Are Experienced and View the Settlement
                        Favorably ......................................................................................... 12

                3.      There Is No Government Participant ............................................... 12

                4.      The Settlement Enjoys Overwhelming Class Support ...................... 12

a.    Scott B. Marovich Lacks Standing to Object Because He Is Not a Settlement Class Member, and Even If He Were a Settlement Class Member, the Court Should Reject His Argument ................................................................................................ 13

VII.    The Court Should Affirm Certification of the Settlement Classes ............................................ 14

VIII.    Conclusion ............................................................................................................................. 15

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3     *Alvarez v. Sirius XM Radio Inc.*, No. 18-cv-08605-JVS-SS,
          2021 WL 1234878 (C.D. Cal. Feb. 8, 2021).......................................................... 14

4

     *Black v. T-Mobile USA, Inc.*, No. 17-cv-04151-HSG,
5          2019 WL 3323087 (N.D. Cal. July 24, 2019) ..................................................... 15

6     *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF,
          2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ...................................................... 10

7
     *Churchill Village, L.L.C. v. General Electric*,
8          361 F.3d 566 (9th Cir. 2004) ...................................................................5, 12, 13

9     *Corzine v. Whirlpool Corp.*, No. 15-cv-05764-BLF,
          2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ................................................... 14
10
     *Cottle v. Plaid Inc.*, No. 20-cv-03056-DMR,
11          2022 WL 2829882 (N.D. Cal. July 20, 2022) ..................................................... 14

12     *DeShay v. Keller Williams Realty, Inc.*, No. 2022CA000457
          (Fla. Cir. Ct. 19th Jud. Cir. Indian-River Cty. 2023) ......................................... 10
13
     *Franklin v. Wells Fargo Bank, N.A.*, No. 14-cv-02349-MMA-BGS,
14          2016 WL 402249 (S.D. Cal. Jan. 29, 2016)........................................................ 11

15     *Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329-BLF,
          2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ...................................................... 4
16
     *Golan v. FreeEats.com, Inc.*,
17          930 F.3d 950 (8th Cir. 2019) ......................................................................7, 11

18     *Gretler v. Kaiser Found. Health Plan, Inc.*, No. 18-cv-02175-AG-KK,
          2019 WL 8198308 (C.D. Cal. Mar. 18, 2019) ...................................................... 6
19
     *Grimm v. Am. Eagle Airlines, Inc.*, No. 11-cv-00406-JAK-MAN,
20          2014 WL 12746376 (C.D. Cal. Sept. 24, 2014)..................................................... 7

21     *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST,
          2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................... 6
22
     *In re Amgen Inc. Secs. Litig.*, No. 07-cv-02536-PSG-PLA,
23          2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................... 9

24     *In re Bluetooth Headset Prods. Liab. Litig.*,
          654 F.3d 935 (9th Cir. 2011) ........................................................................ 6
25
     *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD,
26          2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ................................................... 9

27     *In re Coll. Athlete NIL Litig.*, No. 20-cv-03919-CW,
          2025 WL 1675820 (N.D. Cal. June 6, 2025)...................................................... 13

28

---

*In re Extreme Networks, Inc. Secs. Litig.*, No. 15-cv-04883-BLF,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................................................ 5, 6

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ...................................................................................... 10

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ....................................................................................................... 5

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ........................................................................................................ 3

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-md-02913-WHO,
    2023 WL 6205473 (N.D. Cal. Sept. 19, 2023) ........................................................................ 14

*In re Linkedin User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................................. 4

*In re Mercury Interactive Corp. Secs. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ........................................................................................................ 9

*In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185-BLF,
    2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ........................................................................... 4

*In re Pac. Enters. Secs. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ....................................................................................................... 12

*In re PFA Ins. Mktg. Litig.*, No. 4:18-cv-03771-YGR,
    2024 WL 1145209 (N.D. Cal. Feb. 5, 2024) ........................................................................... 13

*In re Regulus Therapeutics Inc. Secs. Litig.*, No. 3:17-cv-00182-BTM-RBB,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................................ 9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC),
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ......................................................................... 12

*Johnson v. Moss Bros. Auto Grp.*, No. 19-cv-02456-FMO-SP,
    2021 WL 4556052 (C.D. Cal. June 25, 2021) ......................................................................... 10

*Karri v. Oclaro, Inc.*, No. 3:18-cv-03435-JD,
    2024 WL 5374889 (N.D. Cal. July 26, 2024) ............................................................................ 8

*Lalli v. First Team Real Est.-Orange Cnty.*, No. 8:20-cv-00027-JWH-ADS,
    2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) .................................................................... 10, 11

*Larson v. Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO,
    2020 WL 3402406 (E.D. Cal. June 19, 2020) ......................................................................... 10

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................................... 12

*Moore v. Verizon Commc'ns Inc.*, No. 09-cv-01823-SBA,
    2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ........................................................................ 13

*Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI,
    2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) ............................................................... 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ....................................................................................................... 4

*Nat'l Rural Telecomm'cns Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 12, 13

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................... 11, 14

*Richards v. Chime Fin., Inc.*, No. 19-cv-06864-HSG,
    2021 WL 2075689 (N.D. Cal. May 24, 2021) ............................................................... 4

*Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF,
    2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ............................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................................................... 5

*Smith v. Apple, Inc.*, No. 21-cv-09527-HSG,
    2025 WL 1266927 (N.D. Cal. May 1, 2025) ............................................................... 6

*Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS,
    2025 WL 1592736 (N.D. Cal. June 5, 2025) ............................................................... 5

*Tabak v. Apple, Inc.*, No. 19-cv-02455-JST,
    2024 WL 4642877 (N.D. Cal. Oct. 30, 2024) ............................................................. 6

*Thomas v. Dun & Bradstreet Credibility Corp.*, No. 15-cv-03194-BRO-GJS,
    2017 WL 11633508 (C.D. Cal. Mar. 22, 2017) ......................................................... 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................................................... 8

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ................................................................................. 7, 11

*Williams v. PillPack LLC*, No. 3:19-cv-05282-DGE,
    2025 WL 1149710 (W.D. Wash. Apr. 18, 2025) ......................................................... 8

*Wilson v. Gateway, Inc.*, No. 09-cv-07560-GW-VBK,
    2014 WL 12704846 (C.D. Cal. Oct. 6, 2014) ........................................................... 12

*Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EK
    (M.D. Fla. 2022) ........................................................................................................ 10

**STATUTES**

47 U.S.C. § 227 ...................................................................................................................... 7, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Plaintiffs[1] respectfully request that the Court grant final approval to the proposed $20,000,000 Settlement, the result of over six years of fervent litigation of their TCPA claims against Realogy.[2]

If the Court awards the requested $6,000,000 in attorneys' fees,[3] $898,739.46 in costs, and Service Awards of $5,000 per Plaintiff, as well as Settlement Administrative Expenses of $340,000,[4] $12,746,260.54 will remain for distribution to the Settlement Class Members. Having carried out a thorough and robust Notice Plan that reached 91.4% of the identified Settlement Class Members, Epiq is in the process of conducting a complete quality control review of Claim Forms received and has not yet determined a final number of Approved Claims.[5] However, as of July 21, 2025, after screening out fraudulent claims, 40,853 preliminarily approved Claim Forms have been submitted, for approximately 14% of the unique, identified Settlement Class Member records.[6] Only one Settlement Class Member opted out,[7] and no Settlement Class Member objected.[8]

If, in the final analysis, there are 40,853 Approved Claims, then each Settlement Class Member will receive $312.00. This is a monumental result for the Settlement Class Members.

The Settlement is fair, reasonable, and adequate to all concerned and therefore merits final approval under Rule 23(e) and Ninth Circuit precedent, as detailed below.

### II.    Factual and Procedural Background

In accordance with this District's Procedural Guidance for Class Action Settlements

---

[1] Unless otherwise indicated, capitalized terms are defined in the Settlement Agreement, filed as Exhibit 1 to the Declaration of George V. Granade in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of Settlement Classes, ECF No. 395-2.

[2] Collectively, Realogy Holdings Corp., Realogy Intermediate Holdings LLC, Realogy Group LLC, Realogy Services Group LLC, and Realogy Brokerage Group LLC are "Realogy."

[3] As discussed in Plaintiffs' Counsel's motion for attorneys' fees, their lodestar is over $9,739,959.65 for over 10,243.75 hours of work, resulting in a negative multiplier of 0.62. ECF No. 403. And Plaintiffs' Counsel are continuing to incur fees to bring the case to its conclusion.

[4] *See* Decl. Azari re Revised Notice Plan ¶ 19, ECF No. 401 (agreeing to $340,000 cap).

[5] Decl. Azari re Implementation & Adequacy of Notice Plan ¶¶ 7-12, 20-25, 27-37, 48 ("Final Decl. Azari") (filed concurrently herewith).

[6] *Id.* at ¶¶ 42-48.

[7] *Id.* at ¶ 38; *id.*, Ex. 9 (Exclusion Report).

[8] *Id.* As discussed below, Scott B. Marovich, who sent in a letter objecting to the Settlement, ECF No. 404, is not a Settlement Class Member. Final Decl. Azari ¶ 38.

---

("Guidance"), the background facts and case history have been set out in the Declaration of George V. Granade in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Service Awards ¶¶ 5-141, ECF No. 403-1, and thus are not repeated here. *See* Guidance, Final Approval ¶ 2.

## III.    Summary of the Settlement Benefits

The material terms of the Settlement are summarized below.

### A.    The Settlement Classes

The Settlement Classes are defined as follows:

(a) "NDNC Class" means all persons in the United States who received two or more calls, as indicated by non-zero call durations and/or disposition codes other than "No Answer," "NO_ANSWER," or "NOANSWER," made by a Coldwell Banker-affiliated real estate agent using a Mojo, PhoneBurner, and/or Storm dialer in any 12-month period on a residential landline or cell phone number that appeared on the National Do Not Call Registry for at least 31 days for the time period beginning June 11, 2015 and ending December 3, 2020 (all phone numbers within the NDNC Class are listed in Exhibit A to the Settlement Agreement);

(b) "Prerecorded Message Class" means all persons in the United States who received a call on their residential telephone line or cell phone number with an artificial or prerecorded message, as indicated by the following call disposition codes: (i) 'Drop Message' (if using the Mojo dialer), (ii) 'ATTENDED_TRANSFER' (if using the Storm dialer), and (iii) 'VOICEMAIL' (if using a PhoneBurner dialer) and made by a Coldwell Banker-affiliated real estate agent for the time period beginning June 11, 2015 and ending December 3, 2020 (all phone numbers within the Prerecorded Message Class are listed in Exhibit B to the Settlement Agreement).

Preliminary Approval Order ¶ 4, ECF No. 400; § A.26.[9]

### B.    The Benefits to the Settlement Classes

Realogy has agreed to pay a non-reversionary Total Settlement Amount of $20,000,000, which covers all costs of settlement, including all payments to Settlement Class Members, the Fee Award, all Service Awards, and all Settlement Administrative Expenses. §§ A.30, F.49-53, F.55, I.64-65. Under the Settlement Agreement, every Settlement Class Member who submitted a timely, valid Approved Claim will receive a *pro rata* share of the Settlement Fund after any approved Fee Award, Service

---

[9] Excluded from both Settlement Classes are: (a) current or former officers and directors of Realogy, (b) Realogy's employees, agents, and counsel and its counsel's employees, (c) independent contractor real estate agents affiliated with a Realogy brand, (d) Plaintiffs' Counsel and their employees, (e) any judge, magistrate, mediator, arbitrator, and/or court personnel that was involved in presiding over or rendering a decision in this case, and their immediate family members, and (f) any valid Opt-Out Members. Preliminary Approval Order ¶ 4; § A.26. Unless otherwise specified, all section (§) references are to sections of the Settlement Agreement.

Awards, and Settlement Administrative Expenses are deducted. §§ I.64-65.

As discussed above, Epiq is in the process of conducting a complete quality control review of Claim Forms received. Final Decl. Azari ¶ 48. However, as of July 21, 2025, after screening out fraudulent claims, 40,853 preliminarily approved Claim Forms have been submitted, for approximately 14% of the unique, identified Settlement Class Member records. *Id.* at ¶¶ 42-48. If the final number of Approved Claims is 40,853 and the Court awards all requested fees and costs, then each Settlement Class Member will receive $312.00. Approved Claims will be paid 60 days after the Effective Date, § I.67, electronically or by check, and will expire unless cashed within 180 days after issuance, § I.68.

### C.     Settlement Class Member Release

In exchange for this meaningful monetary relief, all Settlement Class Members except for the one Opt-Out Member, *see* Final Decl. Azari ¶ 38, are providing a release that is narrowly tailored to the legal and factual claims of the Settlement Classes in the Action; they will release the Released Parties from all claims "that were brought in the Action or could have been brought in the Action or that arise from telephone communications made or attempted by any Coldwell Banker affiliated real estate agent from June 11, 2015 to December 3, 2020 to Settlement Class Members or telephone numbers assigned to Settlement Class Members." §§ A.19, A.21, J.70.

### D.     Settlement Administrative Expenses, Fee Award, and Service Awards

The Settlement Agreement requires Settlement Administrative Expenses to be paid from the Settlement Fund. §§ A.30, F.51-52. As of July 21, 2025, Epiq had incurred fees of $320,061.22, and it has agreed to cap its fees at $340,000. Final Decl. Azari ¶ 49. Because additional costs will be incurred to finish administering the settlement, including distribution costs, it expects to reach the cap. *Id.*

In accordance with the Settlement Agreement, Plaintiffs' Counsel have petitioned the Court for $6 million in attorneys' fees and $898,739.46 in litigation costs, § G.58, and Service Awards of $5,000 for each of the three class representatives, § H.62.

## IV.     The Class Notice Satisfied Due Process and Rule 23

"A binding settlement must provide notice to the class in a 'reasonable manner'" under Rule 23(c)(2)(B) and (e)(1)(B). *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) (en banc). Due process requires "notice reasonably calculated, under all the circumstances, to apprise

1  interested parties of the pendency of the action and afford them an opportunity to present their

2  objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

3      The Court previously approved the Parties' proposed class notice procedures, which used

4  plain language and relied on direct email notice, direct postcard notice, and the creation of a settlement

5  website and toll-free telephone number to assist potential Settlement Class Members. *See* Preliminary

6  Approval Order ¶¶ 7-9, ECF No. 400. The notice program fully complies with Rule 23 and the

7  mandates of due process. *See Richards v. Chime Fin., Inc.*, No. 19-cv-06864-HSG, 2021 WL 2075689, at

8  *4, *5 (N.D. Cal. May 24, 2021) (finding email notice and notice on settlement website compliant with

9  Rule 23(c)(2)(B)); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015) (stating that "the

10  Court approved a notice plan involving direct email notice, a settlement website and a toll-free

11  telephone number, as consistent with Rule 23(c)(2)(B)").

12      Commencing on April 3, 2025, Epiq executed a thorough notice campaign that resulted in

13  91.4% of the potential Settlement Class Members receiving direct notice of the Settlement. Final Decl.

14  Azari ¶¶ 7-12, 20-25, 27. Individual notice in the form of the Non-Settlement Class Notice reached

15  approximately 90.6% of the members of the Certified Classes who are not members of the Settlement

16  Classes. *Id.* at ¶¶ 7-19, 27. Additionally, from April 4, 2025, through May 3, 2025, Epiq conducted an

17  internet digital notice campaign that delivered 7,825,256 impressions nationwide. *Id.* at ¶¶ 28-33. And

18  Epiq maintained the Settlement Website and a dedicated toll-free number, postal mailing address, and

19  email inbox to provide information to the Settlement Classes and to facilitate the filing of claims. *Id.*

20  at ¶¶ 34-37. Furthermore, on May 12, 2025, and June 27, 2025, Epiq delivered reminder emails to

21  Settlement Class Members who had not submitted a claim form or a request for exclusion. *Id.* at ¶¶ 39-

22  40. The class notice procedures used here constitute the best practicable notice to the Settlement Class

23  Members and comply with the requirements of Rule 23 and Due Process. *See, e.g.*, *In re Nexus 6P Prods.*

24  *Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at *7 (N.D. Cal. Nov. 12, 2019) (finding that

25  notice that reached "approximately 77% of class members" complied with Rule 23 and granting final

26  approval); *Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329-BLF, 2019 WL 1299504, at *6 (N.D.

27  Cal. Mar. 21, 2019) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional

28  and comply with Rule 23.").

## V.    Legal Standard for Final Approval

"Judicial policy strongly favors settlement of class actions, 'particularly where complex class action litigation is concerned.'" *Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS, 2025 WL 1592736, at *9 (N.D. Cal. June 5, 2025). Settlement on a class-wide basis requires court approval, FED. R. CIV. P. 23(e), which may be granted "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate" after considering the factors set forth in Rule 23(e)(2), FED. R. CIV. P. 23(e)(2); *see In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1116 (9th Cir. 2021). As discussed below, the Settlement is fair, reasonable, and adequate in light of the Rule 23(e)(2) factors and the factors in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

## VI.    The Settlement Is Fair, Reasonable, and Adequate

### A.    Rule 23(e)(2)(A): The Settlement Classes Have Adequate Representation

Plaintiffs and Plaintiffs' Counsel have vigorously prosecuted this case through pleading motions, discovery, class certification, summary judgment, *Daubert* motions, and mediation and up to the eve of trial. Decl. Granade Supp. Pls.' Mot. Attorneys' Fees ¶¶ 5-141, ECF No. 403-1. Against this backdrop, in its Preliminary Approval Order, the Court found Plaintiffs and Plaintiffs' Counsel adequately represented the interests of the Settlement Classes. Preliminary Approval Order ¶¶ 2, 5, ECF No. 400; *see also* ECF No. 223 at 8-9, 16 (concluding Plaintiffs and Plaintiffs' Counsel were adequate to represent the Certified Classes). The execution of the notice program and Plaintiffs' Counsel's work to advance the proposed settlement further confirm the Court's previous findings. *In re Extreme Networks, Inc. Secs. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) ("The Court finds that counsel has continued to represent the class diligently by complying with the notice plan and settlement procedures.").

### B.    Rule 23(e)(2)(B): The Parties Negotiated the Settlement at Arm's Length

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length," FED. R. CIV. P. 23(e)(2)(B), and the Ninth Circuit considers a "non-collusive, negotiated resolution" to be important, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The Parties undertook extensive factual and expert discovery in the context of hotly contested litigation and only settled just before trial. Decl. Granade Supp. Pls.' Mot. Attorneys' Fees ¶¶ 45-77, 124, 137-38, ECF No. 403-1. Plaintiffs' Counsel

1    thus "possessed 'sufficient information to make an informed decision about settlement.'" *Hefler v.*

2    *Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018). The

3    Parties also mediated before the Honorable Edward A. Infante (Ret.) and Bruce A. Friedman, Esquire,

4    of JAMS and participated in a settlement conference before the Honorable Magistrate Judge Thomas

5    S. Hixson, Decl. Granade Supp. Pls.' Mot. Attorneys' Fees ¶¶ 125-27, ECF No. 403-1; these sessions

6    did not immediately result in settlement, but they informed the negotiations. *See Gretler v. Kaiser Found.*

7    *Health Plan, Inc.*, No. 18-cv-02175-AG-KK, 2019 WL 8198308, at *3 (C.D. Cal. Mar. 18, 2019) ("One

8    important factor is that the parties reached the settlement after significant arms-length negotiations

9    with a third-party mediator.").

10        No signs of collusion are present. Plaintiffs' Counsel will not receive a disproportionate

11    distribution of the settlement; there is no clear sailing arrangement; and there is no reverter. *See In re*

12    *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

13    **C.    Rule 23(e)(2)(C): The Settlement Relief Is Sufficient**

14        **1.    Rule 23(e)(2)(C)(i): The Settlement Eliminates the Risk of Zero or**
15            **Significantly Delayed Recovery**

16        In assessing "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i),

17    "courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense, complexity,

18    and likely duration of further litigation; [and] the risk of maintaining class action status throughout the

19    trial.'" *In re Extreme Networks, Inc. Secs. Litig.*, 2019 WL 3290770, at *8. "Approval of a class settlement

20    is appropriate when plaintiffs must overcome significant barriers to make their case." *Smith v. Apple,*

21    *Inc.*, No. 21-cv-09527-HSG, 2025 WL 1266927, at *5 (N.D. Cal. May 1, 2025). "Difficulties and risks

22    in litigating weigh in favor of approving a class settlement." *Tabak v. Apple, Inc.*, No. 19-cv-02455-JST,

23    2024 WL 4642877, at *4 (N.D. Cal. Oct. 30, 2024).

24        The Parties are in serious disagreement on the merits of this highly technical case. Plaintiffs

25    believe their claims are meritorious and they would prevail if this case proceeded to trial. Decl.

26    Granade Supp. Pls.' Mot. Final Approval ¶ 5 ("Final Decl. Granade") (filed concurrently herewith).

27    Realogy contends Plaintiffs' claims are unfounded, denies liability, and has shown a willingness to

28    litigate vigorously. *See, e.g.*, Defs.' Br. Supp. Preliminary Approval 6-12, ECF No. 396 (contending

1   Plaintiffs and the Certified Classes would lose at trial for numerous reasons). If the Parties were to

2   resume litigating this case, Plaintiffs' claims could be dismissed or narrowed by motions *in limine*, at

3   trial, or on appeal. Final Decl. Granade ¶ 5. For example, if the Court were to grant Realogy's motion

4   *in limine* to exclude the PhoneBurner and WAVV call logs, or if it declined to admit the Mojo call logs,

5   the complexity and difficulty of prevailing on a classwide basis at trial would be greatly increased. *Id.*

6   Alternatively, if the jury does not credit Sarah Bumpus's testimony that she told Coldwell Banker

7   agents not to call her back before she received the calls at issue, then she would have an established

8   business relationship with Coldwell Banker, which would defeat her claims and consequently the

9   claims of the NDNC Class. *Id.* The jury could also decide to award the NDNC Class only a de minimis

10  amount in damages on a per violation basis. *See* 47 U.S.C. § 227(c)(5) (providing for "up to $500" per

11  call). *Id.* Realogy also would likely make a post-verdict motion to reduce the judgment amount for

12  both Certified Classes based on the Ninth Circuit's direction in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109

13  (9th Cir. 2022) (citing *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (affirming district court's

14  reduction of statutory damages by 98%, from $500 to $10 per violation for TCPA violative

15  prerecorded calls)). Final Decl. Granade ¶ 5.

16          The risk of maintaining class action status through trial also supports approval of the

17  Settlement. Decertification could occur at or after trial. *Id.* at ¶ 6; ECF No. 390; *cf. Grimm v. Am. Eagle*

18  *Airlines, Inc.*, No. 11-cv-00406-JAK-MAN, 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014)

19  (where no litigation class had been certified, plaintiffs "necessarily" risked losing class action status).

20          Even if Plaintiffs prevailed at trial, any recovery would likely be delayed for a year or more by

21  appeals. Final Decl. Granade ¶ 7. While continued litigation presents serious risks, the Settlement

22  provides immediate and substantial benefits to the Settlement Classes. "Approval of settlement is

23  'preferable to lengthy and expensive litigation with uncertain results.'" *Morales v. Stevco, Inc.*, No. 1:09-

24  cv-00704-AWI, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011).

25          **2.      Rule 23(e)(2)(C)(ii): The Method of Distributing Relief Is Effective**

26          The method of processing the claims is efficient, fair, and reasonable. Settlement Class

27  Members could submit claims online through the Settlement Website, by email, or by printing the

28  Claim Form and mailing it. Final Decl. Azari, Ex. 7. The Claim Form included only basic questions

about name and contact information, the unique identifier assigned to the Settlement Class Member in the Notice, and the telephone number(s) they used during the class period on which they were called by Coldwell Banker agents. *Id.*; Stlmt. Agmt., Ex. E. The 40,853 claims preliminarily approved reflect that the claims process was not difficult. *See* Final Decl. Azari ¶ 48.

The Settlement Fund will be distributed fairly to Settlement Class Members who submitted Approved Claims. Within 60 days after the Effective Date, or such other date as the Court may set, Epiq will pay all Approved Claims from the Settlement Fund. § I.67. With any method of filing a Claim Form, Settlement Class Members were given the option of receiving a digital payment or a traditional paper check. Final Decl. Azari ¶ 41; *see* §§ I.67-68. Every Settlement Class Member who submits an Approved Claim will receive the same *pro rata* payment amount, by means of their chosen payment method. § I.64. All electronic payments and checks will expire unless cashed within 180 days after the date of issuance. § I.68. Epiq will distribute any expired funds on a *pro rata* basis to Settlement Class Members who submitted an Approved Claim and who settled their prior payments, if doing so is administratively and economically feasible (i.e., those Settlement Class Members would receive a second distribution of more than $1 after costs of administration). *Id.*

### 3.     Rule 23(e)(2)(C)(iii): The Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(iii). The terms of Plaintiffs' Counsel's proposed Fee Award are discussed in their motion for attorneys' fees, ECF No. 403. In addition to Settlement Administrative Expenses, Plaintiffs' Counsel seek attorneys' fees of $6,000,000, which is 30% of the Total Settlement Amount, and litigation costs of $898,739.46. *Id.* at 1.

As detailed in the fee motion, an adjustment of the Ninth Circuit benchmark up to 30% is warranted under the factors set out in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002), and is well within the range of percentage fees that courts in this Circuit have awarded in other complex class actions, including TCPA cases. ECF No. 403 at 3-10; *see, e.g., Williams v. PillPack LLC*, No. 3:19-cv-05282-DGE, 2025 WL 1149710, at *2-3 (W.D. Wash. Apr. 18, 2025) (awarding one-third of settlement fund in TCPA case); *Karri v. Oclaro, Inc.*, No. 3:18-cv-03435-JD, 2024 WL 5374889, at *1 (N.D. Cal. July 26, 2024) (Donato, J.) (same in securities case). Furthermore, the requested attorneys'

1  fees represent a negative multiplier of 0.62 on Plaintiffs' Counsel's combined lodestar of over

2  $9,739,959.65 for over 10,243.75 hours of work.[10] *See* Decl. Granade Supp. Pls.' Mot. Attorneys' Fees

3  ¶ 144, ECF No. 403-1. A negative multiplier, like the one here, underscores the reasonableness of the

4  fee request because it means Plaintiffs' Counsel are seeking to be paid "for only a portion of the hours

5  that they expended on the action." *In re Amgen Inc. Secs. Litig.*, No. 07-cv-02536-PSG-PLA, 2016 WL

6  10571773, at *9 (C.D. Cal. Oct. 25, 2016); *see also In re Regulus Therapeutics Inc. Secs. Litig.*, No. 3:17-cv-

7  00182-BTM-RBB, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) ("[A] multiplier less than 1.0 is

8  below the range typically awarded by courts and is presumptively reasonable."). As detailed in the fee

9  motion, the requested litigation costs of $898,739.46[11] are also reasonable and were "incidental and

10  necessary to the effective representation of the Class." *See In re Capacitors Antitrust Litig.*, No. 3:14-cv-

11  03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (Donato, J.); ECF No. 403 at 13-14.

12       Plaintiffs' Counsel filed the fee motion on May 2, 2025, which was over 60 days before the

13  deadline to object or opt out (July 3, 2025), Preliminary Approval Order ¶ 25, ECF No. 400, which

14  afforded Settlement Class Members a full opportunity to consider the issue. *See In re Mercury Interactive

15  Corp. Secs. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010); Guidance, Preliminary Approval ¶ 9.

16              **4.    Rule 23(e)(2)(C)(iv): There Are No Supplemental Agreements**

17       The Parties have no supplemental agreements. Final Decl. Granade ¶ 8.

18       **D.    Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably**

19       The Settlement "treats class members equitably relative to each other." FED. R. CIV. P.

20  23(e)(2)(D). As discussed above, if the 40,853 preliminarily approved claims become final and the

21  Court awards all requested fees, costs, and Service Awards, then Settlement Class Members will receive

22  a significant payment of $312.00. *See* Final Decl. Azari ¶ 48; *see supra* p. 1. The *pro rata* allocation of the

23  Settlement is fair and reasonable because it provides equal relief to all Settlement Class Members who

24  make an Approved Claim and is consistent with the distribution of funds in other common fund

25

26  [10] Each firm excluded hours from timekeepers who worked less than 50 hours on the case. Decl. Granade Supp. Pls.' Mot. Attorneys' Fees ¶ 144 n.11, ECF No. 403-1.

27  [11] Each firm reduced costs as follows: (a) hotel costs were capped at $350 per night; (b) meals were capped at $40 for dinner, and $20 for all other meals; (c) copy charges were eliminated; (d) flight costs

28  were capped at $700. Decl. Granade Supp. Pls.' Mot. Attorneys' Fees ¶ 144 n.11, ECF No. 403-1.

1   settlements, including in TCPA cases. *See, e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d

2   617, 629 (N.D. Cal. 2021) (Donato, J.) (distribution providing *pro rata* share of common fund treated

3   class members equitably and weighed in favor of final approval); *Johnson v. Moss Bros. Auto Grp.*, No.

4   19-cv-02456-FMO-SP, 2021 WL 4556052, at *8 (C.D. Cal. June 25, 2021) (preliminarily approving

5   TCPA settlement in which each class member would receive approximately $46, less fees and costs,

6   regardless of number of calls received). Additionally, "[a]lthough the class representatives seek service

7   awards, the service awards . . . do not constitute inequitable treatment of class members." *Broomfield v.*

8   *Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020).

9       **E.    The Settlement Satisfies the Remaining Ninth Circuit Approval Factors**

10          **1.    The Settlement Amount Is Fair and Reasonable**

11          The non-reversionary $20,000,000 common fund is fair and reasonable. As discussed above,

12   Plaintiffs' Counsel estimate that each Settlement Class Member will receive approximately $312.00.

13   *See supra* p. 1. This is an excellent recovery for the Settlement Class Members.

14          The estimated payout for Approved Claims here is significantly higher than in numerous

15   TCPA settlements, including in cases like this one against realty brokerages arising from agents' calls.

16   *See, e.g.*, *DeShay v. Keller Williams Realty, Inc.*, No. 2022CA000457 (Fla. Cir. Ct. 19th Jud. Cir. Indian-

17   River Cty. 2023) (TCPA vicarious liability case against realty brokerage arising from agents' calls in

18   which claimants received approximately $14 each from settlement); *Wright v. eXp Realty, LLC*, No.

19   6:18-cv-01851-PGB-EK (M.D. Fla. 2022) (TCPA vicarious liability case against realty brokerage

20   arising from agents' calls in which claimants received approximately $59 each from settlement); *Lalli*

21   *v. First Team Real Est.-Orange Cnty.*, No. 8:20-cv-00027-JWH-ADS, 2022 WL 8207530, at *8, *10 (C.D.

22   Cal. Sept. 6, 2022) (finally approving settlement in TCPA vicarious liability case against realty

23   brokerage arising from agents' calls in which claimants received approximately $110 each); *Larson v.*

24   *Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2020 WL 3402406, at *6 (E.D. Cal. June 19,

25   2020) (granting final approval in TCPA class action settlement where class members would receive

26   $156.95 each); *Thomas v. Dun & Bradstreet Credibility Corp.*, No. 15-cv-03194-BRO-GJS, 2017 WL

27   11633508, at *2, *13-14 (C.D. Cal. Mar. 22, 2017) (finally approving TCPA settlement where each

28   claimant received approximately $100); *Franklin v. Wells Fargo Bank, N.A.*, No. 14-cv-02349-MMA-

BGS, 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016) (collecting TCPA class action settlements and finding a range of $20 to $100 value per class member claim, and granting final approval to settlement where class members received approximately $71.16 each).

While the ultimate result at trial is uncertain, the settlement amount is also sufficient when viewed in light of the potential recovery at trial. The Settlement NDNC Class received a total of 438,921 calls. Final Decl. Granade ¶ 9. Because the TCPA allows for damages of "up to $500" per call for do-not-call claims, 47 U.S.C. § 227(c)(5), a favorable jury verdict for those claims could bring damages ranging from $438,921 (at $1 per call) to up to $219,460,500 (at the $500 maximum). This amount could reach $658,381,500 if the Court were to find the violations were knowing or willful. *Id.*

The Settlement Prerecorded Message Class received a total of 264,104 calls. Corrected Expert Rep. Verkhovskaya ¶¶ 127-28, ECF No. 355-1. Consequently, the Settlement Prerecorded Message Class could have recovered $132,052,000 at trial at the statutory rate of $500 per call and up to $396,156,000 if the Court were to find the violations were knowing or willful. *See* 47 U.S.C. § 227(b)(3).

The $20,000,000 Total Settlement Amount is 5.68% of the non-trebled total potential recovery of $351,512,500 if the jury were to award the NDNC Class $500 per call. By contrast, if the jury were to award the NDNC Class $1 per call and the Prerecorded Message Class were to prevail, the total recovery would be $132,490,921; the $20,000,000 Total Settlement Amount is 15.095% of the latter amount. Moreover, all of the foregoing figures do not take into account the significant risk of a post-judgment reduction of damages, *see Wakefield*, 51 F.4th at 1122-25, which possibly could reduce per-call awards by 98%, *see Golan*, 930 F.3d at 962 n.11.

"[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Thus, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* "Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation." *Lalli*, 2022 WL 8207530, at *8. For all these reasons, it is well settled that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

1    grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

2    (9th Cir. 1998).

3         The monetary relief here is a fair and meaningful outcome in Settlement Class Members' favor,

4    placing the Settlement well within the range of approval.

5         **2.    Plaintiffs' Counsel Are Experienced and View the Settlement Favorably**

6         In considering whether to grant final approval, courts afford significant weight to the opinions

7    of experienced counsel who are familiar with the litigation. *In re: Volkswagen "Clean Diesel" Mktg., Sales*

8    *Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25,

9    2016) ("Courts afford 'great weight to the recommendation of counsel, who are most closely

10   acquainted with the facts of the underlying litigation.'"); *see also In re Pac. Enters. Secs. Litig.*, 47 F.3d

11   373, 378 (9th Cir. 1995). Plaintiffs' Counsel are experienced in class action litigation, including TCPA

12   cases, and they have a nuanced understanding of the legal and factual issues involved in this case. Final

13   Decl. Granade ¶ 10. They fully endorse the Settlement as fair, adequate, and reasonable. *Id.* This factor

14   favors final approval. *See Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2022 WL 254349,

15   at *4 (N.D. Cal. Jan. 27, 2022) (stating that experience and views of counsel favored approving

16   settlement and highlighting counsel's "thorough understanding of the strengths and weaknesses of

17   [the] case and their extensive experience" in prior similar cases); *Wilson v. Gateway, Inc.*, No. 09-cv-

18   07560-GW-VBK, 2014 WL 12704846, at *5 (C.D. Cal. Oct. 6, 2014) ("Class Counsel's experience and

19   recommendation . . . weigh in favor of finding the settlement fair.").

20        **3.    There Is No Government Participant**

21        There is no government participant, so this *Churchill* factor does not apply. *Nat'l Rural*

22   *Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

23        **4.    The Settlement Enjoys Overwhelming Class Support**

24        The final *Churchill* factor considers the reaction of the Settlement Classes. *Churchill Vill.*,

25   *L.L.C.*, 361 F.3d at 575. After dissemination of the Notice, having given Settlement Class Members

26   an opportunity to consider the merits of the Settlement, the Settlement Classes overwhelmingly

27   support the Settlement. Only one Settlement Class Member has opted out. Final Decl. Azari ¶ 38; *id.*,

28   Ex. 9 (Exclusion Report). And while a letter objecting to the Settlement was also filed, ECF No. 404,

1   as discussed below, the filer is not a Settlement Class Member. Final Decl. Azari ¶ 38.

2        This kind of positive reaction on the part of the Settlement Classes strongly supports final

3   Settlement approval. *See Churchill Vill., L.L.C.*, 361 F.3d at 577 (court may appropriately infer that a

4   class action settlement is fair, adequate, and reasonable when few class members object to it); *Nat'l*

5   *Rural Telecommc'ns Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of

6   objections to a proposed class action settlement raises a strong presumption that the terms of a

7   proposed class settlement action are favorable to the class members.").

8            a.     **Scott B. Marovich Lacks Standing to Object Because He Is Not
                    a Settlement Class Member, and Even If He Were a Settlement
9                   Class Member, the Court Should Reject His Argument**

10       Scott B. Marovich submitted a letter objecting to the Settlement. ECF No. 404. However, Mr.

11  Marovich's letter does not include a telephone number that is part of the Settlement Classes, as

12  required under the terms of the Settlement. Final Decl. Azari ¶ 38; § E.41. Furthermore, Epiq's records

13  and analysis reveal he received the Non-Settlement Class Notice and thus is not a Settlement Class

14  Member. Final Decl. Azari ¶ 38. Because Mr. Marovich is not a Settlement Class Member, he does

15  not have standing to object to the Settlement, and the Court should disregard his objection. *In re Coll.*

16  *Athlete NIL Litig.*, No. 20-cv-03919-CW, 2025 WL 1675820, at *24 (N.D. Cal. June 6, 2025) ("The

17  Court . . . will not address [objections] that were filed by non-class members . . . because non-class

18  members do not have standing to object to the [Settlement Agreement]."); *In re PFA Ins. Mktg. Litig.*,

19  No. 4:18-cv-03771-YGR, 2024 WL 1145209, at *19 (N.D. Cal. Feb. 5, 2024) ("The Court agrees with

20  plaintiffs that Li did not include the requisite statements in his objection indicating that he is a class

21  member. Because Li failed to establish that he is a class member, he lacks standing to object to the

22  [Settlement Agreement]."); *Moore v. Verizon Commc'ns Inc.*, No. 09-cv-01823-SBA, 2013 WL 4610764,

23  at *9 (N.D. Cal. Aug. 28, 2013) ("It is well-settled that only class members may object to a class action

24  settlement. Thus, a court need not consider the objections of non-class members because they lack

25  standing." (citations omitted)); *see also* § E.41 (requiring all objections to contain "the phone number(s)

26  at which [the objector] received communications covered by this Settlement").

27       Assuming, *arguendo*, that the Court considers the substance of Mr. Marovich's objection (which

28  it should not), the Court should reject the objection on the merits. Mr. Marovich's complaint is not

about the $20,000,000 Total Settlement Amount[12]; rather, he wishes the Settlement provided additional relief in the form of injunctive relief. However, "[i]n the Ninth Circuit, settlements are not rejected simply because they 'could have been better.'" *Corzine v. Whirlpool Corp.*, No. 15-cv-05764-BLF, 2019 WL 7372275, at *7 (N.D. Cal. Dec. 31, 2019). This is because "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Just.*, 688 F.2d at 624. Ultimately, "the question [the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Cottle v. Plaid Inc.*, No. 20-cv-03056-DMR, 2022 WL 2829882, at *6 (N.D. Cal. July 20, 2022). "***Nor is there any requirement that a settlement provide injunctive relief for it to be fair, reasonable, and adequate.***" *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-md-02913-WHO, 2023 WL 6205473, at *8 (N.D. Cal. Sept. 19, 2023) (emphasis added) (rejecting objection that settlement should have limited the defendant's marketing practices); *accord Alvarez v. Sirius XM Radio Inc.*, No. 18-cv-08605-JVS-SS, 2021 WL 1234878, at *7 (C.D. Cal. Feb. 8, 2021) ("The Court does not agree that injunctive relief is necessary for the Settlement to be reasonable.").

Furthermore, the Settlement does not release any claims that may accrue after the date of preliminary approval. § J.70 (releasing only claims "that have accrued as of the date of preliminary approval of the Settlement"). Realogy therefore remains potentially subject to liability "if it engages in future conduct similar to that which gave rise to this lawsuit." *Alvarez*, 2021 WL 1234878, at *7.

Finally, it is important to note that this case has resulted in changes to Realogy's business practices. Indeed, Realogy avers that it "has implemented changes to inform independent contractor real estate agents affiliated with its company-owned brokerages of TCPA requirements and to discourage them from violating any provision of the TCPA," including four specific changes. Stlmt. Agmt. at 3 of 54, ECF No. 395-2.

## VII.    The Court Should Affirm Certification of the Settlement Classes

The Parties agreed to certification of the Settlement Classes, and the Court conditionally certified them for settlement purposes only. Preliminary Approval Order ¶¶ 3-5, ECF No. 400. There

---

[12] Indeed, Mr. Marovich simply ignores the $20,000,000 Total Settlement Amount, claiming the Settlement "accomplishes nothing of significance to the plaintiffs." ECF No. 404.

1  have been no objections to class certification and no intervening events that warrant the Court

2  reconsidering its provisional conclusion. *See, e.g.*, *Black v. T-Mobile USA, Inc.*, No. 17-cv-04151-HSG,

3  2019 WL 3323087, at *2 (N.D. Cal. July 24, 2019) ("Because no facts that would affect these

4  requirements have changed since the Court preliminarily approved the class . . . this order incorporates

5  by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary

6  approval."). The Court should now affirm certification of the Settlement Classes pursuant to Rule

7  23(a) and (b)(3). The Settlement Classes include 298,494 unique telephone numbers and are therefore

8  sufficiently numerous. Plaintiffs' claims are typical of the claims of the Settlement Class Members, and

9  they have more than adequately performed their duties as class representatives and do not possess any

10  conflict of interest with the Settlement Class Members. Plaintiffs' Counsel have substantial experience

11  in TCPA litigation, zealously prosecuted the classes' claims, have adequately represented the

12  Settlement Classes to date, and are well qualified to represent the Settlement Classes. Common,

13  predominating questions include whether the Mojo, PhoneBurner, and WAVV call logs show

14  Realogy's sales associates violated the TCPA by calling numbers on the NDNCR or by sending

15  prerecorded messages, and whether these calls were intended to encourage the purchase of Realogy's

16  services. Superiority is met because individual claims are small and no realistic alternative exists.

17  **VIII.   Conclusion**

18      For all the foregoing reasons, Plaintiffs and Plaintiffs' Counsel respectfully request that the

19  Court: (1) grant final approval to the Settlement; (2) finally certify the Settlement Classes for settlement

20  purposes; (3) affirm the appointment of Sarah Bumpus as the representative of the Settlement NDNC

21  Class and Micheline Peker and Cheryl Rowan as the representatives of the Settlement Prerecorded

22  Message Class; (4) affirm the appointment of Reese LLP as counsel for the Settlement Classes;

23  (5) grant the motion for a Fee Award and Service Awards, ECF No. 403; (6) retain jurisdiction over

24  this matter to resolve any issues related to interpretation, administration, implementation, effectuation,

25  and enforcement of the Settlement; and (7) enter the Final Approval Order and Final Judgment.

26  Date: July 24, 2025                    **REESE LLP**

27                    By:  */s/ George V. Granade*
                        George V. Granade (State Bar No. 316050)
28                      *ggranade@reesellp.com*

8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**TYCKO & ZAVAREEI LLP**
Sabita J. Soneji (State Bar No. 224262)
*ssoneji@tzlegal.com*
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
Gemma Seidita (State Bar No. 322201)
*gseidita@tzlegal.com*
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20036
Telephone: (202) 973-0900

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
*bglasser@baileyglasser.com*
John W. Barrett (*pro hac vice*)
*jbarrett@baileyglasser.com*
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

**KAUFMAN P.A.**
Rachel E. Kaufman (State Bar No. 259353)
*rachel@kaufmanpa.com*
Avi Kaufman (*pro hac vice*)
*avi@kaufmanpa.com*
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881

**LAW OFFICES OF STEFAN COLEMAN**
Stefan Coleman (*pro hac vice*)
*law@stefancoleman.com*
66 West Flagler Street, Unit 900
Miami, Florida 33130
Telephone: (877) 333-9427

*Counsel for Plaintiffs Sarah Bumpus, Micheline Peker,
and Cheryl Rowan and the Classes*