# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH BUMPUS, MICHELINE PEKER, *and* CHERYL ROWAN, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>REALOGY HOLDINGS CORP., REALOGY INTERMEDIATE HOLDINGS LLC, REALOGY SERVICES GROUP LLC, REALOGY GROUP LLC, *and* REALOGY BROKERAGE GROUP LLC (f/k/a NRT LLC),<br><br>Defendants. | Case No.: 3:19-cv-03309-JD<br><br>**ORDER RE FINAL APPROVAL, ATTORNEYS' FEES AND COSTS, AND "SERVICE" AWARDS** |

The Court granted preliminary approval of a proposed classwide settlement.  Dkt. No. 400. Final approval, attorneys' fees and costs, and "service" awards, are granted on the ensuing terms. This order is based on a proposed order lodged by the parties and modified by the Court's conclusions and practices.  It should be read in its entirety.

1.    Capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement, ECF No. 395-2.

2.    The Court appointed Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator. Epiq has submitted a declaration reporting on the class Notice Plan, ECF No. 405-1. The Notice and the class Notice Plan implemented pursuant to the Agreement (1) constitute the best practicable notice under the circumstances; (2) constitute notice that is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing; (3) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meet all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

3.    The Settlement Administrator notified the appropriate state and federal officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of the notice and finds it complied with applicable requirements of CAFA.

4.    Pursuant to Federal Rule of Civil Procedure 23, and for purposes of this settlement only:

a.    Reese LLP is appointed as counsel for the Settlement Classes, and Plaintiffs Sarah Bumpus, Micheline Peker, and Cheryl Rowan are appointed as representatives for the Settlement Classes.

b.    The Court certifies the following Settlement Classes as defined in the Settlement Agreement:

i.    "NDNC Class" means all persons in the United States who received

1

two or more calls, as indicated by non-zero call durations and/or disposition codes other than "No Answer," "NO_ANSWER," or "NOANSWER," made by a Coldwell Banker-affiliated real estate agent using a Mojo, PhoneBurner, and/or Storm dialer in any 12-month period on a residential landline or cell phone number that appeared on the National Do Not Call Registry for at least 31 days for the time period beginning June 11, 2015 and ending December 3, 2020;

ii. "Prerecorded Message Class" means all persons in the United States who received a call on their residential telephone line or cell phone number with an artificial or prerecorded message, as indicated by the following call disposition codes: (i) 'Drop Message' (if using the Mojo dialer), (ii) ATTENDED_TRANSFER' (if using the Storm dialer), and (iii) 'VOICEMAIL' (if using a PhoneBurner dialer) and made by a Coldwell Banker-affiliated real estate agent for the time period beginning June 11, 2015 and ending December 3, 2020.

c. Excluded from both Settlement Classes are: (a) current or former officers and directors of Anywhere, (b) Anywhere's employees, agents, and counsel and its counsel's employees, (c) independent contractor real estate agents affiliated with an Anywhere brand, (d) Plaintiffs' Counsel and their employees, (e) any judge, magistrate, mediator, arbitrator, and/or court personnel that was involved in presiding over or rendering a decision in this case, and their immediate family members, and (f) any valid Opt-Out Members.

d. The Settlement Classes are so numerous that joinder of all members is impracticable. The Settlement Classes consist of thousands of class members, and the Settlement Class Members have been determined by objective means.

e. There are questions of law or fact common to the Settlement Classes, centered around Defendants' real estate salespeople's unwanted calls to the Settlement Class Members' telephone numbers.

f. The claims of the class representatives are typical of the claims of the Settlement Classes. The class representatives and each member of the Settlement Classes are claimed to have suffered the same injury caused by the same course of conduct.

g. Plaintiffs and Plaintiffs' Counsel have fairly and adequately represented and protected the interests of the Settlement Classes. Neither Plaintiffs nor Plaintiffs' Counsel have any conflicts of interest with the Settlement Class Members.

h. The questions of law or fact common to the members of the Settlement

2

Classes predominate over any questions affecting only individual members.

i.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, as the Settlement substantially benefits both the litigants and the Court, and there are few manageability issues, as settlement is proposed rather than a further trial.

5.      Pursuant to Federal Rule of Civil Procedure 23(e), the Settlement Agreement is fair, reasonable, and adequate, after considering that (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (d) the proposal treats class members equitably relative to each other.  The Settlement Agreement is in the interests of all Settlement Class Members, taking into account the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; and (7) the reaction of the class members to the proposed settlement.

6.      The plan for distribution of the Settlement Fund to Settlement Class Members with Approved Claims is fair and reasonable. The Settlement Administrator shall perform the distribution to Settlement Class Members following the process set forth in the Settlement Agreement without further order of this Court.

7.      Settlement Class Members have been given adequate notice of the Settlement Agreement.

8.      There are no objections to the Settlement. Scott B. Marovich submitted a letter objecting to the Settlement on April 28, 2025, Dkt. No. 404, but the record indicates that he is not a Settlement Class Member and does not have standing to object.

9.      A single timely request for exclusion was submitted, by or on behalf of Jane R. Beamish. The Court grants the request for exclusion. Ms. Beamish will not be a part of the

3

Settlement Classes in this Settlement and will not be bound by the Release, Discharge, and Covenant Not to Sue in paragraphs 70 and 71 of the Settlement Agreement.

10.    The Court held a hearing to consider the fairness, reasonableness, and adequacy of the proposed settlement.

11.    The proposed "service awards" of $5,000 to each named plaintiff, for a total of $15,000, are denied. Such so-called awards have become a feature in class actions, *see Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), but they are not provided for in Rule 23. If anything, Rule 23(e) casts doubt on the routine approval of awards that give named plaintiffs substantially greater recoveries than other class members. *See* Rule 23(e)(2)(D) (requiring that settlement "treats class members equitably relative to each other."). Oversized payments to named plaintiffs may indicate a collusive settlement to the detriment of unnamed class members.

12.    Consequently, there needs to be a good reason why a named plaintiff should get a much higher payment than other class members. That is missing here. It may be that the named plaintiffs put some work into the case, but the record does not demonstrate that any of them is entitled to a payment more than 15 times larger than the estimated payment of $312.00 to every other class member, a figure that is also inflated due to a low claims rate. *See* Dkt. No. 405 at 1. The Court awards $1,500 to each named plaintiff.

13.    The proposed attorneys' fees award of $6,000,000 is denied. The Court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted); *see also In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020) ("Courts must ensure that attorneys' fees awarded pursuant to Federal Rule of Civil Procedure 23(h) are reasonable.") (citation omitted). "This duty exists independent of any objection from a member of the class." *Id.* (citation omitted). The obligation exists "[b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage," and the Court "must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

14.    The requested award is a 30% share of the common fund intended to compensate

the class members.  Dkt. No. 403 at 1.  It is said to reflect a negative multiplier of 0.62 on a total fees lodestar of approximately $9,700,000 for over 10,243 hours of attorney time spent on this case.  *Id*.

There are problems that undermine the request of a 30% cut for the attorneys.  To start, the amount of attorney time billed here is astronomically high.  Although this case had its wrinkles, it was at heart a straightforward lawsuit under the Telephone Consumer Protection Act.  Plaintiffs did not justify the expenditure of over 10,000 attorney hours on it, or plausibly explain why such a mammoth number of billing hours might have been warranted.  A small negative multiplier on the lodestar does not cure the time excesses.

The bloated billing hours reflect the inefficiencies in handling this case on the part of plaintiffs' counsel.  As the long ECF docket indicates, and the Court's experience confirms, the prosecution of plaintiffs' claims was muddled and unfocused.  This culminated in a highly unusual request by plaintiffs, at a late stage in the case, to "modify" a class definition that they had successfully argued for.  *See* Dkt. No. 390.  The proposed modification raised a serious question about the reliability of the expert witness opinions tendered by plaintiffs, which was not apparent until plaintiffs brought the issue up.  The Court granted defendants an opportunity to request decertification of some or all of the classes as developments warranted.  *Id*.

Overall, this is not a case where the performance of plaintiffs' counsel might warrant an "upward adjustment" of the percentage of fees to 30%, as plaintiffs propose.  Dkt. No. 403 at 2.  A good argument can be made that a "benchmark" award of 25% is also too generous here.  Even so, the Court approves a 25% award in the amount of $5,000,000.

15.     Costs and expenses may be reimbursed at the requested amount of $898,739.46.

16.     All payments of attorneys' fees and reimbursement of costs and expenses to Plaintiffs' Counsel in this Action may be made in accordance with the Settlement Agreement, except that 25% of the fees must be withheld pending the filing of a post-distribution accounting as provided for in the District's Procedural Guidance for Class Action Settlements.  The 25% withholding may not be released until ordered by the Court.

17.     The Settlement Administrator may be paid $340,000 in Settlement Administrative

Expenses, in accordance with the Settlement Agreement.

18. All Releasing Parties are deemed to have irrevocably waived, and fully, finally, and forever settled, discharged, and released the Released Parties from, any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of preliminary approval of the Settlement arising from or related to the Released Claims. Released Claims means any and all claims, liabilities, demands, causes of action, or lawsuits of the Settlement Class Members, whether known or unknown, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law (such as any violations of the Telephone Consumer Protection Act, the FCC's related regulations, or an unfair or deceptive practices act), and whether brought in an individual, representative, or any other capacity, that were brought in the Action or could have been brought in the Action or that arise from telephone communications made or attempted by any Coldwell Banker affiliated real estate agent from June 11, 2015 to December 3, 2020 to Settlement Class Members or telephone numbers assigned to Settlement Class Members.

19. All Releasing Parties are bound by this Final Approval Order and are forever enjoined from prosecuting in any forum any Released Claims against any of the Released Parties.

20. The Court retains continuing and exclusive jurisdiction over this Action as to the following matters: (i) enforcement of the terms of the Settlement Agreement; (ii) issues relating to settlement administration; and (iii) enforcement of this Final Approval Order, the Judgment, and any order relating to attorneys' fees and costs and class representative Service Awards.

**IT IS SO ORDERED.**

Date: March 18, 2026

_____
James Donato
United States District Judge